UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re Application of Vale S.A., Vale Holdings
B.V., and Vale International S.A. for an Order
Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings

Case No.

---

# MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A, Vale Holdings B.V., and*
*Vale International S.A.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ........................................................................................................... 3

I.   Defendants' Scheme of Bribery and Corruption ............................................. 3

II.  The English Proceedings ................................................................................. 5

III. Defendants' Investments in New York Real Estate ....................................... 7

        A.   Joint Venture with HFZ ................................................................... 7

        B.   Joint Venture with Signa ................................................................. 12

ARGUMENT ................................................................................................................. 13

I.   The Subpoenas Sought Are Reasonably Calculated to Lead to the
     Discovery Of Evidence Relevant to and for Use in Foreign
     Proceedings .................................................................................................... 13

II.  The Application Meets Section 1782's Statutory Standards .......................... 14

III. The Discretionary Factors Under Section 1782 All Favor Discovery .......... 16

CONCLUSION .............................................................................................................. 18

APPENDIX A ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

28 U.S.C. § 1782 ................................................................................................... 14

**Cases**

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
673 F.3d 76 (2d Cir. 2012) .................................................................................. 14

Euromepa S.A. v. R. Esmerian, Inc.,
51 F.3d 1095 (2d Cir. 1995) ............................................................................ 16-17

Gushlak v. Gushlak,
486 F. App'x 215 (2d Cir. 2012) ........................................................................ 15

In re Bayer AG,
146 F.3d 188 (3d Cir. 1998) ................................................................................ 13

In re Bloomfield Inv. Res. Corp.,
18 MC 2608, 2018 WL 6418421 (E.D.N.Y. Dec. 6, 2018) ................................ 18

In re del Valle Ruiz,
939 F.3d 520 (2d Cir. 2019) ................................................................................ 14

In re Dickson,
No. 20-mc-51 (RA), 2020 WL 550271 (S.D.N.Y. Feb. 4, 2020) ....................... 15

In re Gorsoan Ltd.,
No. 18-MC-431 (RA), 2020 WL 409729 (S.D.N.Y. Jan. 24, 2020),
appeal docketed, No. 20-678 (2d Cir. Feb. 21, 2020) ...................................... 17, 18

In re Guy,
No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ............................. 17

In re Hornbeam Corp.,
722 F. App'x 7 (2d Cir. 2018) ............................................................................ 15

In re IKB Deutsche Industriebank AG,
No. 09-CV-7852, 2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) .......................... 15, 17

In re Iraq Telecom Ltd.,
18-MC-458 (LGS) (OTW), 2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019) ...................... 15

In re PJSC Uralkali,
No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ................................. 17

In re Simetra Global Assets Ltd.,
No. 16-2389 (JLL) (JAD), 2016 WL 3018692 (D.N.J. May 25, 2016)...................... 15, 16

In re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais,
No. C13-80261-MISC LHK (HRL), 2013 WL 6141655
(N.D. Cal. Nov. 21, 2013)................................................................................... 17, 18

Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004)................................................................................... passim

**PRELIMINARY STATEMENT**

By this application, Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale") seek discovery under 28 U.S.C. § 1782 for use in proceedings pending in the United Kingdom before the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) (the "High Court") against Benjamin (Beny) Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, the Balda Foundation ("Balda"), and Nysco Management Corp. ("Nysco") (together, the "Defendants") (the "English Proceedings") from Manhattan real estate investors and developers HFZ Capital Group LLC ("HFZ"), its principals, agents, and related corporate entities (the "HFZ Entities"), as well as entities tied to RFR Holding LLC ("RFR") and Signa Holdings GmbH ("Signa") that purchased the Chrysler Building (the "Chrysler Entities," and together with the HFZ Entities, "Respondents")).[1]

Defendants were protagonists behind a scheme to illegally gain valuable mining rights through bribery of government officials in the Republic of Guinea and fraudulently induce Vale to pay $500 million to enter into a joint venture (the "VBG Joint Venture") with BSG Resources Limited ("BSGR") and to invest more than an additional $746 million to develop the mining

---

[1] Vale seeks discovery from (i) HFZ Capital Group LLC; (ii) HFZ's principals, Ziel Feldman, Helene Feldman, Nir Meir, and John Shannon, and a related trust, the Feldman Family 2007 Trust; (iii) Defendants' agent, Kenneth Henderson, and his law firm Bryan Cave Leighton Paisner LLP; (iv) the following entities that hold or have held an interest in properties connected to HFZ and Defendants: Chatsworth Realty 340 LLC, HFZ 344 West 72nd Street Owner LLC, Chatsworth Realty Corp., 215 Chrystie LLC, HFZ 40 Broad Street LLC, HFZ Highline Property Owner LLC, HFZ Highline Retail Owner LLC, HFZ Highline LLC, HFZ 501 West LLC, 20 West 40 Bryant Park Owner LLC, HFZ Bryant Park Owner LLC, Tarpley Belnord Corp., Perfectus Real Estate Corp., HFZ 235 West 75th Street Owner LLC, HFZ 301 West 53rd Street Owner LLC, HFZ 88 Lexington Avenue Owner LLC, HFZ 90 Lexington Avenue Owner LLC, HFZ KIK 30th Street Owner LLC, HFZ West 30th Street Partners LLC, HFZ KIK 30th Street LLC, HFZ KIK 30th Street Mezzanine LLC, 76 Eleventh Avenue Property Owner LLC, and Fine Arts NY LLC; (v) RFR Holding LLC ("RFR"); (vi) RFR's founder and principal, Aby Rosen; and (vii) R&S Chrysler LLC and RFR Realty LLC, entities that hold or have held an interest in the Chrysler Building.

concessions.[2]  The lion's share of Vale's $500 million payment was immediately funneled up from BSGR through its parent Nysco to its ultimate parent Balda, a Liechtenstein trust, of which Steinmetz and his family are the sole beneficiaries.  The other Defendants were all rewarded with sizable bonuses after BSGR closed the deal with Vale.  In the English Proceedings, Vale seeks to recover, *inter alia*, the traceable proceeds of its payments to BSGR from Defendants.

A historical snapshot of publicly available evidence and documents produced in related proceedings suggests that Defendants invested a portion of their ill-gotten gains in valuable and iconic real estate located in Manhattan through joint ventures with HFZ (the "BSG-HFZ JV") and Signa Holdings GmbH (the "BSG-Signa JV").  By this Section 1782 petition, Vale seeks to obtain relevant information about the full scope and current status of Defendants' real estate investments in this District in order to locate the traceable proceeds of Vale's payments to Defendants.  Proposed subpoenas to the HFZ Entities and Chrysler Entities are annexed as Exhibits A-II to the Declaration of Jeffrey A. Rosenthal filed in support of this application (the "Subpoenas").

As demonstrated below, Section 1782's statutory requirements are easily satisfied here, and the discretionary factors relevant to the adjudication of an application to conduct discovery pursuant to Section 1782 all weigh in favor of granting the instant application for leave to serve the Subpoenas.

---

[2]      Defendants Steinmetz and Avidan were arrested in Israel, and Steinmetz was indicted in Switzerland, for their roles in this bribery scheme, and one of Defendants' agents, Frédéric Cilins, was convicted of obstruction of justice in the Southern District of New York and sentenced to 24 months in prison for his role in trying to cover it up.  Judgment, United States v. Cilins, No. 13-cr-315 (WHP) (S.D.N.Y. July 29, 2014), ECF No. 71.

**BACKGROUND**

**I.     Defendants' Scheme of Bribery and Corruption**

In 2008, BSGR obtained rights from the Guinean government to develop iron ore mining concessions in the Simandou region of Guinea.  Ex. JJ, <u>Vale S.A. v. BSG Resources Ltd.</u>, LCIA Arb. No. 142683, ¶¶ 241-242 (Apr. 4, 2019) (the "<u>Award</u>").  BSGR then approached Vale to sell it an interest in these mining concessions, as BSGR needed a partner that could both invest capital and offer technical expertise for their development.  <u>Id.</u> ¶ 6.  Vale conducted substantial due diligence to understand how BSGR obtained its mining concessions and to assure itself that BSGR had not engaged in any corrupt activities.  <u>Id.</u> ¶¶ 267-269.  During due diligence, Vale required BSGR (and its namesake, Beny Steinmetz) to certify that it did not engage in bribery and to specifically disclose, *inter alia*, the identities of any intermediaries BSGR used in its efforts to obtain the mining rights, any material contracts regarding its rights in Simandou, and any government officials with whom it had financial relationships.  BSGR and Steinmetz (and the other Defendants) repeatedly represented and warranted to Vale that BSGR had lawfully obtained its mining rights in Guinea, that it had not used any undisclosed consultants or intermediaries, and that it had disclosed all material documents and information concerning the mining concessions.  Id.¶¶ 268, 676.

On April 30, 2010, Vale entered into a joint venture agreement and shareholders' agreement with BSGR whereby Vale obtained 51% of BSGR's interest in the entity that held the Guinean mining licenses in exchange for $500 million up front and future milestone payments.  Ex. KK, <u>Vale S.A. v. Steinmetz</u>, No. CL-2019-000723, Particulars of Claim ¶¶ 2-4 (Jan. 15, 2020) (the "<u>Particulars of Claim</u>").  Vale subsequently invested more than $746 million in connection with the joint venture.  <u>Id.</u> ¶ 4.

In late 2012, the Guinean Technical Committee for the Review of Mining Titles and Agreements (the "Technical Committee") initiated an investigation into the means by which BSGR acquired its mining licenses.  Id. ¶ 104.  The Technical Committee explained that it was investigating credible allegations that BSGR had acquired the rights to Simandou Blocks 1 and 2 in 2008 through bribery of Guinean government officials, including Mamadie Touré, the wife of the late President Lansana Conté, both directly and through intermediaries, such as BSGR's agent Frédéric Cilins.  Ex. JJ, Award ¶¶ 286-87.  During the Technical Committee's investigation, Cilins traveled to the United States to visit Mme Touré in an attempt to convince her to destroy certain incriminating documents.  Id. ¶¶ 290, 419.  Unbeknownst to Cilins, Mme Touré had become a cooperating witness with the FBI, which taped their conversations.  The FBI audio recordings of their communications included Cilins's statements to Mme Touré that he had been sent by Steinmetz.  Id. ¶¶ 419.9, 574.7.  After holding a hearing in December 2013, the Technical Committee published a report finding that the mining licenses had been procured by bribery and corruption, and the Government of Guinea withdrew BSGR's mining licenses in April 2014.  Ex. KK, Particulars of Claim ¶ 104.

Following this withdrawal, on April 28, 2014, Vale commenced an arbitration in England against BSGR at the London Court of International Arbitration (the "Arbitration"), claiming damages for fraudulent misrepresentation, breach of warranty, and frustration.  Ex. JJ, Award ¶ 1.  On April 4, 2019, the Arbitral Tribunal found BSGR liable for the fraudulent misrepresentations that had been made during the joint venture negotiation process and awarded Vale more than $2 billion in damages, interest, and costs.  Id. ¶¶ 1004-05.  Vale promptly filed a proceeding in the High Court under the UK Arbitration Act for recognition and enforcement of the Award, as well as similar enforcement proceedings in the United States under the Federal

-4-

Arbitration Act.  On May 9, 2019, the High Court granted Vale permission to enforce the Award

in the same manner as a judgment or order of the High Court.  Ex. LL.  The High Court rejected

BSGR's application to set aside or stay enforcement of the Award on September 20, 2019, Ex.

MM, and denied BSGR's challenge to the Award on November 29, 2019, Ex. NN.  On March 5,

2020, Judge Broderick of the United States District Court for the Southern District of New York

granted Vale's petition for recognition and enforcement of the Award, and issued a

$2,172,833,761.15 judgment in Vale's favor.  Ex. OO, Judgment, <u>Vale S.A. v. BSG Resources</u>

<u>Ltd.,</u> No. 19-cv-3619-VSB (S.D.N.Y. Mar. 5, 2020), ECF No. 51.  Vale has not yet been able to

recover this amount from BSGR.

## II.     The English Proceedings

On November 22, 2019, in anticipation of the formal commencement of the English

Proceedings that are the subject of this Section 1782 petition, Vale filed an application in the

High Court for a worldwide freezing order against all Defendants, the terms of which require

Defendants to provide personal asset disclosure and disclosure in relation to, *inter alia*, Vale's

proprietary claim to the traceable proceeds of the $500 million payment.  On December 3, 2019,

the High Court granted the worldwide freezing order, finding that there was a real risk that the

Defendants would dissipate their assets so that a judgment against them would go unsatisfied.

Ex. PP, <u>Vale S.A. v. Steinmetz,</u> No. CL-2019-000723, Freezing Order (Dec. 3, 2019).  The

Defendants had a deadline of February 7, 2020 to file any application to challenge the

jurisdiction of the High Court or discharge the worldwide freezing order.  Ex. QQ, <u>Vale S.A. v.</u>

<u>Steinmetz,</u> No. CL-2019-000723, Freezing Order (Dec. 16, 2019).  Not one Defendant filed any

such application.

In the English Proceedings, Vale alleges that Defendants each made fraudulent

misrepresentations and entered into a conspiracy for the purpose of inducing Vale to enter into

the joint venture with BSGR.  Defendant Steinmetz is the founder, principal, ultimate beneficial

owner, and namesake of BSGR, and the other individual Defendants were senior executives of

BSGR at the times of these payments.  Ex. KK, Particulars of Claim ¶¶ 7, 15-25, 108.  Defendant

Balda wholly owned Defendant Nysco, which in turn wholly owned BSGR.  Id. ¶¶ 16.

Steinmetz and his family are the sole beneficiaries of Balda.  Id. ¶ 16.  Steinmetz was the

principal beneficiary of Vale's initial $500 million payment, and each of the Defendants received

a cut of this payment as a reward for their part in the scheme to obtain the mining licenses and

fraudulently induce Vale to enter the joint venture.  Id. ¶¶ 17, 20, 22-25.  Vale alleges that (1) the

Defendants made fraudulent misrepresentations in connection with BSGR's procurement of the

mining concessions over iron ore reserves in the Simandou region of the Republic of Guinea;

and (2) Defendants conspired and combined to conceal from Vale the fact that they had paid or

promised to pay bribes in order to procure Vale to enter into the VBG Joint Venture; made

fraudulent misrepresentations in furtherance of the conspiracy; induced Vale to enter into the

VBG Joint Venture, and as a result, caused Vale to incur substantial losses in the form of $500

million paid to BSGR under the Joint Venture Agreement on April 30, 2010 and approximately

$746 million paid into or for the benefit of the joint venture thereafter.  Id. ¶¶ 105-124.

As a result, Vale is seeking $1.264 billion in damages plus interest under various legal

theories.  Id. ¶¶ 121-24.  Vale also asserts a proprietary claim under English law to the traceable

proceeds of its payments to BSGR and Defendants.  Id. ¶¶ 118-20.  Such a claim allows a victim

of fraud to trace and recover the proceeds of the fraud, in distinction from a damages claim.  In

connection with this claim, Vale seeks all necessary accounts and inquiries to trace and identify

the traceable proceeds of the funds received by the Defendants.  Id. at 76.  By this Section 1782

petition, Vale seeks to identify the traceable proceeds of its payment to BSGR through

investments in real estate located in the Southern District of New York in which certain

Defendants and entities controlled by them are believed to hold a financial interest.

### III.   Defendants' Investments in New York Real Estate

Steinmetz has held an interest in New York real estate since at least the early 2000s

through another wholly-owned subsidiary of Nysco and Balda, BSG Real Estate ("BSG RE").  In

2003, BSG RE, along with other co-venturers, purchased a commercial building located at 237

Park Avenue for $455 million.[3]  This transaction was funded by Balda at Steinmetz's direction.[4]

### A.   Joint Venture with HFZ

Steinmetz's investments in New York real estate grew significantly in number and scale

shortly after receiving the proceeds of Vale's $500 million payment in 2010.  At that time, BSG

RE became linked with HFZ Capital Group LLC ("HFZ"), a real estate development and

investment company based in Manhattan.  Like BSGR and BSG RE, HFZ derives its name from

the initials of its founder and principal Ziel Feldman.[5]  While HFZ was founded in 2005, its

ambitions in the New York real estate market have grown exponentially since Steinmetz became

its benefactor after he received Vale's payment in 2010.  The BSG-HFZ JV eventually expanded

to encompass at least a dozen marquee properties in Manhattan, as well as at least one property

in Chicago.

---

[3]      See Ex. RR, Case Study: 237 Park Avenue, Monday Properties, https://www.mondayre.com/case-study/237-park-avenue (last visited Apr. 24, 2020).

[4]      See Ex. SS, Balda Resolution, Sept. 25, 2003 (BSGR_LCIA_2_0039225); Ex. TT, Balda Meeting Minutes at 1, Oct. 8, 2003 (BSGR_LCIA_2_0039217) ("The transaction is scheduled to close within 48 hours and Mr B. Steinmetz the investment advisor of Balda Foundation is extremely anxious that this investment opportunity should not be missed.").

[5]      See Ex. UU, Vivian Marino, Ziel Feldman, N.Y. Times (Jan. 8, 2013), https://www.nytimes.com/2013/01/09/realestate/commercial/the-30-minute-interview-ziel-feldman.html ("Q. *What does HFZ stand for?*  A. My wife's name is Helene; F is Feldman; and Z is Ziel.").  Helene Feldman also serves as a principal of HFZ.

Media reports have described Steinmetz as a "known backer" of HFZ,[6] which both HFZ and Steinmetz have denied emphatically.[7]  However, publicly-available news articles and real estate filings, as well as documents produced by BSGR in the Arbitration and other proceedings, give the lie to these public denials.  In a 2013 interview, Chris Papachristophorou, a member of BSG RE's senior management described how he had responsibility for BSG RE's "joint venture[] . . . with Manhattan developer HFZ aimed at condominium development."[8]  And Steinmetz's emails produced in the Arbitration make frequent reference to the BSG-HFZ JV.[9]

Steinmetz frequently corresponded with HFZ's founder Feldman, HFZ's other Managing Principal Nir Meir, and its Chief Investment Officer John Shannon, about managing the BSG-HFZ JV's assets and real estate investment opportunities in New York.[10]  Steinmetz enlisted Papachristophorou to run the day-to-day operations of the BSG-HFZ JV on behalf of BSG RE,[11] and Luv D. Shah served as a Senior Principal of BSG RE while working out of HFZ's offices at

---

[6]      See, e.g., Ex. VV, Beny Steinmetz, Said to Be a Backer of HFZ, Is Under House Arrest Due to Bribery Probe, Real Deal (Dec. 20, 2016), https://therealdeal.com/2016/12/20/beny-steinmetz-said-to-be-a-backer-of-hfz-capital-is-under-house-arrest-due-to-bribery-probe/.

[7]      See Ex. WW, Konrad Putzier, Rough Cut: How the Global Diamond Trade – from Cartels to War Zones – Shaped New York's Skyline, Real Deal (Apr. 3, 2018), https://globalpropertyinc.com/2018/04/03/rough-cut; Ex. XX, E.B. Solomont, HFZ, Carlyle Split Up at 505 West 19th St., Real Deal (Jan. 4, 2017), https://therealdeal.com/2017/01/04/hfz-carlyle-split-up-at-505-west-19th-st/.

[8]      Ex. YY, Robin Marriott, Europe News: Papa's Back, PERE News (Mar. 4, 2013), https://www.perenews.com/europe-news-papas-back/ ("In addition [Papachristophorou] has responsibility for BSGRE's broader activities, primarily two joint ventures – one with Manhattan developer HFZ aimed at condominium development . . . .").

[9]      Ex. ZZ, Email from C. Papachristophorou to B. Steinmetz at CGS&H p. 4, Jan. 25, 2013 (BSGR_LCIA_0023515) ("we need to add the new venture and [it's] strategy and talk a bit more about the HFZ JV and future strategy"); Ex. ZZ, Email from L. Shah to B. Steinmetz at CGS&H p. 5, Apr. 11, 2013 (BSGR_LCIA_0023556) (the "BSG-HFZ JV Job Posting") (referring to "BSG Real Estate in its newly formed joint venture with HFZ Capital, a prominent Manhattan-focused residential / mixed-use developer.").  This exhibit derives from a 499-page Extraction Report from Beny Steinmetz's Blackberry 9900 Bold, dated May 20, 2013, an excerpt of which was Exhibit C-668 in the Arbitration.  Phone numbers and other personally identifying information have been redacted from this exhibit.  Vale will provide a complete unredacted version of this exhibit at the Court's request.

[10]      See generally Ex. ZZ.

[11]      Ex. YY, Robin Marriott, Europe News: Papa's Back, PERE News (Mar. 4, 2013), https://www.perenews.com/europe-news-papas-back/

600 Madison Avenue.[12]  When Shah sought to expand BSG RE's team working out of HFZ's offices on the BSG-HFZ JV, he sought Steinmetz's approval to post a job listing seeking a qualified candidate to "serve as the representative of BSG Real Estate in its newly formed joint venture with HFZ Capital, a prominent Manhattan-focused residential/mixed-use developer," with responsibilities including "[a]sset management of existing development transactions housed within the joint venture" and "[r]eview and analysis (inclusive of financial modeling) of new transactions within the NYC market."[13]

Steinmetz himself was deeply involved in the management of the BSG-HFZ JV, receiving frequent proposals and updates from Meir and Shannon, and proposing to Meir that they go together on roadshow investor meetings on behalf of the joint venture in Doha, Abu Dhabi, and Saudi Arabia, as well as to market to U.S. and European investors.[14]

Based on the limited evidence available to Vale in public filings and documents produced in related proceedings (largely limited to a narrow time period in late 2012 to early 2013), the specific real estate assets linked to the BSG-HFZ JV include:

- **The Chatsworth, 344 West 72nd Street**:  On January 3, 2013, the Wall Street Journal reported that HFZ and BSG RE had purchased the Chatsworth, "one of the Upper West Side's most prominent prewar buildings," for $150 million.[15]  A corporate organization chart produced by BSGR dated December 31, 2015 (the "2015 Org Chart") includes an entity titled "Loan Note Chatsworth Asset NY" owned by Balda through Nysco and BSG RE.[16]  The title to this property has been held by at least three entities with Ziel Feldman as their authorized signatory: Chatsworth Realty 340 LLC, HFZ 344 West 72nd Street Owner LLC, and Chatsworth Realty Corp.

---

[12]     Ex. ZZ, BSG-HFZ Job Posting at CGS&H p. 5 (BSGR_LCIA_0023556).

[13]     Id.

[14]     Ex. ZZ, Email from B. Steinmetz to N. Meir at CGS&H p. 3, Feb. 17, 2013 (BSGR_LCIA_0023430).

[15]     Ex. AAA, Laura Kusisto, Chatsworth Finds a Buyer, Wall Street J. (Jan. 3, 2013), https://www.wsj.com/articles/SB10001424127887323874204578219651289873098.

[16]     Ex. BBB, 2015 Org Chart (JA0010143); see also Ex. ZZ, Email from N. Meir to B. Steinmetz at CGS&H p. 2, Oct. 31, 2012 (BSGR_LCIA_0023384) (email from Nir Meir to Beny Steinmetz dated Oct. 31, 2012 with the subject line "Fwd: BSG-HFZ FUND SUMMARY" describing a potential investment in the Chatsworth).

- **The Public, 215 Chrystie Street**: In December 2012, HFZ partnered with Ian Schrager Companies and the Witkoff Group to develop the Public Hotel and luxury condominiums on Chrystie Street. Meir and Steinmetz exchanged several emails in October 2012 about financing the "Chrystie Street" project,[17] two months before this partnership purchased the property.[18] The 2015 Org Chat includes a "Loan Note Chrystie St Asset NY" held by BSG RE. 215 Chrystie LLC currently holds title to this property.

- **The Setai, 40 Broad Street**: In April 2011, HFZ and Israel's Acro Group reportedly purchased a loan note for the Setai condominium for $80 million.[19] The 2015 Org Chart shows that BSG RE held an interest in this loan note through a variety of intermediate holding companies, including HFZ 40 Broad Street Holdings LLC, HFZ 40 Broad Mezz, and HFZ 40 Broad Street LLC.[20]

- **The Highline Development, 505 West 19th Street**: Public property records show that HFZ bought the land in October 2011 on which this high-end mixed use property overlooking the Highline now sits. The 2015 Org Chart demonstrates that BSG RE held a loan note related to "Highline Development NY."[21] At least four entities with Feldman or other HFZ employees as their authorized signatories have held an interest in this property: HFZ Highline Property Owner LLC, HFZ Highline LLC, HFZ 501 West LLC, and HFZ Highline Retail Owner LLC.

- **The Bryant, 16 West 40th Street**: HFZ acquired a parking lot across from Bryant Park in 2010 for $45 million.[22] However, that lot sat undeveloped for several years before HFZ obtained financing for the construction of a 33-story mixed use tower, which began in September 2015. Meir sent Steinmetz a term sheet for an investment in this property in May 2013,[23] and the 2015 Org Chart lists a "Loan Note Bryant Park NY" owned by BSG RE. The title to this property has been held by two entities that list Ziel Feldman as their authorized signatory: 20 West 40 Bryant Park Owner LLC and HFZ Bryant Park Owner LLC.

---

[17]    See Ex. ZZ, Email from N. Meir to B. Steinmetz at CGS&H p. 2, Oct. 31, 2012 (BSGR_LCIA_0023384).

[18]    Ex. CCC, Eliot Brown & Josh Barbanel, Tenants' Deal Removes Bar To New Tower, Wall Street J. (Dec. 28, 2012), https://www.wsj.com/articles/SB10001424127887324669104578206030681567260.

[19]    See Ex. DDD, David Jones, Feldman's HFZ and Acro Finalize $80M Deal for Setai, Real Deal (Apr. 5, 2011), https://therealdeal.com/2011/04/05/ziel-feldmans-hfz-and-arco-close-80m-deal-at-setai-40-broad-street-brokered-by-lenny-sporn-from-prudential-douglas-elliman/.

[20]    Ex. BBB, 2015 Org Chart (JA0010143).

[21]    Id.

[22]    Ex. EEE, Tim McKeough, On Bryant Park, David Chipperfield's First New York Building, N.Y. Times (Sept. 18, 2015), https://www.nytimes.com/2015/09/20/realestate/on-bryant-park-david-chipperfields-first-new-york-building.html.

[23]    See Ex. ZZ, Email from N. Meir to B. Steinmetz at CGS&H p. 6, May 14, 2013 (BSGR_LCIA_0023727).

- **The Belnord, 225 West 86th Street**:  Tarpley Belnord Corp ("Tarpley Belnord") has been a subsidiary of Balda and Nysco since at least July 2008.[24]  A corporate organization chart produced by BSGR and dated 2008 (the "2008 Org Chart") describes Tarpley Belnord as owning "USA property" as a subsidiary of BSG RE's predecessor company Five Mounts Properties Ltd, Nysco, and ultimately Balda.[25]  Tarpley Belnord's authorized signatory is Kenneth L. Henderson of Bryan Cave LLP, described in BSGR's meeting minutes as Balda's U.S. counsel.[26]  Tarpley Belnord has since been renamed Perfectus Real Estate Corp., with its headquarters located at HFZ's offices at 600 Madison Avenue.  The Wall Street Journal reported that HFZ bought the Belnord for $575 million in 2015.[27]

- **The Westbrook Portfolio – 235 West 75th Street, 301 West 53rd Street, 88 & 90 Lexington Avenue**:  In July 2013, the Wall Street Journal reported that HFZ made a deal for more than $600 million to purchase four Manhattan rental buildings from Westbrook Partners, a privately held investment firm.[28]  The 2015 Org Chart shows that BSG RE held a "Loan Note West Brook Portfolio NY."  These properties are held by four HFZ entities:  HFZ 235 West 75th Street Owner LLC, HFZ 301 West 53rd Street Owner LLC, HFZ 88 Lexington Avenue Owner LLC, and HFZ 90 Lexington Avenue Owner LLC.

- **The "Church Project," 3 West 29th Street**:  In 2013, HFZ entered a deal with the Reformed Protestant Dutch Church of the City of New York to develop an office building next to the Marble Collegiate Church.  The 2015 Org Chart shows that BSG RE held a "Loan Note Church Asset NY," and a document produced by BSGR in the Arbitration describes a 2013 "Churchdeal . . . on behalf of the BSG-HFZ venture . . . ."[29]  The HFZ entities affiliated with this property include HFZ KIK 30th Street Owner LLC, HFZ West 30th Street Partners LLC, HFZ KIK 30th Street LLC, HFZ KIK 30th Street Mezzanine LLC, and HFZ Capital Group LLC.

- **The XI, 76 Eleventh Avenue**:  In May 2015, HFZ purchased a full-block development site in Chelsea for $870 million, and has since built two ultra-luxury residential towers on the lot.  The Real Deal, citing four anonymous sources,

---

[24]     Ex. FFF, Balda Meeting Minutes, Sept. 21, 2009 (BSGR_LCIA_2_0037307); Ex. GGG, 2008 Org Chart (BSGR_LCIA_2_0040240).

[25]     Ex. GGG, 2008 Org Chart.  The notation below Nysco on the 2008 Org Chart states "BVI / MOSFON," a reference to Defendants' now-notorious BVI agents, Mossack Fonseca & Co.

[26]     Ex. FFF, Balda Meeting Minutes, Sept. 21, 2009 (BSGR_LCIA_2_0037307).

[27]     Ex. HHH, Josh Barbanel, The Belnord on Upper West Side Gets a New Owner, Wall Street J. (Mar. 12, 2015), https://www.wsj.com/articles/the-belnord-on-upper-west-side-gets-a-new-owner-1426210467.

[28]     Ex. III, Josh Barbanel, Developer Sets Deal to Buy 4 Manhattan Buildings, Wall Street J. (July 17, 2013), https://www.wsj.com/articles/SB10001424127887323993804578612083299146540.

[29]     Ex. JJJ, Email from H. Meijer to D. Cramer et al., Apr. 10, 2013 (BSGR_LCIA_0036456).

reported that Steinmetz provided financing for this project.[30]  Feldman is the authorized signatory for 76 Eleventh Avenue Property Owner LLC, the entity that holds title to this property.

- **500 North Michigan Avenue, Chicago, IL**:  In November 2017, two entities affiliated with Steinmetz, 500 NMA Acquisition Corp. LLC ("500 NMA") and Fine Arts NY LLC ("Fine Arts"), purchased 500 North Michigan Avenue, a 24-story office building on the Magnificent Mile in Chicago, Illinois.  500 NMA's registered address is located at Bryan Cave's Manhattan offices, c/o Tarpley 500 NMA Corp., and Fine Arts also lists a Manhattan address.  At the time of purchase, 500 NMA and Fine Arts were respectively represented by two known agents and nominees of Steinmetz's, Gregg Blackstock and Marcos Camhis.[31]  In July 2019, Fine Arts transferred its ownership to 500 NMA Owner Holding LLC. HFZ now lists 500 North Michigan Avenue on its website as one of its portfolio properties.[32]

B.    Joint Venture with Signa

BSG RE entered into a separate joint venture with Signa Holding GmBH ("Signa"), an Austrian real estate company founded by Rene Benko (the "BSG-Signa JV").[33]  While the BSG-Signa JV has predominantly focused on European properties, news reports indicate that Signa has recently entered into the Manhattan real estate market with Steinmetz's backing.  In March 2019, Signa and RFR Holding LLC, a New York corporation founded by New York resident Aby Rosen, purchased the Chrysler Building for $150 million.  According to The Wall Street

---

[30]      Ex. KKK, Beny Steinmetz, Reported Backer Of Chrysler Building Owner and HFZ, To Be Tried in Guinean Bribery Scandal, Real Deal (Aug. 13, 2019), https://therealdeal.com/2019/08/13/beny-steinmetz-reported-backer-of-chrysler-building-owner-and-hfz-to-be-tried-in-guinean-bribery-scandal/; Ex. WW, Konrad Putzier, Rough Cut: How the Global Diamond Trade – from Cartels to War Zones – Shaped New York's Skyline, Real Deal (Apr. 3, 2018), https://globalpropertyinc.com/2018/04/03/rough-cut.

[31]      Camhis is a director of Niron Metals Plc, the entity that is to be awarded valuable Guinean mining rights as a result of BSGR's purported entry into a settlement of a separate ICSID arbitration negotiated between Steinmetz and the Government of Guinea.  Blackstock worked for Onyx Financial Advisors Limited, BSGR's administrative back office, for six years, and has been a director of numerous corporations controlled by or affiliated with Steinmetz.

[32]      See Ex. LLL, 500 North Michigan Avenue, HFZ Capital Group, https://www.hfzcap.com/portfolio/500-north-michigan-avenue (last visited Apr. 24, 2020).

[33]      See Ex. YY, Robin Marriott, Europe News: Papa's Back, PERE News (Mar. 4, 2013), https://www.perenews.com/europe-news-papas-back/.

Journal, Steinmetz was one of Benko's financial backers connected to this acquisition.[34]  The Chrysler Building is currently owned by R&S Chrysler LLC, an affiliate of RFR Holding LLC, and is managed by RFR Realty LLC.  All three entities are located in Manhattan.

## ARGUMENT

I.  **The Subpoenas Sought Are Reasonably Calculated to Lead to the Discovery Of Evidence Relevant to and for Use in Foreign Proceedings**

The information sought by the Subpoenas is "presumptively discoverable under [Section] 1782" as the Subpoenas are reasonably calculated to lead to the discovery of evidence relevant to the English Proceedings.  In re Bayer AG, 146 F.3d 188, 196 (3d Cir. 1998).  Vale is asserting claims in the English Proceedings against the Defendants for, *inter alia*, recovery of the traceable proceeds of the $500 million payment made by Vale on April 30, 2010.  Respondents entered into joint ventures with entities owned and controlled by Defendants Steinmetz, Balda, and Nysco.  On information and belief, these joint ventures invested funds in New York (and Chicago) real estate derived from Vale's $500 million payment to BSGR.

In the English Proceedings, Vale claims "[a] declaration that, to the extent each of the Defendants received part of the proceeds of the US$500 million paid […] to BSGR on 30 April 2010, that Defendant holds those funds (or the traceable proceeds thereof) on constructive trust" for Vale.  See Ex. KK, Particulars of Claim ¶ 126(3).  In support of this remedy, Vale is entitled to "all necessary accounts and inquiries, including but not limited to those necessary to follow, trace, and identify the traceable proceeds of the funds received by the Defendants . . . ."  See id. ¶ 126 (4).  The discovery sought here is reasonably calculated for the purpose of determining

---

[34]      Ex. MMM, Konrad Putzier, Meet the Other Man Who Bought the Chrysler Building, Wall Street J. (Jul. 23, 2019), https://www.wsj.com/articles/meet-the-other-man-who-bought-the-chrysler-building-11563879601.

whether the money used to finance any of Respondents' real estate transactions can be traced to

Vale's payment.

## II.    The Application Meets Section 1782's Statutory Standards

Section 1782 "provide[s] federal-court assistance in gathering evidence for use in foreign

tribunals." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  The relevant

statutory text of 28 U.S.C. § 1782 states:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal . . . The order may be made
> . . . upon the application of any interested person and may direct that the testimony
> or statement be given, or the document or other thing be produced, before a person
> appointed by the court . . . .   To the extent that the order does not prescribe
> otherwise, the testimony or statement shall be taken, and the document or other
> produced, in accordance with the Federal Rules of Civil Procedure.

The Second Circuit has distilled three elements from this statutory text, holding that a

district court may grant a Section 1782 petition if: "(1) the person from whom discovery is

sought resides (or is found) in the district of the district court to which the application is made,

(2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the

application is made by a foreign or international tribunal or any interested person."  Brandi-

Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).  These requirements

are easily met here.

First, Respondents all "reside" or are "found" in this district.  The Second Circuit defines

this element broadly, holding that it "extends § 1782's reach to the limits of personal jurisdiction

consistent with due process."  In re del Valle Ruiz, 939 F.3d 520, 523 (2d Cir. 2019).

Corporations that are incorporated in and/or maintain their principal places of business in New

York satisfy this standard.  See, e.g., In re Dickson, No. 20-mc-51 (RA), 2020 WL 550271, at *1

(S.D.N.Y. Feb. 4, 2020) (holding that petitioners met this requirements where they "aver that all

Respondents 'conduct business in New York and maintain offices or their principal places of business in New York or are incorporated in New York'").  As described in Appendix A, the relevant offices listed in public property filings for the corporate Respondents are all located in Manhattan.  The individual Respondents are principals of the corporate Respondents, and, on information and belief, are domiciled within this District.

Second, the discovery sought is for use in proceedings before a "foreign or international tribunal" – the High Court.  See, e.g., In re Simetra Global Assets Ltd., No. 16-2389 (JLL) (JAD), 2016 WL 3018692, at *3 (D.N.J. May 25, 2016) (holding that proceedings before the High Court satisfy the "foreign tribunal" requirement); In re IKB Deutsche Industriebank AG, No. 09-CV-7852, 2010 WL 1526070, at *1 & n.1, *6 (N.D. Ill. Apr. 8, 2010) (same).

Third, as a litigant in the English Proceedings, Vale is an interested person within the meaning of Section 1782.  Intel, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."); see also In re Iraq Telecom Ltd., 18-MC-458 (LGS) (OTW), 2019 WL 3798059, at *3 n.4 (S.D.N.Y. Aug. 13, 2019) ("[A]s the plaintiff in the foreign proceedings, Petitioner certainly qualifies as an 'interested person.'").

Finally, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.  The respondent[s'] due process rights are not violated because [they] can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."  Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) (collecting cases); see also In re Hornbeam Corp., 722 F. App'x 7, 10-11 (2d Cir. 2018) (rejecting respondent's argument that the district court committed error in granting Section 1782

application *ex parte*).  If the Court grants this application, Vale will serve the Subpoenas, and Respondents will have an opportunity to object and be heard.

## III.    The Discretionary Factors Under Section 1782 All Favor Discovery

The Supreme Court has articulated four factors to guide district courts' discretion to grant a Section 1782 petition:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is "unduly intrusive or burdensome."  <u>Intel</u>, 542 U.S. at 264-65.  All four factors favor discovery here.  This Court should accordingly exercise its discretion and grant Vale leave to serve the Subpoenas on Respondents.

<u>First</u>, none of the Respondents is a party in the English Proceedings, and all reside or are found in the United States.  Thus, they are "outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  <u>Intel</u>, 542 U.S. at 264.

<u>Second</u>, the "presumption in favor of foreign tribunal receptivity [] can only be offset by reliable evidence that the tribunal would reject the evidence."  <u>In re Simetra</u>, 2016 WL 3018692, at *4; <u>see</u> <u>Euromepa S.A. v. R. Esmerian, Inc.</u>, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.").  Federal courts have routinely found that courts in the United Kingdom are receptive to U.S.

federal court assistance pursuant to Section 1782.  See Intel, 542 U.S. at 262 (describing an English court's receptivity to "a litigant in English proceedings seeking assistance in the United States under § 1782"); In re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais, No. C13-80261-MISC LHK (HRL), 2013 WL 6141655, at *2 (N.D. Cal. Nov. 21, 2013) (finding that "no policy in . . . the UK would cause [authorities] to reject U.S. assistance"); In re Guy, No. M 19-96, 2004 WL 1857580, at **2, 4 (S.D.N.Y. Aug. 19, 2004) (stating that English courts "hear[] the testimony of witnesses and receive[] documents in evidence, very much as American courts do," and authorizing discovery for use in the High Court of Justice, Chancery Division, England and Wales).  Indeed, courts have routinely applied Section 1782 to authorize discovery for use in the High Court.  See, e.g., In re PJSC Uralkali, No. C18-1673JLR, 2019 WL 291673, at *7 (W.D. Wash. Jan. 23, 2019) (granting petitioner's application pursuant to Section 1782 for oral testimony and production of documents for use in proceedings before the High Court); In re IKB Deutsche, 2010 WL 1526070, at *1 & n.1, *6 (denying motion to vacate order granting Section 1782 application seeking discovery for use in litigation pending in the High Court).

Third, this application is not an attempt to circumvent limitations on disclosure or discovery in the English proceedings.  This factor requires only that the discovery be sought in good faith.  See In re Gorsoan Ltd., No. 18-MC-431 (RA), 2020 WL 409729, at *8 (S.D.N.Y. Jan. 24, 2020) (placing the burden of proving bad faith on the party opposing the Section 1782 application (citing In re Hansainvest Hanseatische Investment-GmbH, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018))), appeal docketed, No. 20-678 (2d Cir. Feb. 21, 2020).  Although Section 1782 does not require that the material sought be discoverable in a foreign proceeding, Intel, 542 U.S. at 253, the High Court does permit and is receptive to document disclosure.  See, e.g., In re

-17-

<u>Societe d'Etude</u>, 2013 WL 6141655, at *2.  Such disclosure is properly sought in this District, as Respondents are non-parties to the English Proceedings and reside or are found here.

Fourth, Respondents will face no undue intrusion or burden if compelled to comply with the Subpoenas.  Federal courts favor discovery under Section 1782 where the "discovery sought appears to be sufficiently tailored to the litigation issues for which production is sought."  <u>In re Bloomfield Inv. Res. Corp.</u>, 18 MC 2608 (NGG) (CLP), 2018 WL 6418421, at *7 (E.D.N.Y. Dec. 6, 2018) (citing <u>In re Gemeinshcaftspraxis Dr. Med. Schottdorf</u>, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006)).  Pursuant to Section 1782's plain terms, this analysis is guided by the Federal Rules of Civil Procedure, in this case Rules 26 and 45, which govern third-party discovery.  Under Rule 45, "[w]hether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  <u>In re Gorsoan</u>, 2020 WL 409729, at *9 (quoting <u>Koch v. Pechota</u>, No. 10-CV-9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012)).

Here, Vale seeks only targeted categories of documents relevant to the proprietary claims asserted in the English Proceedings.  Specifically, Vale is seeking documents related to real estate transactions between the Respondents and the Defendants and their parents, subsidiaries, affiliates, beneficiaries, and agents in order to ascertain whether the $500 million fraudulently obtained from Vale was used in the purchase, financing, or sale of any of these real estate assets, and where the traceable proceeds of the $500 million payment are today.

## CONCLUSION

For the foregoing reasons, Vale respectfully requests that this Court enter an Order pursuant to Section 1782 granting leave to serve the Subpoenas attached as Exhibits A-II to the Declaration of Jeffrey A. Rosenthal.

-18-

Dated:  April 24, 2020
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Jeffrey A. Rosenthal*

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A, Vale Holdings B.V., and*
*Vale International S.A.*

**APPENDIX A**

| Entity | Addresses Listed in Public Property Filings |
|---|---|
| HFZ Capital Group LLC | 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Ziel Feldman | 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Helene Feldman | 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Feldman Family 2007 Trust | c/o Ziel and Helene Feldman, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Nir Meir | 600 Madison Avenue, Floor 15, New York, NY 10022 |
| John Shannon | 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Kenneth Henderson | c/o Bryan Cave Leighton Paisner LLP, 1290 Avenue of the Americas, New York, NY 10104 |
| Bryan Cave Leighton Paisner LLP | 1290 Avenue of the Americas, New York, NY 10104 |
| Chatsworth Realty 340 LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ 344 West 72nd Street Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Chatsworth Realty Corp. | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| 215 Chrystie LLC | 40 West 57th Street, Suite 1620, New York, NY 10019 |
| HFZ 40 Broad Street LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ Highline Property Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ Highline Retail Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ Highline LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 17, New York, NY 10022 |
| HFZ 501 West LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| 20 West 40 Bryant Park Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ Bryant Park Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Tarpley Belnord Corp. | c/o Kenneth Henderson, Bryan Cave Leighton Paisner LLP, 1290 Avenue of the Americas, New York, NY 10104 |

| | |
|---|---|
| Perfectus Real Estate Corp. | c/o Gregg Blackstock, 555 Madison Avenue, Floor 5, New York, NY 10022 |
| HFZ 235 West 75th Street Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ 301 West 53rd Street Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ 88 Lexington Avenue Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ 90 Lexington Avenue Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ KIK 30th Street Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ West 30th Street Partners LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ KIK 30th Street LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| HFZ KIK 30th Street Mezzanine LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| 76 Eleventh Avenue Property Owner LLC | c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022 |
| Fine Arts NY LLC | 200 West 41st Street, Suite 403, New  York, NY 10036 |
| RFR Holding LLC | 390 Park Avenue, New York, NY 10022 |
| Aby Rosen | 390 Park Avenue, New York, NY 10022 |
| R&S Chrysler LLC | c/o RFR Holding LLC, 390 Park Avenue, New York, NY 10022 |
| RFR Realty LLC | 400 Park Avenue, Suite 601, New York, NY 10022 |