# Exhibit Q

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | )<br>)<br>)<br>)<br>)<br>) |
| | Civil Action No. |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    HFZ 501 West LLC
                                       c/o HFZ Capital Group LLC, 600 Madison Avenue, Floor 15, New York, NY 10022

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006 | Date and Time:<br><br>06/08/2020 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

|     *CLERK OF COURT* | |
|---|---|
| | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
Vale S.A., Vale Holdings B.V., and Vale International S.A. _____ , who issues or requests this subpoena, are:

Jeffrey A. Rosenthal (jrosenthal@cgsh.com), Lisa M. Schweitzer (lschweitzer@cgsh.com), and Lisa Vicens (evicens@cgsh.com)

One Liberty Plaza, New York, NY 10006, (212) 225 2086

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE TO SUBPOENA TO HFZ 501 WEST LLC

Pursuant to Federal Rules of Civil Procedure 34 and 45, Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale" or the "Applicant") hereby request that HFZ 501 West LLC produce the following documents responsive to this subpoena.  All objections, responses, and responsive documents, communications, or electronically stored information shall be served and produced on or before June 8, 2020 or such other date to which Vale agrees or as ordered by the Court, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 (Attn. Jeffrey A. Rosenthal) or electronically to jrosenthal@cgsh.com.  Vale reserves the right to serve supplemental and additional discovery requests.

## DEFINITIONS

1.      The Applicant incorporates by reference herein the Uniform Definitions in Discovery Requests set out in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules").

2.      The term "**all**" shall mean "all," "every," and "each" as necessary to make the request inclusive rather than exclusive.

3.      The term "**any and all**" means every document, whenever created, within Your possession, custody, or control.

4.      The term "**affiliate**" means a person or corporate entity that is related to another person or corporate entity, directly or indirectly, by shareholdings, interests, or other means of control, including but not limited to subsidiaries, parents, or sibling corporate entities.

5.      The terms "**associate**," "**associated**," or "**association**" mean a person or corporate entity that has an existing or past relationship with another person or corporate entity, including but not limited to direct and indirect relationships as owners, employees, officers, agents, colleagues, partners, members, directors, family, corporate family, principals, stakeholders, representatives, shareholders, advisors, beneficiaries, lienholders, creditors, debtors, customers, and suppliers.

6.      The terms "**Balda Foundation**" or "**Balda**" mean the direct parent company of Nysco Management Corp. and indirect parent of BSGR and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Marc Bonnant, Brian Padgett, Peter Goop, Rothschild Trust (Guernsey) Limited, and any other members of its Foundation Council.

7.      The term "**between**" means between or among two or more persons or entities.

8.      The term "**BSGR**" means BSG Resources Limited and any of its current or former divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to those entities identified in Exhibit B of the Verified Chapter 15 Petition, attached hereto as Appendix B.

9.      The term "**BSGCM**" means BSG Capital Markets and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers,

directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Dag Cramer, David Clark, Sandra Merloni-Horemans, Kevin McAuliffe, David Granot, Peter Driver, Gustaf Bodin, Samuel Edoh, V.S. Holdings Limited, Kensdale Global Assets Limited, Da Vinci Capital Management Group, Da Vinci CIS Private Sector Growth Fund Limited, Gabriel Resources, Lenbro Holding Inc., FBN Bank DRC SA, Lauder International Corp., Huxton Capital Inc., and Freja Capital Limited.

        10.     The term "**BSG Entities**" means BSG RE, BSGR, BSGCM, Balda, Nysco, Vessna, Invel, Steinmetz, Steinmetz's Associates, and Steinmetz's Relatives and any other entity in which Steinmetz is known, believed, or suspected to have any interest.

        11.     The term "**BSG RE**" means BSG Real Estate Limited and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Brunel Group Inc, Youngville Enterprises Ltd, Five Mounts Real Estate Investments Sarl, Five Mounts Properties Europe BV, Dawley Real Estate Inc, FMP Global Corp, BSG Real Estate (Netherlands) Coöperatief U.A., BSG RE German Real Estate B.V., BSG RE German Retail B.V., Kaufhaus Immobilien Holding B Sarl Lux, FMP (Setai) Ltd (GY), AFZ 40 Broad Street LP, HFZ 40 Broad Street Holdings LLC, HFZ 40 Broad Mezz LLC, HFZ 40 Broad Street LLC, BSG Real Estate Investments Coöperatief U.A., FMP Limited, FMP Italy Sarl, Lastra Holdings BV, FMP Italy (Tolmezzo) Srl, Chestergate Investments Corp., Highstreet Real Estate (Netherlands) BV, Five Mounts Properties Ltd, Halley Research Corp, Seavest Holdings Inc, Wiltonia Investments Ltd,

Oldpoint International Corp., Riverview Enterprises Inc, Newfield Development Corp, EPBS Ltd, Oakhill Holdings Corp, Tarpley Property Holdings Inc, Tarpley Belnord Corp, Tarpley Comet Corp, Tarpley Newrock Corp., Perfectus Real Estate Corp., Tarpley 500 NMA Corp., and Perfectus 500 NMA Corp.

      12.    The term "**concerning**" means relating to, referring to, describing, evidencing, or constituting.

      13.    The term "**document(s)**" is used in its broadest sense and includes, without limitation, any and all writings in any form, notes, memoranda, manuals, reports, agreements, contracts, communications (including information transmitted in the form of facts, ideas, inquiries, or otherwise), contracts, deeds, memoranda of understanding, invoices, receipts, records, correspondence, drawings, graphs, charts (including personnel charts, structure charts, or organograms), corporate registries, corporate records, photographs, telephone records, payment records, bank statements, data compilations of whatever nature (including those from which information can be obtained or translated if necessary), tape recordings, electronic mail messages, and electronic data (including any exchange of information between computers and all information stored in an electronic form or computer database). A draft or non-identical copy is a separate document within the meaning of this term.

      14.    The term "**HFZ**" means HFZ Capital Group LLC and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to Ziel Feldman, Helene Feldman, Feldman Family 2007 Trust, Nir Meir, John Shannon, John Simonlacaj, Matthew Chook, Adam Feldman,

Amir Chizic, Christophe Lagrange, Anthony Marrone, Sam Koeppel, 76 Eleventh Avenue Property Owner LLC, Chatsworth Realty Corp., Chatsworth Realty 340 LLC, HFZ 344 West 72st Street Owner LLC, 215 Chrystie LLC, HFZ 235 West 75th Street Owner LLC, HFZ 301 West 53rd Street Owner LLC, HFZ 90 Lexington Avenue Owner LLC, HFZ 88 Lexington Avenue Owner LLC, HFZ Highline LLC, HFZ Highline Property Owner LLC, HFZ Highline Retail Owner LLC, HFZ 501 West LLC, HFZ Bryant Park Owner LLC, 20 West 40 Bryant Park Owner LLC, HFZ KIK 30th Street Mezzanine LLC, HFZ KIK 30th Street LLC, HFZ West 30th Street Partners LLC, HFZ KIK 30th Street Owner LLC, AFZ 40 Broad Street LP, HFZ 40 Broad Street Holdings LLC, and HFZ 40 Broad Street LLC.

15.     The term "**interest**," unless otherwise specified, means any past, present, prospective, or contingent interest (whether held directly or indirectly through subsidiaries, holding structures, and other entities and/or persons), including, without limitation, economic interests, financial interests, ownership interests, material interests, beneficial interests, licenses, and concessions.  For the avoidance of doubt, a partially or jointly-held financial, beneficial, or material interest is an interest within the meaning of this term.

16.     The term "**Invel**" means Invel Real Estate Partners, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including Chris Papachristophorou and Luv Shah.

17.     The terms "**Nysco Management Corp.**" or "**Nysco**" mean the direct parent of BSGR, and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates,

managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

18.    The term "**Onyx Financial Advisors**" means Onyx Financial Advisors Limited and Onyx Financial Advisors S.A., and any of their current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on their behalf, whether or not authorized to do so, including but not limited to Dag Cramer and Sandra Merloni-Horemans.

19.    The term "**Steinmetz**" means Benjamin "Beny" Steinmetz.

20.    The term "**Steinmetz's Associates**" means any of Benjamin "Beny" Steinmetz's current or former agents, general and/or limited partners, associates, representatives, attorneys, employees, assigns, nominees, and all other persons acting or purporting to act for or on his behalf, or on behalf of any BSG Entity, whether or not authorized to do so, including but not limited to Balda, Nysco, BSGR, BSG RE, Asher Avidan, Baruch Baigel, Malcolm Barnes, David Barnett, Gregg Blackstock, Gustaf Bodin, Marc Bonnant, Johannes van den Braber, Marcos Camhis, Frédéric Cilins, David Clark, Jesus Cortes, Dag Cramer, Ashvin Dagnarain, Konstantinos Dasklakis, Sir Michael "Mick" Davis, Peter Driver, Samuel Edoh, Yakir Gabay, Peter Goop, Itzik Gur, Kenneth Henderson, Jozef Hendricks, Avraham Lev Ran, Doron Levy, Martin Maloney, Johannes Meijer, Sandra Merloni-Horemans, Kevin Metcalf, Nissim Mionis, Sabby Mionis, Ioannis Moutafis, Michael Noy, Brian Padgett, Chris Papachristophorou, Dimitris Paschos, Apostolos Peppas, Daniel Pollak, Ioannis Prokopis, Maxwell Quinn, Eli Sabag, Luv Shah, Varda Shine, Marc Struik, Daniel Strykowski, and Yossie Tchelet.

21.     The term "**Steinmetz's Relatives**" means any spouse, former spouse, child, stepchild, parent, stepparent, grandparent, grandchild, niece, nephew, cousin, aunt, uncle, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother, sister, brother-in-law, or sister-in-law, including adoptive relations, of Benjamin "Beny" Steinmetz.  For the avoidance of doubt, for the purposes of this definition, Steinmetz's Relatives include, without limitation, Steinmetz's wife Agnes Steinmetz; Steinmetz's brother Daniel Steinmetz; Steinmetz's brother-in-law Patrick Saada; Steinmetz's children Merav Steinmetz, Avner Steinmetz, Michal Steinmetz, and Nadav Steinmetz; Steinmetz's nephew, Raz Steinmetz; and Steinmetz's sons-in-law Shimon Menahem, and Ohad Schwartz.

22.     The term "**Subject Properties**" means:

a.   The Belnord, 225 West 86th Street, New York, NY;

b.   500 North Michigan Avenue, Chicago, IL;

c.   The XI, 76 Eleventh Avenue, New York, NY;

d.   The Chatsworth, 344 West 72nd Street, New York, NY;

e.   The Setai, 40 Broad Street, New York, NY;

f.   The Public, 215 Chrystie Street, New York, NY;

g.   The Astor, 235 West 75th Street, New York, NY;

h.   The Metro, 301 West 53rd Street, New York, NY;

i.   LexLofts, 90 Lexington Ave, New York, NY;

j.   The Adjacent, 88 Lexington Ave, New York, NY;

k.  The "Church Project," 3 West 29th Street, New York, NY;

l.  The Bryant, 16 West 40th Street, New York, NY; and

m.  The Highline Development, 505 West 19th Street, New York, NY.

23.    The terms "**Vessna Foundation**" or "**Vessna**" mean the direct parent company of BSGCM and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

24.    The terms "**You**" or "**Your**" refer to HFZ 501 West LLC and any of its current or former parents, divisions, subsidiaries, affiliates, predecessors, successors, agents, officers, directors, general and/or limited partners, associates, managers, representatives, attorneys, employees, assigns, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so, including but not limited to HFZ.

## INSTRUCTIONS

1.    In addition to following the rules of construction in Rule 26.3 of the Local Civil Rules, whenever necessary to bring within the scope of this subpoena Documents that might otherwise be construed to be outside its scope: (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses, (b) the use of the feminine, masculine or neuter genders shall include all genders, and (c) the use of the singular form of any word includes the plural and vice versa.

2. Any non-capitalized words, terms, and phrases not specifically defined in these document requests shall be given their normal and customary meaning in the context in which they are used in these requests.

3. Each request for production shall be responded to completely, separately, and fully.

4. Documents referred to herein are to include all portions or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations, or electronic information), drafts, working papers, routing slips, and similar materials.

5. A document is deemed in Your actual or constructive possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other person and You (a) own such document in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when You sought to do so. For the avoidance of doubt, a document is deemed in Your actual or constructive possession, custody, or control if it is accessible on a network or server that You maintain or to which you have access.

6. The specifications of these document requests are to be construed as being inclusive rather than exclusive. Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the

document request inclusive; the word "all" means "any and all" and the word "any" means "any and all".

7.     In producing responsive documents, You should furnish all documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or by Your agents, employees, or representatives, including Your attorneys or their agents, employees, or representatives.

8.     You are to produce any and all drafts and copies of each document that is responsive to any specification of these document requests and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

9.     With respect to Electronically Stored Information ("ESI"):

   a.   All Microsoft Excel files, PowerPoint files, and/or audio and video files responsive to these document requests that are maintained in the usual course of business in electronic format are to be produced in their native format, along with the software necessary to interpret such files if such software is not readily available. Any native files that are produced shall also be produced with a one-page Bates-numbered TIFF image slip-sheet stating "Document has been produced in native format."

   b.   All other documents responsive to these document requests that are maintained in the usual course of business in electronic format are to be produced in properly unitized, single-page TIFF Group IV format complete with full text extracts and all associated metadata.

Documents produced in TIFF format shall be produced with Bates numbers stamped on each page. Bates numbers shall be of constant length, be sequential across a document and its attachments, be unique across the entire production, and contain no special characters except dashes. Documents produced in the Group IV TIFF format shall be produced such that comments, notes, speaker notes, track changes, hidden rows, hidden columns, and any other hidden or invisible text are displayed. For good cause, the requesting party may request that documents originally produced in TIFF format be re-produced in native format, which request shall not unreasonably be denied. The requesting party shall identify documents for re-production by Bates number and provide an explanation of the need for native files.

c.   All documents responsive to these document requests are to be produced with the metadata contained in Appendix A, and the necessary Concordance-compatible load files. If such metadata is not available, each document is to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

d.   Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form

that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Vale's counsel. If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost You claim is associated with the search or production of such ESI.

10.     All documents that are physically attached to each other when located for production are to be left so attached when produced. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or any other method, are to be left so segregated or separated when produced. Documents are to be produced in the order in which they were maintained and in the files in which they were found.

11.     Where a claim of privilege is asserted in objecting to any document request, identify the nature of the privilege (including work product) that is being claimed and the privilege rule being invoked, and for each document withheld provide the following information:

        a.    the type of document;

        b.   the date of the document;

c.  the author(s), addressee(s), and recipient(s) of the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to one another;

d.  the number of pages;

e.   the identity of any enclosure(s) or attachment(s);

f.  the subject matter of the document;

g.  the basis of the privilege claim; and

h.  the type of privilege(s) asserted.

12.    The documents responsive to these requests are to be produced as they were kept in the ordinary course of business and are to be labeled in such a way as to show which files they came from.

13.    If any document, or any part of a document, called for by these document requests has been destroyed, discarded, lost, or otherwise disposed of or placed beyond Your custody or control, You are to furnish a list identifying each such document by: (i) date, (ii) author; (iii) recipient(s); (iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter; (vi) the document's present or last-known location or custodian; (vii) the date of the document's destruction or other disposition; (viii) the reason for such destruction or other disposition; and (ix) the person authorizing such destruction or other disposition.

14.    Each specification of these document requests requires production in full, without abbreviation, redaction, or expurgation of any responsive documents. If any responsive document is not or cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document is being withheld, and the reason(s) it is being withheld.

Any redactions applied to documents shall contain text indicating the basis for redaction (e.g., "Privileged").

        15.     Documents not otherwise responsive to specifications of these document requests are to be produced if such documents mention, discuss, refer to, or explain the documents which are responsive to these document requests, or if such documents are attached to documents responsive to these document requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

        16.     If, in responding to these document requests, You encounter any ambiguity in construing them or any definitions and instructions relevant to them, set forth the matter or term deemed "ambiguous" and the construction used in responding to the document requests.

## DOCUMENTS TO BE PRODUCED

        1.     Any and all documents concerning agreements between You and BSG Entities between January 1, 2010 and today.

        2.     Any and all documents concerning any joint venture between You and BSG RE between January 1, 2010 and today.

        3.     Any and all communications and any documents concerning any communications between You and BSG Entities.

        4.     Any and all documents concerning direct or indirect payments and transfers of assets and/or funds between You and BSG Entities between January 1, 2010 and today.

5.      Any and all documents concerning any interests currently or formerly held by BSG Entities in You or in any asset or property in which You currently hold or formerly held an interest, including but not limited to the Subject Properties, between January 1, 2010 and today.

6.      Any and all board meeting minutes concerning any BSG Entities dated between January 1, 2010 and today.

7.      Any and all financial statements that reference any BSG Entities or reference or reflect any equity or debt interest of any BSG Entities dated between January 1, 2010 and today.

8.      Any and all corporate organizational charts dated between January 1, 2010 and today.

9.      Any and all documents concerning BSG Entities as direct and indirect investors, shareholders, and lenders in each of the Subject Properties between January 1, 2010 and today.

10.      Any and all documents describing the present beneficial ownership, including all direct and indirect investors, shareholders, and lenders, in each of the Subject Properties.

11.      Any and all documents concerning any of the BSG Entities' direct or indirect, prospective, actual or beneficial interests in and/or affiliations with the Subject Properties between January 1, 2010 and today.

12.      With respect to any Subject Properties in which any BSG Entities have any debt or equity interest, any and all documents submitted to any government agency or entity,

15

including but not limited to any tax documents, property filings, and any EB-5 documents and communications with CMB regional centers.

13.    Any and all documents concerning any of Steinmetz, Steinmetz's Associates, or Steinmetz's Relatives, including but not limited to Luv Shah and Chris Papachristophorou, visiting or working from HFZ's offices at 600 Madison Avenue, New York, NY, or visiting any property in which HFZ currently holds or formerly held an interest, including but not limited to the Subject Properties.

14.    Any and all documents concerning the acknowledgment or denial of any relationship between any BSG Entities and HFZ, including but not limited to any and all documents concerning the web articles "*Beny Steinmetz, reported backer of Chrysler Building owner and HFZ, to be tried in Guinean bribery scandal*" published by The Real Deal on August 13, 2019 and "*Rough Cut: How the Global Diamond Trade Shaped New York's Skyline*" authored by Konrad Putzier and published by The Real Deal on April 2, 2018 or their subject matter.

15.    Any and all documents concerning any due diligence, KYC, identity verification, and/or compliance documentation of BSG Entities provided with respect to any investment, interest, financing, or shareholding of the Subject Properties.

**APPENDIX A**

| Metadata Field | Description | Examples |
|---|---|---|
| **Production Metadata Fields for All Documents** | | |
| BegBates | Bates number for the first page of the document | [Bates Prefix]-00000001 |
| EndBates | Bates number for the last page of the document | [Bates Prefix]-00000010 |
| BegBatesAtt | Bates number for the first page of the parent document (i.e., an email or other document containing attachments) | [Bates Prefix]-00000001 |
| EndBatesAtt | Bates number of the last page of the last attachment to the parent document | [Bates Prefix]-00000015 |
| Custodians_All | Name of the custodian or custodians who possessed this item or exact duplicates thereof. | Jones, Barbara |
| RecordType | Type of item being produced | Email, Email Attachment, Electronic Document, Hardcopy Document |
| FilePath | Original location of the file when collected from the source custodian or system | C:\My Documents\Deal Documents |
| FileSize | Size of the native file document/email in KB | 3,547 |
| Prod_Native | File path to the native file on the production media if applicable (a.k.a. production file path) | Prefix001\NATIVES\000\ Prefix00000001.msg |
| Prod_Text | File path to the extracted text file on the production media | Prefix001\TEXT\000\ Prefix00000001.msg |
| MD5Hash | The MD5 hash value for the item | |
| SHA1Hash | The SHA-1 hash value for the item | |
| Designation | The confidentiality designation of the document, if any | Confidential, Highly Confidential |
| Redaction | For documents containing redactions, the basis for such redactions | Privileged, Personal, Proprietary |
| **Additional Document Metadata Fields for Electronic Documents and Attachments** | | |
| FileName | Original name of the file when collected from the source custodian or system | exampledoc.doc, file.xls |
| FileExt | File type extension of native file | xls, doc, ppt, mp3 |
| FileType | File type or application used to create the underlying native file | Excel, Word, PowerPoint, MP3 |
| Title | Title of the document | Purchase Agreement |
| Author | Author of the document | Barbara Jones |
| TimeZone | The time zone in which electronic documents were standardized during conversion. | GMT |
| MasterDate | For emails and their attachments, the sent date of the parent email | MM/DD/YYYY |

| Metadata Field | Description | Examples |
|---|---|---|
| MasterTime | For emails and their attachments, the sent time of the parent email, using a 24-hour clock | HH:MM:SS |
| DateCreated | Date the item was created | MM/DD/YYYY |
| TimeCreated | Time the item was created, using a 24-hour clock | HH:MM:SS |
| DateLastModified | Date the item was last modified | MM/DD/YYYY |
| TimeLastModified | Time the item was last modified, using a 24-hour clock | HH:MM:SS |
| **Additional Document Metadata Fields for Email and Other Electronic Communications** | | |
| DateSent | Date the email message was sent, using a 24-hour clock | MM/DD/YYYY |
| TimeSent | Time the email message was sent, using a 24-hour clock | HH:MM:SS |
| Date Received | Date the email message was received, using a 24-hour clock, in Greenwich Mean Time (GMT) | MM/DD/YYYY |
| TimeReceived | Time the email message was received, using a 24-hour clock | HH:MM:SS |
| To | Addressee(s) of the email message | Barbara Jones barbarajones@co.com |
| From | Name and email address of the person who sent the email message | Barbara Jones barbarajones@co.com |
| CC | Recipient(s) included in the "cc" line of the email message | Barbara Jones barbarajones@co.com |
| BCC | Recipient(s) included in the "bcc" line of the email message | Barbara Jones barbarajones@co.com |
| Subject | Subject line of the email message | FW: your message |
| EmailPath | The original location of email | Personal Folders\Sent Items\ |
| Conversation Index | A field indicating whether an email message is part of a conversation thread with other email messages. | |

**APPENDIX B**



21