# Exhibit QQ

| | |
|---|---|
| IN THE HIGH COURT OF JUSTICE | Claim No CL-2019-000723 |
| BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES | CL-2019-000723 |

QUEEN'S BENCH DIVISION
COMMERCIAL COURT

Before Mr Justice Andrew Baker

Dated 16 December 2019

B E T W E E N:

(1) VALE S.A.

(2) VALE HOLDINGS B.V.

(3) VALE INTERNATIONAL S.A.

**Claimants/Applicants**

and

(1) BENJAMIN STEINMETZ
(2) DAG LARS CRAMER
(3) MARCUS STRUIK
(4) ASHER AVIDAN
(5) JOSEPH TCHELET
(6) DAVID CLARK
(7) BALDA FOUNDATION
(8) NYSCO MANAGEMENT CORPORATION

**Defendants/Respondents**

---

**FREEZING ORDER**

---

**Penal Notice**

**If you, Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, Balda Foundation or NYSCO Management Corporation disobey this order you may be held to be in contempt of Court and may be imprisoned, fined or have your assets seized. Any other person who knows of this Order and does anything which helps or permits any Respondent to breach the terms of this Order may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

1

**UPON** the worldwide freezing order made by Sir Michael Burton GBE (sitting as a Judge of the High Court) dated 3 December 2019 (the "**Ex Parte WFO**")

**AND UPON** the freezing order amendment made of the Court's own motion by Mr Justice Andrew Baker dated 14 December 2019

**AND UPON** the Applicant's application for continuation of the Ex Parte WFO made by application notice dated 11 December 2019

**AND UPON** the application of the Fourth Respondent and Fifth Respondent dated 12 December 2019 for an extension of time to comply with paragraphs 11(1), 11(3)(a)-(c) and 12 of the Ex Parte WFO

**AND UPON** reading the Second Affidavit of James Brady dated 12 December 2019 ("**Brady 2**")

**AND UPON** hearing Leading Counsel for the Applicant, Counsel for the First Respondent, Counsel for the Second Respondent, Counsel for the Third to Fifth Respondents, Leading Counsel for the Sixth Respondent and Leading Counsel for the Seventh and Eighth Respondents

**AND UPON** the Applicant giving the undertakings set out in Schedule B at the end of this Order and the Judge accepting those undertakings

**AND UPON** the Second Respondent giving the undertakings set out in Schedule C at the end of this Order and the Judge accepting those undertakings

**AND UPON** the Seventh Respondent agreeing to accept service of the Ex Parte WFO, the further order of Sir Michael Burton GBE dated 3 December 2019 (the "**Service Order**") and the Claim Form in these proceedings by email from the Applicant's legal representative to Byrne & Partners LLP on 12 December 2019, without prejudice to the Seventh Respondent's rights to challenge or set aside this order and/or the jurisdiction of the English courts and/or the Ex Parte WFO without change of circumstances

**AND UPON** this order being made without prejudice to the Respondent's rights to challenge or set aside this order and/or the jurisdiction of the English courts and/or the Ex Parte WFO without change of circumstances

**THE COURT HEREBY DIRECTS AND ORDERS THAT**

**THIS ORDER**

1. This is a Freezing Injunction made against Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, Balda Foundation and NYSCO Management Corporation (the "**Respondent**") on 16 December 2019 by Mr Justice Andrew Baker continuing the Freezing Injunction made on 3 December 2019 by Sir Michael Burton GBE (sitting as a Judge of the High Court) on the application of Vale S.A., Vale Holdings B.V. and Vale International S.A. (the "**Applicant**").

2. Any application by any Respondent to challenge the jurisdiction of the English Courts and/or discharge and/or set aside and/or vary this Order and/or the Ex Parte WFO shall be issued and served by 4.30pm on 7 February 2020 (a "**Set Aside Application**"). The following directions shall apply to any Set Aside Application issued by any Respondent:

    (1) The Applicant's evidence in response shall be filed and served by 4.30pm on 13 March 2020.
    (2) The Respondent's evidence in reply shall be filed and served by 4.30pm on 2 April 2020.
    (3) The Respondent's skeleton argument shall be filed and served by 4.30pm on 8 April 2020.
    (4) The Applicant's skeleton argument shall be filed and served by 4.30pm on 9 April 2020.
    (5) There shall be a hearing of all Set Aside Applications commencing on 21 April 2020 with a time estimate of four days (with one day for pre-reading on 21 April 2020), to be listed before Sir Michael Burton GBE (sitting as a Judge of the High Court) if possible.

2A. If any other urgent application (other than a Set Aside Application) is made by any party on or before the Effective Return Date Hearing, it shall be referred to Mr Justice Andrew Baker on the papers to determine whether the application is urgent and what

directions, if any, should be given (including as to whether and when a hearing of the application should be listed).

3. [intentionally blank].

4. If there is more than one Respondent –

    a) unless otherwise stated, references in this Order to "the Respondent" means any or all of them; and

    b) the "First Respondent" means Benjamin (Beny) Steinmetz, the "Second Respondent" means Dag Lars Cramer, the "Third Respondent" means Marcus Struik, the "Fourth Respondent" means Asher Avidan, the "Fifth Respondent" means Joseph (Yossie) Tchelet, the "Sixth Respondent" means David Clark, the "Seventh Respondent" means Balda Foundation, and the "Eighth Respondent" means NYSCO Management Corporation; and

    c) this Order is effective against any Respondent on whom it is served or who is given notice of it.

**FREEZING INJUNCTION**

5. Subject to paragraph 7A below, until the Effective Return Date Hearing or further order of the Court, the Respondent must not –

    (1) remove from England and Wales any of his assets which are in England and Wales up to the value of US$1.85 billion; or

    (2) in any way dispose of, deal with or diminish the value of any of his assets whether they are in or outside England and Wales up to the value of US$1.85 billion; or

    (3) in any way dispose of, deal with or diminish the value of any of his assets outside of England and Wales unless the total unencumbered value (as defined in paragraph 8 below) of all his assets in England and Wales exceeds US$1.85 billion.

4

6. Subject to paragraph 7A below, paragraph 5 applies to all the Respondent's assets whether or not they are in his own name, whether they are solely or jointly owned, and whether the Respondent is interested in them legally, beneficially or otherwise. For the purpose of this Order the Respondent's assets include any asset which he has the power, directly or indirectly, to dispose of or deal with as if it were his own. The Respondent is to be regarded as having such power if a third party holds or controls the asset in accordance with its or his direct or indirect instructions. For the avoidance of doubt, and without limitation, the term asset shall include any chose in action and any digital currency (including but not limited to BitCoin, Ethereum and Litecoin).

7. This prohibition includes the following assets in particular –

    (1) in relation to all Respondents, any interest under any trust, foundation or similar entity including any interest which can arise by virtue of the exercise of any power of appointment, discretion or otherwise howsoever.

    (2) the following assets of the First Respondent in particular –

    a) Any interest in the property known as Mul HaY am Street 21, Arsuf, Israel or the net sale money after payment of any mortgages if it has been sold; and
    b) Any remaining funds or proceeds paid to the First Respondent by the Seventh Respondent after April 2010.

    (3) the following assets of the Second Respondent in particular –

    a) Any interest in the property known as 8 Well Road, London, NW3 1LH;
    b) Any remaining funds or proceeds relating to the:
        i.  US$10 million bonus promised to the Second Respondent by BSG Resources Limited ("**BSGR**") in about April 2010;
        ii. the US$2.5 million bonus payment promised to Onyx Financial Advisors Ltd (of which the Second Respondent was the ultimate beneficial owner) by the Seventh Respondent at about the same time;
    c) The shares held by the Second Respondent in Norn Verdandi Limited, and any remaining shareholding in the Onyx Financial Advisors group of companies, or the sale money if any of them have been sold;
    d) Any interest in Manerhorn Holdings S.A. (the company which received a payment of US$3 million from BSGR on or about 6 July 2010) or the funds

5

  received by or assets held by Manerhorn Holdings S.A. for and on behalf of the Second Respondent; and

e) Any money in accounts held in the name of the Second Respondent (whether solely or jointly) with the State Bank of Mauritius, or with any other Mauritian financial institution.

f) To the extent not addressed above, all of the assets identified in Annex A (Schedule of Assets of Dag Lars Cramer) to the third letter from Covington & Burling LLP to Cleary Gottlieb Steen & Hamilton LLP dated 11 December 2019.

(4) the following assets of the Third Respondent in particular –

a) Any interest in the property known as 7 Sunset Acres, Johannesburg, South Africa or the net sale money after payment of any mortgages if it has been sold;

b) Any remaining funds or proceeds relating to the US$3 million bonus promised to the Third Respondent by BSGR in about April 2010; and

c) Any interest in Ennismore Consultants Ltd (the company which received a payment of US$2 million from BSGR on or about 6 July 2010) or the funds received by or assets held by Ennismore Consultants Ltd for and on behalf of the Third Respondent.

(5) the following assets of the Fourth Respondent in particular –

a) Any interest in the property known as Flat 9, 54 Pinkas Street, Tel Aviv, Israel or the net sale money after payment of any mortgages if it has been sold; and

b) Any remaining funds or proceeds relating to the US$3.75 million bonus promised to the Fourth Respondent by BSGR in about April 2010.

c) To the extent not addressed above, all of the assets identified in the letter from Wallace LLP to Cleary Gottlieb Steen & Hamilton LLP dated 12 December 2019.

(6) the following assets of the Fifth Respondent in particular –

a) Any interest in the property known as 1C Hochit St., Yad Binyamin Town, Israel or the net sale money after payment of any mortgages if it has been sold;

b) Any interest in Evergreen Valley Production Ltd (the company which received a payment of US$800,000 from BSGR on or about 6 July 2010) or the funds received by or assets held by Evergreen Valley Production Ltd for and on behalf of the Fifth Respondent;

  c) The shares in Tchelet Advisory Services Ltd., or the sale money if they have been sold; and

  d) Any remaining funds or proceeds relating to the US$1.2 million bonus promised to the Fifth Respondent by BSGR in about April 2010.

  e) To the extent not addressed above, all of the assets identified in the letter from Wallace LLP to Cleary Gottlieb Steen & Hamilton LLP dated 12 December 2019.

(7) the following assets of the Sixth Respondent in particular –

  a) Any interest in the property known as Valparisso, Avenue du Manoir, Ville Au Roi, St. Peter Port, Guernsey, GY1 1PE or the net sale money after payment of any mortgages if it has been sold; and

  b) Any remaining funds or proceeds relating to the US$250,000 bonus promised to the Sixth Respondent by BSGR in about April 2010.

  c) To the extent not addressed above, all of the assets identified in the schedule of accounts and assets sent by Peters & Peters Solicitors LLP to Cleary Gottlieb Steen & Hamilton LLP dated 10 December 2019.

(8) the following assets of the Seventh Respondent in particular –

  a) Any remaining funds from the US$500 million initial consideration paid by the Third Claimant to BSGR pursuant to the joint venture agreement between the First Claimant and BSGR dated 30 April 2010 (the "**JVA**"); and

  b) The shares in the Eighth Respondent.

(9) the following assets of the Eighth Respondent in particular –

  a) The shareholdings in the Eighth Respondent's businesses known respectively as BSGR, BSG Real Estate Ltd and Chestergate Investments Limited or the sale money if any of them have been sold.

  b) any interest in a Benetti motor yacht and two Bombardier aircraft (models CL-600-2B16 and BD 700-1A11); and

  c) Any remaining funds from the US$500 million initial consideration paid by the Third Claimant to BSGR on 30 April 2010 pursuant to the JVA and transferred to the Eighth Respondent.

7

7A. This Order does not apply to the assets of Conatus Limited (a company registered in Mauritius).

8. If the total value free of charges or other securities ("**unencumbered value**") of the Respondent's assets in England and Wales exceeds US$1.85 billion, the Respondent may remove any of those assets from England and Wales or may dispose of or deal with them so long as the total unencumbered value of that Respondent's assets still in England and Wales remains above US$1.85 billion.

9. If any Respondent has assets outside England and Wales, he may dispose of or deal with those assets so long as the total unencumbered value of his assets in England and Wales exceeds US$1.85 billion.

**NOTIFICATION INJUNCTION**

10. Until the Effective Return Date Hearing or further order, the Respondent must give the Applicant's solicitors 2 clear working days' notice of any transaction (or series of connected transactions) exceeding £25,000 in value relating to the assets of any company which holds or controls its assets in accordance with the Respondent's direct or indirect instructions. Such notice shall (a) state the amount and currency of the transaction (or series of transactions) and (b) give a brief description of the purpose of the transaction.

10A. Paragraph 10:

(1) does not require the Second Respondent to notify the Applicant's solicitors of any transaction relating to the assets of Conatus Limited.

(2) only applies to the Seventh Respondent and Eighth Respondent in respect of any transaction (or series of transactions) of which it is aware or ought reasonably to be aware.

**PROVISION OF INFORMATION**

11. [intentionally blank].

12. [intentionally blank].

8

**EXTENSIONS OF TIME FOR PROVISION OF INFORMATION**

12A. There shall be extensions of time in respect of the Respondent's obligations to provide disclosure under paragraphs 11 and 12 of the Ex Parte WFO as follows:

   (1) The First Respondent shall comply with:
      (a) paragraph 11(1) and 11(3) of the Ex Parte WFO by 4pm on 30 December 2019; and
      (b) paragraph 12 of the Ex Parte WFO by 4pm on 9 January 2020.

   (2) The Third Respondent shall comply with:
      (a) paragraph 11(1) and 11(3) of the Ex Parte WFO by 4pm on 20 December 2019; and
      (b) paragraph 12 of the Ex Parte WFO by 4pm on 27 December 2019.

   (3) The Fourth Respondent and Fifth Respondent shall comply with:
      (a) paragraph 11(3)(a)-(c) of the Ex Parte WFO by 4pm on 20 December 2019; and
      (b) paragraph 12 of the Ex Parte WFO by 4pm on 27 December 2019.

   (4) The Seventh Respondent shall comply with:
      (a) paragraph 11(1) and 11(3)(a)-(c) of the Ex Parte WFO by 4pm on 19 December 2019; and
      (b) paragraph 12 of the Ex Parte WFO by 4pm on 24 December 2019.

   (5) The Eighth Respondent shall comply with:
      (a) paragraph 11(1) and paragraphs 11(3)(a)-(c) of the Ex Parte WFO by 4pm on 19 December 2019; and
      (b) paragraph 12 of the Ex Parte WFO by 4pm on 24 December 2019.

**EXCEPTIONS TO THIS ORDER**

13.

   (1) This Order does not prohibit: (i) the First Respondent from spending £25,000; and (ii) the Second, Third, Fourth, Fifth, and Sixth Respondents from each spending £10,000 a week towards each of their ordinary living expenses and does not

prohibit any Respondent from spending a reasonable sum on his legal advice and representation in these or any other proceedings (anywhere). Further, this Order does not prevent the Eighth Respondent from paying a reasonable sum towards the reasonably incurred fees and expenses of the joint administrators in connection with BSGR's administration in Guernsey (provided that this shall be without prejudice to the Applicant's ability to apply for variation of this order on or before the Effective Return Date Hearing). But before spending any money, the Respondent must tell the Applicant's legal representatives where the money is to come from.

(2) This Order does not prohibit the Respondent from dealing with or disposing of any of his assets in the ordinary or proper course of business, but the Respondent must give the Applicant's solicitors 2 clear working days' notice of his intention of so doing in respect of any transactions exceeding £25,000 in value.

(2A) Paragraph 13(2) above does not require the Second Respondent to notify the Applicant's solicitors of any transaction relating to the assets of Conatus Limited.

(3) The Respondent may agree with the Applicant's legal representatives that the above spending limits should be increased or that this Order should be varied in any other respect, but any agreement must be in writing.

(4) The Order will cease to have effect if the Respondent –

   a) provides security by paying the sum of US$1.85 billion into Court, to be held to the order of the Court; or
   b) makes provision for security in that sum by another method agreed with the Applicant's legal representatives.

**COSTS**

14. The costs of this application are reserved to the Judge hearing the application on the Effective Return Date Hearing.

**VARIATION OR DISCHARGE OF THIS ORDER**

15. Anyone served with or notified of this Order may apply to the Court at any time to vary or discharge this Order (or so much of it as affects that person), but they must first inform the Applicant's solicitors. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's solicitors in advance.

**INTERPRETATION OF THIS ORDER**

16. A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or his instructions or with his encouragement.

17. A Respondent which is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

17A. "Effective Return Date Hearing" shall mean the earlier of:

   (1) the hearing (provided for in paragraph 2) at which the Set Aside Application(s) are finally determined; or

   (2) If no Set Aside Application is issued by any Respondent by the deadline imposed by paragraph 2 of this Order, the hearing at which judgment is handed down following the trial of the Applicant's claims in these proceedings.

17B. Where an order is expressed to continue until the Effective Return Date Hearing, it shall continue until the sealing of any order made following the Effective Return Date Hearing.

18. A working day shall mean a weekday that is not a bank holiday in England and Wales.

**PARTIES OTHER THAN THE APPLICANT AND RESPONDENT**

19. **Effect of this Order**

    It is a contempt of Court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned, fined, or have their assets seized.

20. **Set off by banks**

    This injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the Respondent before it was notified of this Order.

21. **Withdrawals by the Respondent**

    No bank need enquire as to the application or proposed application of any money withdrawn by the Respondent if the withdrawal appears to be permitted by this Order.

22. **Persons outside England and Wales**

    (1) Except as provided in paragraph (2) below, the terms of this Order do not affect or concern anyone outside the jurisdiction of this Court.

    (2) The terms of this Order will affect the following persons in a country or state outside the jurisdiction of this Court –

    a) The Respondent or its officer or his agent appointed by power of attorney;
    b) Any person who –
       i. Is subject to the jurisdiction of this Court;
       ii. Has been given written notice of this Order at his residence or place of business within the jurisdiction of this Court; and
       iii. Is able to prevent acts or omissions outside the jurisdiction of this Court which constitute or assist in a breach of the terms of this Order; and

c) Any other person, only to the extent that this Order is declared enforceable by or is enforced by a Court in that country or state.

### 23. Assets located outside England and Wales

Nothing in this Order shall, in respect of assets located outside England and Wales, prevent any third party from complying with –

(1) what it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the country or state in which those assets are situated or under the proper law of any contract between itself and the Respondent; and

(2) any orders of the Courts of that country or state, provided that reasonable notice of any application for such an order is given to the Applicant's solicitors.

### 24. Service

Without prejudice to the Respondent's rights to challenge the jurisdiction of the Courts of England and Wales, the Applicants have permission to serve this Order on:

(1) The First Respondent, by email to Isaac.Barron@asserson.co.uk; Steven.Philippsohn@asserson.co.uk; Baruch.Baigel@asserson.co.uk; and Aaron.Churney@asserson.co.uk

(2) The Second Respondent by email to cpollack@cov.com and eeccles@cov.com

(3) The Third Respondent, Fourth Respondent and Fifth Respondent by email to alexander.weinberg@wallace.co.uk and Philip.blyghton@wallace.co.uk

(4) The Sixth Respondent by email to KEOliver@petersandpeters.com and idaskalova@petersandpeters.com and vmeerovich@petersandpeters.com

(5) The Seventh and Eighth Respondent by email to nicola.boulton@byrneandpartners.com and Elizabeth.Seborg@byrneandpartners.com.

13

    This Order shall be deemed served on the relevant Respondent, and personal service shall be dispensed with pursuant to CPR 81.8(2)(b), upon service of the Order by the Applicants in accordance with the step(s) identified in respect of that Respondent at paragraph 24 above.

**COMMUNICATIONS WITH THE COURT**

All communications to the Court about this Order should be sent to the Admiralty and Commercial Court Listing Office, 7 Rolls Building, Fetter Lane, EC4A 1NL, quoting the case number. The telephone number is 02079476826

The offices are open between 10 a.m. and 4.30 p.m. Monday to Friday.

**SCHEDULE A – AFFIDAVITS**

[intentionally blank]

**SCHEDULE B – UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT**

(1) If the Court later finds that this Order has caused loss to the Respondent or any third party, and decides that the Respondent or third party should be compensated for that loss, the Applicant will comply with any order the Court may make. For the avoidance of doubt, this undertaking covers a purported beneficiary of any trust, foundation or similar entity whose assets are frozen by this Order in the event that this Order is subsequently varied or discharged in respect of such assets.

(2) The Applicant will cause the written guarantee in the sum of US$20 million issued by Commerzbank AG London branch dated 6 December 2019 in respect of the Applicant's obligations under paragraph (1) of Schedule B of the Ex Parte WFO, which is stated to expire on 3 April 2020, to either (i) be continued to the Effective Return Date Hearing or (ii) be replaced by a guarantee in substantially the same terms which shall continue to the Effective Return Date Hearing.

(3) [intentionally blank].

(4) [intentionally blank].

(5) [intentionally blank]

(6) Anyone notified of this Order will be given a copy of it by the Applicant's legal representatives.

(7) The Applicant will pay the reasonable costs of anyone other than the Respondent which have been incurred as a result of this Order including the costs of finding out whether that person holds any of the Respondent's assets and if the Court later finds that this Order has caused such person loss, and decides that such person should be compensated for that loss, the Applicant will comply with any order the Court may make.

(8) If this Order ceases to have effect (for example, if the Respondent provides security), the Applicant will immediately take all reasonable steps to inform in writing anyone to whom he has given notice of this Order, that it has ceased to have effect.

(9) The Applicant will not without the permission of the Court use any information obtained as a result of this Order for the purpose of any civil or criminal proceedings, either in England and Wales or in any other jurisdiction, other than this claim.

(10) The Applicant will not without the permission of the Court seek to enforce this Order in any country outside England and Wales or seek an order of a similar nature including orders conferring a charge or other security against the Respondent or the Respondent's assets.

(11) Pending further order of the Court, the Applicant shall not disclose Annex A (Schedule of Assets of Dag Lars Cramer) to the third letter from Covington & Burling LLP to Cleary Gottlieb Steen & Hamilton LLP dated 11 December 2019 or the affidavit to be given by the Second Respondent pursuant to paragraph 12 of the Ex Parte WFO to any other Respondent without giving the Second Respondent 3 clear working days' notice.

**SCHEDULE C – UNDERTAKINGS GIVEN TO THE COURT BY THE SECOND RESPONDENT**

(1) Until the Effective Return Date Hearing or further order, the Second Respondent undertakes that he will not dispose, deal with or diminish the value of any of the assets of Conatus Limited (a) unless the total unencumbered value (as defined in paragraph 8 of the Order) of the Second Defendant's assets exceeds US$1.85 billion; or (b) the dealing with or disposal of any of those assets is in the ordinary or proper course of business.

(2) Until the Effective Return Date Hearing or further order, the Second Respondent undertakes that he will give the Applicant's solicitors 3 clear working days' notice of any transaction (or series of connected transactions) exceeding £25,000 in value relating to the assets of Conatus Limited. Such notice shall (a) state the amount and currency of the transaction (or series of transactions); and (b) give a brief description of the purpose of the transaction (including, in relation to diamond purchases/sales above £25,000 in value, a copy of the relevant contract and invoice(s)).

(3) By 4.30pm on 23 December 2019 the Second Respondent shall provide an explanation as to the basis on which his asset disclosure (given pursuant to paragraphs 11 and 12 of the Ex Parte WFO) should not be disclosed to any other Respondent. Such clarification shall be provided in a letter from the Second Respondent's solicitors to the Applicant's solicitors.

**NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES**

The Applicant's legal representatives are –
Cleary Gottlieb Steen & Hamilton LLP
2 London Wall Place
London EC2Y 5AU, England
T: +44 20 7614 2364 | F: +44 20 7600 1698
jbrady@cgsh.com