UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 1:20-mc-00199-JGK-OTW |

**MEMORANDUM OF LAW IN OPPOSITION TO THE APPLICATION OF VALE S.A., VALE HOLDINGS B.V., AND VALE INTERNATIONAL S.A. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN <u>FOREIGN PROCEEDINGS</u>**

Date:  May 8, 2020

Jennifer Selendy
Altumash Mufti
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
jselendy@selendygay.com
amufti@selendygay.com

*Attorneys for Respondent Fine Arts NY LLC*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

STATEMENT OF FACTS ..............................................................................................................3

LEGAL STANDARD......................................................................................................................7

ARGUMENT ...................................................................................................................................8

I.     Vale Fails to Meet the Statutory Requirements of Section 1782 Because the Discovery Sought Is Not for Use in a "Foreign Proceeding" Under Second Circuit Law ......................................................................................................................................8

II.    In Any Event, the Court Should Exercise Its Discretion to Deny the Application to the Extent it Includes Fine Arts Based on Conclusory Bad Faith Allegations and Because Any Discovery of Fine Arts is Unduly Burdensome...........................................10

CONCLUSION..............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    154 F.3d 24 (2d Cir. 1998) ................................................................................................ 8, 9

*In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take*
    *Discovery Pursuant to 28 U.S.C. Section 1782*,
    2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ..................................................................... 11

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l*
    *to Take Discovery of Chadbourne & Parke LLP*,
    60 F. Supp. 3d 419 (S.D.N.Y. 2014) ................................................................................... 13

*In re Asia Mar. Pac. Ltd.*,
    253 F. Supp. 3d 701 (S.D.N.Y. 2015) ................................................................................. 10

*In re Biovail Corp. Secs. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007) .......................................................................................... 11

*In re Kolomoisky*,
    2006 WL 2404332 (S.D.N.Y. Aug. 18, 2006) ...................................................................... 8

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
    2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ..................................................................... 9, 10

*In re Postalis*,
    2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ........................................................... 8, 10, 11

*In re RSM Prod. Corp.*,
    2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018) ...................................................................... 11

*In re WinNet R CJSC*,
    2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) ..................................................................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ..................................................................................................... 8, 10, 11

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
    2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ...................................................................... 8, 9

*Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*,
    476 F. Supp. 2d 414 (S.D.N.Y. 2007) ................................................................................ 12

*Noel v. The Bank of New York Mellon*,
    2011 WL 3279076 (S.D.N.Y. July 27, 2011) ..................................................................... 11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) .......................................................................................... 7, 10

*Shields v. Citytrust Bancorp*,
    25 F.3d 1124 (2d Cir. 1994) ............................................................................................. 13

**Statutes**

28 U.S.C. § 1782 ............................................................................................................... passim

**Other Authorities**

IRC § 1031 ................................................................................................................................ 6

Respondent Fine Arts NY LLC ("Fine Arts" or "Respondent") respectfully submits this Memorandum of Law in Opposition to the Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively "Vale" or "Applicants") for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, pursuant to 28 U.S.C. § 1782 ("Application," ECF No. 2).

## PRELIMINARY STATEMENT

Fine Arts opposes the Application on grounds that it is legally and factually deficient. Applicants falsely accuse Fine Arts of being involved in an international fraudulent scheme built on bribery and government corruption without any good faith factual basis. Applicants allege affiliation and agency—purportedly connecting the New York investment activities of Fine Arts to adjudicated fraudsters—based merely on speculation and happenstance. Worse, Applicants have insisted on maintaining those harmful allegations despite explicit notice that their inferences regarding Fine Arts were incorrect.

Second Circuit law precludes the relief sought here, in any event, because Applicants request discovery of Fine Arts in aid of an enforcement action. Setting aside the deficiency of the factual allegations linking Fine Arts to the relevant events set forth in the Application, discovery under § 1782 is only available in aid of a foreign adjudicative proceeding, not an enforcement action like the one at issue here. Applicants' own description of the claims at issue in the High Court of Justice in England, as well as their attached pleading, demonstrate conclusively that discovery of Fine Arts is in aid of a post-adjudicative attempt to enforce and collect a portion of a foreign arbitration award.

After the filing of Vale's Application on April 24, 2020, counsel for Fine Arts wrote to counsel for Vale requesting that Applicants retract baseless allegations regarding Fine Arts designed to procure broad subpoena power in support of a foreign enforcement action against Israeli

billionaire, Benjamin Steinmetz ("Steinmetz") and related individuals and companies filed by Vale in England. Applicants declined to correct the misstatements in the Application.

Applicants allege that they entered into a joint venture with BSG Resources Ltd. ("BSGR"), a company ultimately held by Steinmetz and his family, to exploit valuable mining rights in the Republic of Guinea and, as part of that transaction, paid $500 million to BSGR. Applicants further allege that BSGR illegally procured the mining rights that were the subject of the parties' joint venture through bribery and that Applicants have secured a $2 billion arbitration award against BSGR for fraud. Tying this illegal scheme to New York, according to Applicants, is a further alleged scheme on the part of Steinmetz and related parties to invest a portion of their ill-gotten gains from Vale in real estate through two alleged joint ventures with HFZ Capital Group, a prominent New York real estate developer. Having failed to recover money on its judgment from BSGR in England, Vale has launched an enforcement proceeding in England and now seeks expansive discovery under 28 U.S.C. § 1782 in support of that proceeding. Unfortunately, Vale casts its net far too wide and the Application includes conclusory allegations that pull in Fine Arts—a complete stranger to this sordid ordeal—and tarnishes it with baseless allegations aimed at securing extensive discovery in New York.

As a purported justification for seeking discovery of Fine Arts, the Application asserts, without factual support, that Marcos Camhis (a representative of Fine Arts and trustee of the family trust that is the ultimate owner of Fine Arts) is a "known agent[] and nominee[] of Steinmetz's." This is pure fabrication. Heaping further unfounded inferences on top of this falsehood about Mr. Camhis, Vale's Application also falsely states that Fine Arts is "affiliated with Steinmetz" merely because it—like other presumably innocent third parties—has an investment in a Chicago property alongside a second entity that is also alleged in purely conclusory fashion to be "affiliated" with

2

Steinmetz. The only support offered for the inflammatory conclusion that Fine Arts is affiliated with the alleged wrongdoer is (i) Vale's aforementioned false statement that Mr. Camhis, who represented Fine Arts in the 500 North Michigan Avenue investment, is an "agent" of Steinmetz, and (ii) that HFZ Capital Group—a major real estate company that invests alongside many of the biggest names in the business—lists the Chicago property on its website. Vale's conclusory allegations and circular reasoning do not constitute a good faith basis for any request under 28 U.S.C § 1782 relating to Fine Arts.

Both because Vale impermissibly seeks discovery under § 1782 for an enforcement proceeding and because the factual allegations regarding Fine Arts are facially deficient, the Application should be denied and the allegations regarding Fine Arts and Mr. Camhis should be stricken.

## STATEMENT OF FACTS

On April 30, 2010, Vale paid $500 million to obtain 51% of BSGR's interest in an entity that held Guinean mining licenses. Application at 3. Vale ultimately invested another $746 million in the joint venture. Application at 3. A little over two years later, in late 2012, the Guinean Technical Committee for the Review of Mining Titles and Agreements began investigating procurement of the mining licenses held by Vale and BSGR. Application at 4. In April 2014, after the Guinean Technical Committee reported that the mining licenses were procured by bribery and corruption, the Government of Guinea withdrew Vale and BSGR's mining licenses. Application at 4.

Shortly after it lost the rights granted by the Guinean mining licenses, Vale initiated an arbitration against BSGR on April 28, 2014 in the London Court of International Arbitration ("Arbitration") alleging fraudulent misrepresentation, breach of warranty, and frustration. Application at 4. The arbitral tribunal was responsible for adjudicating liability and did so on April 4, 2019, ruling that BSGR was liable for fraudulent misrepresentation and awarding Vale approximately

3

$2 billion in damages, awards, and costs. Application at 4. After liability had been adjudicated in the Arbitration, judgement and enforcement were ordered by the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) ("High Court") on May 9, 2019 and by Judge Broderick of this District on March 5, 2020. Application at 5. BSGR thereafter filed for bankruptcy protection in England, presumably frustrating Vale's collection of the Arbitration award. *See In re: BSG Resources Limited*, No. 19-11845 (SHL) (Bankr. S.D.N.Y. June 3, 2019 (BSGR's petition for recognition of foreign proceeding).

Once BSGR's bankruptcy obstructed Vale's ability to collect on its Arbitration judgement, Vale filed a new action before the High Court regarding much of the same substance as was litigated in the Arbitration (the "English Proceedings"). Application at 5-6; Application, Exhibit KK. The English Proceedings include both liability claims (against new defendants allegedly involved in the fraud that was the subject of the Arbitration) and an enforcement claim. Specifically, the English Proceedings involve (1) "claims in deceit," (2) "conspiracy," and (3) a "proprietary claim." Application, Exhibit KK at Sections I, J, K.

The bulk of the English Proceedings relate to the "claims in deceit" and "conspiracy" allegations. *See generally* Application, Exhibit KK. Vale alleges that Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, the Balda Foundation, and Nysco Management Corp. ("Defendants") (1) made fraudulent misrepresentations and (2) conspired to conceal malfeasance in Guinea (together, the "Liability Action"). Application at 6. These claims substantively concern Defendants' liability to Vale. *See, e.g.*, Application, Exhibit KK at 75 (Vale seeks "[a]n order that the Defendants are jointly and severally liable to pay damages in the sum of US$1,264,429,365; alternatively, in such sum as the court thinks fit"). Neither the Application nor the English Proceedings allege that Fine Arts made fraudulent misrepresentations

4

or were part of Defendants' conspiracy to conceal bribery in Guinea and no discovery is sought of Fine Arts in connection with the Liability Action.

The third claim is "a proprietary claim under English law to the traceable proceeds of Vale's payments to BSGR and Defendants" (the "Enforcement Action"). Application at 6 & Exhibit KK at 72-74. This English claim "allows a victim of fraud to trace and recover the proceeds of the fraud, in distinction from a damages claim." Application at 6. It is this Enforcement Action for which Vale seeks discovery of Fine Arts in the Application. Application at 6-7 ("By this Section 1782 petition, Vale seeks to identify the traceable proceeds of its payment to BSGR through investments in real estate located in the Southern District of New York . . . .").

The Application alleges that Steinmetz and other defendants diverted $500 million that they fraudulently procured from Vale into certain investments in New York and Chicago real estate. Application at 7. In particular, Steinmetz is alleged to have coinvested these gains through certain entities with HFZ Capital Group ("HFZ") in New York and Chicago real estate. Application at 7-8. Those investments are alleged to include 500 North Michigan Avenue, Chicago, IL ("500 North Michigan Avenue"). Application at 12. HFZ reports on its website that it has more than 100 large real estate development projects in New York and elsewhere.

Contrary to Vale's speculation regarding Fine Arts, it does not have any dealings at all with Steinmetz nor any of the related entities described in the Application, let alone any "affiliation" with any of the accused wrongdoers. Declaration of Marcos Camhis ("Camhis Decl.") at ¶¶ 6-9. Applicants alleged without any basis that Mr. Camhis, who represents Fine Arts in its real estate transactions in New York, is an agent or nominee of Steinmetz. Application at 12. In support of this conclusory and false allegation, the Applicants offer the naked assertion that "Camhis is a director of Niron Metals Plc, the entity that is to be awarded valuable Guinean mining rights as a

5

result of BSGR's purported entry into a settlement of a separate ICSID arbitration negotiated between Steinmetz and the Government of Guinea." Application at 12 n.31. But the fact that Mr. Camhis sits on the board of a foreign mining company involved in a transaction that allegedly also involved Steinmetz does not begin to establish that Mr. Camhis has ever had an agency or nominee relationship with him. In fact, Mr. Camhis was never an agent or nominee of Steinmetz—whether through Niron Metals Plc ("Niron") or otherwise. Camhis Decl. at ¶¶ 3, 5, 10. Rather, as Mr. Camhis' declaration makes plain, he has acted, at all relevant times, only on behalf of entities, including Fine Arts, that operate for the benefit of a private family trust organized under the laws of New Zealand. Camhis Decl. at ¶¶ 3, 10. Applicants allege no facts that warrant connection of Fine Arts to the alleged laundering of Vale's money through New York real estate transactions. To the contrary, as set forth in the Camhis Declaration, the funds that were invested by Fine Arts in 500 North Michigan Avenue came from a bona fide IRC § 1031 account that was, in turn, funded by the proceeds of a real estate sale not related, directly or indirectly, to Benjamin Steinmetz or any Steinmetz-related entity. Camhis Decl. at ¶ 9. Additionally, while Mr. Camhis is aware that HFZ Capital Group deals with many real estate investors, he has no knowledge of whether HFZ Capital Group has any business relationship with Benjamin Steinmetz or any Steinmetz-related entity. Camhis Decl. at ¶ 8.

On April 24, 2020, Vale filed the Application at issue seeking permission to serve thirty-five (35) subpoenas on real estate entities in New York. ECF No. 1. On May 4, 2020, counsel for Fine Arts and Mr. Camhis informed Vale of the false statements in the Application and the obvious harm caused by Applicants falsely depicting Fine Arts and Mr. Camhis as participants in illegal activity stemming from fraud and bribery. Declaration of Jennifer Selendy ("Selendy Decl."), Ex. 1. On May 5, 2020, Vale confirmed that it was unwilling to correct misrepresentations relating to

Fine Arts and Mr. Camhis in the Application.  Selendy Decl., Ex. 2.  Rather than amending the Application to remove the misrepresentations about Fine Arts and Mr. Camhis, and to remove Fine Arts generally from the Application, Vale doubled down on its lies, stating that Fine Arts is "obviously free to oppose the 1782 Application."  Selendy Decl., Exhibit 2.  Fine Arts now opposes Vale's Application.

## LEGAL STANDARD

To get discovery under 28 U.S.C. § 1782, Vale must first establish all the statutory prerequisites: "(1) that the person from whom discovery is sought reside (or can be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or any interested person."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quotation marks omitted).[1]

If the movant does not show that each prerequisite is satisfied, then the motion fails.  But a court need not order discovery simply because the statutory prerequisites are met—it must then exercise its discretion to decide whether to grant or deny the petition.  *Id.* at 83-84.  In exercising that discretion, courts consider the four *Intel* factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) the "nature of the foreign tribunal, the "character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign

---

[1] Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a).

7

country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  Here, Applicants have failed to plead the prerequisite grounds for obtaining relief under § 1782.  The Application also fails insofar as it seeks discovery of Fine Arts because its conclusory allegations have no good faith factual basis and were maintained following notice of their falsehood.  Such allegations are also directly refuted by the sworn declaration of Marcos Camhis, submitted herewith.

## ARGUMENT

I.  **Vale Fails to Meet the Statutory Requirements of Section 1782 Because the Discovery Sought Is Not for Use in a "Foreign Proceeding" Under Second Circuit Law**

Vale must meet all three statutory prerequisites for relief under § 1782.  Failure to meet any element is fatal and, here, the Application does not establish that discovery from Fine Arts is sought for use in a "foreign proceeding" as that term is defined by Second Circuit law.

As the applicant, Vale bears the burden of sufficiently alleging all statutory prerequisites of § 1782.  *In re Postalis*, 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018) (Koeltl, J.) ("As the applicant, the burden is on Postalis . . . .") (citing *In re Kolomoisky*, 2006 WL 2404332, at *3 (S.D.N.Y. Aug. 18, 2006)).  To satisfy the foreign proceeding use requirement of § 1782, Vale must establish that the discovery is for (1) a foreign proceeding "within reasonable contemplation," *Intel*, 542 U.S. at 259 and (2) that the "foreign proceeding is adjudicative in nature," *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998).  An adjudicative proceeding is one where a tribunal must "decide the 'merits of the dispute.'"  *Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015).  In other words, the Second Circuit made clear in *Euromepa* that § 1782 discovery is not available in aid of post-adjudicative foreign enforcement proceedings: "section 1782 discovery is available in aid of 'adjudicative' foreign proceedings, and is inappropriate where the merits of a controversy have already been decided by the

8

foreign tribunal." *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (citing *Euromepa*, 154 F.3d at 28 (2d Cir. 1998)); *see also Jiangsu Steamship*, 2015 WL 3439220, at *7 ("[A]s long as the 'adjudicative' aspect of *Euromepa* remains good law, I am bound by it and must apply it to deny the Petition.").

As discussed *supra*, Vale's pleading in the English Proceeding has both a liability component (the Liability Action) and an enforcement component (the Enforcement Action). Application, Exhibit KK. The Liability Action concerns Defendants alone on claims of fraudulent misrepresentation and conspiracy, and there is no allegation before this Court suggesting that the discovery sought from Fine Arts is relevant to that portion of the English Proceeding. Instead, the Application makes plain that discovery sought from Fine Arts is requested in an effort to identify the "traceable proceeds" of Vale's $500 million payment to BSGR through a "proprietary claim," under English law that would allow recovery of any identified proceeds of the fraud.

Applicants admit that the Enforcement Action is not about adjudicating liability. Application, Ex. KK at 72 (the Enforcement Action arises "[a]s a result of Vale's institution of arbitration proceedings against BSGR on 28 April 2014 and/or the Award"). It is a claim that "allows a victim of fraud to trace and recover the proceeds of the fraud, ***in distinction from a damages claim***." Application at 6 (emphasis added). Thus, it is clear that Vale's foreign Enforcement Action is distinct from any adjudicative claim and arose only after a favorable judgement for fraud was obtained in the Arbitration. In Vale's own words, a party may only bring a claim like the Enforcement Action if it is already "a victim of fraud." Application at 6. Applicants further make clear that it is "[i]n connection with this claim [that] Vale seeks all necessary accounts and inquiries to trace and identify the traceable proceeds of the funds received by the Defendants" and that "[b]y

9

this Section 1782 petition, Vale seeks to identify the traceable proceeds of its payment to BSGR." Application at 6.

Vale appears to be under the impression that merely being before the High Court is enough to satisfy the foreign proceeding requirement, putting forth one conclusory sentence on this element, Application at 15 ("Second, the discovery sought is for use in proceedings before a 'foreign or international tribunal' – the High Court."), and citing two district court cases from outside of this Circuit to support that assertion. But in the Second Circuit, "[n]ot all foreign matters are 'proceedings' within the meaning of section 1782." *In re MT BALTIC SOUL*, 2015 WL 5824505, at *2; *see also In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) ("[T]he Second Circuit has made clear that the requirements of § 1782 are not satisfied by the requesting party reciting some minimal relation to a pending foreign proceeding."). Vale's single conclusory assertion does not satisfy the statutory prerequisite that the discovery is for use in a foreign proceeding. *See id; In re Postalis*, 2018 WL 6725406, at *4 (holding that applicant had not "carried its burden" where "[its] application is unlike other § 1782 requests where the applicant made a sufficient showing that the evidence sought was for use in a foreign proceeding").

Because the Enforcement Action is not an adjudicative proceeding, it is not a "foreign proceeding" as that term has been defined by controlling Second Circuit law. Thus, the Application fails to establish a threshold statutory requirement and must be denied.

## II. In Any Event, the Court Should Exercise Its Discretion to Deny the Application to the Extent it Includes Fine Arts Based on Conclusory Bad Faith Allegations and Because Any Discovery of Fine Arts is Unduly Burdensome

Even if controlling precedent did not bar the Application with respect to Fine Arts, this Court should deny it on grounds of undue burden and bad faith. Were the statutory grounds for this § 1782 application met—and they are not—the decision to grant or deny the application still rests with the discretion of district court as guided by the *Intel* factors. *Schmitz*, 376 F.3d at 84-

10

85. The fourth *Intel* factor asks the court to consider whether the request is "unduly intrusive or burdensome," 542 U.S. at 265, and this "fourth *Intel* factor permits the denial of a § 1782 application that is vexatious and made in bad faith," *In re RSM Prod. Corp.*, 2018 WL 1229705, at *3 (S.D.N.Y. Mar. 9, 2018); *see also In re Postalis*, 2018 WL 6725406, at *5 ("Indeed, courts in this Circuit have instructed that, if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." (quotation marks and citation omitted)); *In re WinNet R CJSC*, 2017 WL 1373918, at *6 (S.D.N.Y. Apr. 13, 2017) ("[I]f a § 1782 application is made in bad faith, ... the court is free to deny the application in toto." (alteration in original and citation omitted)).

District courts evaluating a § 1782 application apply the familiar standards of Rule 26 and Rule 45 of the Federal Rules of Civil Procedure. *In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012). This involves a balancing test between "the probative value of the information against the burden of production on … non-parties." *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007). The factors to consider are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Id*. The party seeking discovery bears the burden on showing relevance. *Noel v. The Bank of New York Mellon*, 2011 WL 3279076, at *2 (S.D.N.Y. July 27, 2011).

Here, Applicants have utterly failed to set forth facts—as opposed to unsupported conclusions—that connect Fine Arts to the alleged scheme of Steinmetz to launder his ill-gotten gains

11

through investments in New York real estate. Vale asserts that Fine Arts is "affiliated" with Steinmetz because Mr. Camhis represented Fine Arts in the 500 North Michigan Avenue acquisition and because Mr. Camhis is an "agent or nominee" of Steinmetz. Application at 12.[2] Yet neither of these disparaging contentions is supported by a single fact and they are facially insufficient to justify the discovery sought here.

In any event, and for avoidance of doubt, Fine Arts offers testimony to establish that the allegations are false. There is not, and has never been, any affiliate relationship between Fine Arts and Steinmetz or related entities. Camhis Decl. at ¶¶ 6-9. Fine Arts' investment in 500 North Michigan Avenue came from an entirely unrelated, bona fide source, and Mr. Camhis has no knowledge of whether or not Steinmetz or any related entity may have an interest in that property. Camhis Decl. at 8. Moreover, Camhis has never acted as an agent or nominee of Steinmetz. Camhis Decl. at ¶ 5. Without any good faith factual basis to connect Fine Arts to the alleged wrongdoers, Vale's application serves only to inflict unwarranted reputational and other harms on an innocent third party. Indeed, because Vale has falsely alleged that Fine Arts is affiliated with parties responsible for a massive scheme to defraud founded in bribery and government corruption, the Application threatens to cast an enduring shadow over its legitimate and wholly above-board investment activities in the New York and Chicago real estate markets. The Federal Rules of Civil Procedure recognize the harm associated with being improperly associated with such grave

---

[2] Vale fails to allege any facts that would even suggest an agency relationship between Steinmetz and Mr. Camhis. *Cf. Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007) ("an agency relationship is established where there is evidence of (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; (4) control by the principal; and (5) power of the agent to alter the legal relations between the principal and third persons and between the principal and himself." (internal quotation marks and citation omitted)).

misconduct. *See, e.g.*, *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994) (Rule 9(b) protects reputations "from improvident charges of wrongdoing").

Any grant of relief to Vale based on this Application would thus unduly burden Fine Arts—a nonparty to the English Proceedings—with the unjust challenge of having to prove the absence of actual connections to the wrongdoers in a case to which it has no connection. With no probative value—or even threshold relevance—established by Vale, "[t]he probative value of the materials at issue . . . does not come close to justifying imposing any, let alone all, of these burdens." *In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014).

## CONCLUSION

Fine Arts respectfully requests that this Court deny Vale's Application as it relates to Fine Arts, strike allegations in the Application relating to Fine Arts and Marcos Camhis, and grant such other relief as is just and proper.

Dated: New York, NY
May 8, 2020

Respectfully submitted,

SELENDY & GAY PLLC

By:  /s/       *Jennifer Selendy*
Jennifer Selendy
Altumash Mufti
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
amufti@selendygay.com

*Attorneys for Respondent Fine Arts NY LLC*