UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 1:20-mc-00199-JGK-OTW |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF VALE S.A., VALE HOLDINGS B.V., AND VALE INTERNATIONAL S.A. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN <u>FOREIGN PROCEEDINGS</u>**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa M. Schweitzer
Lisa Vicens
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A, Vale Holdings B.V., and Vale International S.A.*

## **TABLE OF CONTENTS**

|  | **PAGE** |
|---|---:|
| TABLE OF AUTHORITIES ................................................................................................. | ii |
| PRELIMINARY STATEMENT ........................................................................................... | 1 |
| ARGUMENT ......................................................................................................................... | 2 |
| I.   The Application Easily Meets Section 1782's Statutory Standards ............................. | 2 |
| II.  The Discretionary Factors Under Section 1782 All Favor Discovery ......................... | 6 |
| CONCLUSION ...................................................................................................................... | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1782 .................................................................................................................. 2

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 7

**Cases**

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
673 F.3d 76 (2d Cir. 2012) ................................................................................................... 3

Deposit Ins. Agency v. Leontiev,
No. 17-MC-00414 (GBD)(SN), 2018 WL 3536083 (S.D.N.Y. July 23, 2018) .................. 7

In re Accent Delight Int'l Ltd.,
869 F.3d 121 (2d Cir. 2017) ............................................................................................ 3, 5-6

In re Application of BNP Paribas Jersey Trust,
No. 18-mc-47 (PAC), 2018 WL 895675 (S.D.N.Y. Feb. 14, 2018) .................................... 6

In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l
to Take Discovery of Chadbourne & Parke LLP,
60 F. Supp. 3d 419 (S.D.N.Y. 2014) ................................................................................... 10

In re Asia Mar. Pac. Ltd.,
253 F. Supp. 3d 701 (S.D.N.Y. 2015) .............................................................................. 5, 6

In re Euromepa S.A.,
154 F.3d 24 (2d Cir. 1998), abrogated by Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004) ............................................................................................................. 5

In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG,
No. 15 MISC 319 (LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) .......................... 5, 6

In re Gorsoan Ltd.,
No. 18-MC-431 (RA), 2020 WL 409729 (S.D.N.Y. Jan. 24, 2020),
appeal docketed, No. 20-678 (2d Cir. Feb. 21, 2020) ......................................................... 6

In re Optimal Inv. Servs., S.A.,
773 F.3d 456 (2d Cir. 2014)......................................................................................... 3

In re RSM Prod. Corp.,
17-mc-213 (DLC), 2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018)................................. 10

In re Simetra Glob. Assets Ltd.,
No. 16-2389 (JLL) (JAD), 2016 WL 3018692 (D.N.J. May 25, 2016)....................... 3

In re WinNet R CJSC,
16-mc-484 (DLC), 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) ...................................... 10

Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004)................................................................................................... 5, 6

Jiangsu Steamship Co. v. Success Superior Ltd.,
No. 14 Civ. 9997 (CM) 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ............................... 5, 6

Johnson v. J. Walter Thompson U.S.A., LLC,
16 Civ. 1805 (JPO)(JCF), 2017 WL 3055098 (S.D.N.Y. Jul. 18, 2017)............................ 10

Linsen Int'l Ltd. v. Humpuss Sea Transport PTE LTD,
No. 09-CV-10393 (GBD), 2011 WL 1795813 (S.D.N.Y. Apr. 29, 2017) ......................... 6

Strike 3 Holdings, LLC v. Doe,
19-CV-2552 (LAK) (OTW), 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) ........................ 7

# **PRELIMINARY STATEMENT**[1]

  Fine Arts NY LLC's ("Fine Arts") Opposition to Vale's Application (the "Opposition" or "Opp.") is so bizarre that there must be more than meets the eye. Were Beny Steinmetz a stranger to Fine Arts as it contends, Fine Arts would have virtually nothing to produce and could fulfill its obligations with far less burden and expense than preparing and litigating their Opposition. As to the other purported motivation for Fine Arts' Opposition – that it and its representative Marcos Camhis are suffering reputational harm by the mere suggestion that they may possess documents concerning Steinmetz – its Opposition has brought far greater publicity to it and its relationship with Steinmetz than simply complying. Vale's Section 1782 petition contains no suggestion that Camhis or Fine Arts committed any wrongdoing, but only that Fine Arts may have documents relevant to Steinmetz's investments, a relevant issue to the adjudication of a foreign proceeding against Steinmetz. In short, Camhis and Fine Arts doth protest too much and, in so doing, they are the ones shining a spotlight on themselves.

  The Opposition is also exceedingly narrow. Fine Arts implicitly concedes two of Section 1782's three statutory requirements and three of its four discretionary factors. Its contention with regard to the third statutory requirement – that Vale's English Proceedings are not adjudicative – is legally baseless, and is predicated on glaring, indisputable misrepresentations of those proceedings. Contrary to Fine Arts' assertion, Steinmetz and several other defendants have already filed defenses hotly contesting liability on all claims in the English Proceedings, including Vale's proprietary claim that Fine Arts oddly contends has already been adjudicated. While Vale believes without question that Steinmetz should be found liable in the English

---

[1] Unless otherwise indicated, capitalized terms not defined herein have the meaning ascribed to them in the Memorandum of Law in Support of *Ex Parte* Application for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in Foreign Proceedings, ECF No. 2.

Proceedings (including in respect of the proprietary claim to the extent that Steinmetz received the proceeds of the fraud), the English High Court has not yet found him or any other Defendant in the English Proceedings to be liable under the proprietary (or any other) claim. The question of whether Steinmetz received proceeds of the fraud, and what happened to those proceeds, is squarely in issue in the English Proceedings and is the very issue that Vale's Section 1782 application is directed at.

Fine Arts' only other defense is that requiring it to produce documents that it contends do not exist is somehow "unduly burdensome" because Vale's allegations were in bad faith. On its face, that contention is nonsensical; if Fine Arts has no documents, there is no burden whatsoever in having to produce a null set. In any event, Vale has more than a good faith belief that Fine Arts, including through its representative Camhis, has a relationship with Steinmetz so as to surpass the relatively low bar of serving a third-party subpoena for its Steinmetz-related documents. Even disregarding evidence that Vale received pursuant to a confidentiality order of the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") overseeing BSGR's Chapter 15 petition, Vale is aware of at least <u>eight</u> separate ties between Camhis and Steinmetz that Camhis failed to disclose in his declaration.[2]

## ARGUMENT

### I. The Application Easily Meets Section 1782's Statutory Standards

Two of the three statutory requirements for a Section 1782 petition are uncontested: (1) Fine Arts resides or can be found in the district of the district court to which the application is

---

[2] Vale is actually aware of more than the eight undisclosed ties between Camhis and Steinmetz (plus the ninth that Camhis concedes), but given that (i) Vale must show nothing other than a good faith basis to believe that Fine Arts may have documents relevant to Steinmetz's investment of proceeds subject to claims in the English Proceedings, and (ii) Vale is subject to confidentiality restrictions imposed by the Joint Administrators of BSGR regarding information it possesses, Vale will offer the Court just a sampling of its knowledge in order to demonstrate the good faith of its belief. Should the Court view this as insufficient to justify the requested subpoena of Fine Arts, Vale would be pleased to seek a resolution of the confidentiality issues as necessary.

made, and (2) Vale is an "interested person" that may appropriately seek discovery under Section 1782.  See Opp. at 8-10.[3]  Fine Arts only makes the bizarre claim that the evidence sought in the Subpoena is not "for use in a foreign proceeding before a foreign or international tribunal" because the English Proceedings before the English High Court are not "adjudicative."  See id.  This, frankly, is preposterous.  The English Proceedings are exactly the type of foreign proceeding that courts routinely find meet this requirement.

Fine Arts does not dispute that the English High Court meets the Second Circuit's definition of a "foreign or international tribunal," nor could it credibly do so.[4]  Fine Arts instead contends that Vale's proprietary claim – one of several causes of action in the English Proceedings – before the English High Court is not "adjudicative" because it does not seek damages as its remedy.  Opp. at 9.  The Second Circuit, however, has squarely rejected the contention that an applicant must seek any particular type of relief in a foreign proceeding (such as monetary damages) in order to be entitled to discovery under Section 1782.[5]

Even if the court were to apply Fine Arts' artificially narrow definition of "adjudicative," in contradiction of Second Circuit precedent, the English Proceedings would meet such a definition.  Vale seeks discovery for use in its pending claims before the English High Court, where Vale alleges that the Defendants made fraudulent misrepresentations and entered into a

---

[3] The court may grant a Section 1782 petition if:  "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).

[4] See, e.g., In re Simetra Glob. Assets Ltd., No. 16-2389 (JLL) (JAD), 2016 WL 3018692, at *3 (D.N.J. May 25, 2016) ("Petitioners seek the discovery at issue for use in a civil proceeding 'currently pending before the High Court of Justice, Queen's Bench Division, Commercial Court, Royal Courts of Justice' in London, England.  The Court finds that this satisfies § 1782's 'foreign tribunal' requirement." (citation omitted)).

[5] See In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017) ("We never have required, as [respondent] now urges us to do, that an applicant be pursuing a certain type of relief in that tribunal."); see also In re Optimal Inv. Servs., S.A., 773 F.3d 456, 461 (2d Cir. 2014) ("The Swiss criminal investigation in the instant case is exactly the type of proceeding that . . . the statue . . . intended to reach.").

3

conspiracy for the purpose of inducing Vale to enter into the joint venture with BSGR. Vale is seeking $1.264 billion in damages plus interest, as well as a proprietary claim.

Vale's proprietary claim is that the traceable proceeds of the fraud are held in constructive trust and that the Defendants, to the extent they received the proceeds of the fraud, should be ordered to transfer those funds or their traceable proceeds to Vale.[6] There is no cognizable legal theory under English law (or U.S. law, frankly) pursuant to which proprietary or constructive trust claims such as these are not adjudicative.[7]

While Fine Arts wrongly conflates this claim against Steinmetz and the other defendants with the findings in the Arbitration that *BSGR* defrauded Vale in order to mischaracterize the English Proceedings as a mere "Enforcement Action," the English Proceedings raise different claims against a different set of defendants.[8] Vale has never claimed the Arbitration is *res judicata*, and liability on Vale's proprietary claim is contested by all Defendants in the English Proceedings.[9] Steinmetz, for example, declares that he was a "bona fide purchaser for value without notice in respect of any traceable proceeds received by him," and denies that Vale has a proprietary claim against him.[10] Accordingly, before there can be any finding of liability against the Defendants – let alone the imposition of a remedy – the English High Court must *adjudicate* whether particular assets represent the traceable proceeds of a fraud against Vale and whether a defendant can or cannot establish a defense. This is the epitome of an "adjudicative" proceeding contemplated by Section 1782.

---

[6] See ECF No. 3-37, Ex. KK, Particulars of Claim.
[7] For an overview of English law on proprietary claims, see, e.g., Ex. 1, Glenn v Watson [2018] EWHC (Ch) 2016 at [540]; Ex. 2, Shalson v Russo [2003] EWHC (Ch) 1637 [122]-[126]; Ex. 3, Modern Equity.
[8] Vale's judgment in the Arbitration was against BSGR, see ECF No. 3, Ex. JJ, Final Award, while the English Proceedings seeks judgment against an entirely different set of individuals and corporate entities: Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, the Balda Foundation and Nysco Management Corp. See ECF No. 3-42, Worldwide Freezing Order, Ex. PP.
[9] See Exs. 4-10, Defences of Steinmetz, Cramer, Struik, Avidan, Tchelet, Clark, Balda and Nysco.
[10] See Ex. 4, Defence of Steinmetz ¶ 202.

Fine Arts next incorrectly argues that the English Proceedings are not "adjudicative" because they "arose only after a favorable judgment for fraud was obtained in the Arbitration," defining Vale's proprietary claim as an "Enforcement Action" against BSGR and its other claims as a "Liability Action." Opp. at 9. This artificial effort to split the English Proceedings in two and rebrand the proprietary claim as a mere enforcement action has no basis in law or fact. While Vale has successfully enforced the Arbitration Award in entirely *separate* proceedings in the United Kingdom and the United States, the English Proceedings at issue here comprise a completely independent action from any such enforcement proceedings and constitute *one* action in which *every* claim seeks a finding of liability against Steinmetz and the other Defendants.[11]

Finally, the authority Fine Arts cites for its argument that this statutory requirement has not been met because the merits of the dispute have already been adjudicated are all irrelevant to the present dispute. Not one of the cited cases involved discovery sought in support of ongoing proceedings on the merits.[12] Nor is there any contention here, as in In re Euromepa S.A., for example, that the foreign litigation ended before the U.S. court decided the Section 1782 petition.[13] Even were these authorities remotely on point, they all precede (and Fine Arts

---

[11] While immaterial here, Fine Arts also incorrectly argues that BSGR filed for bankruptcy in England, only after Judge Broderick issued a judgment recognizing and enforcing the Arbitration Award on March 5, 2020, "presumably frustrating Vale's collection of the Arbitration award." Opp. at 4. This statement is inaccurate for several reasons. First, BSGR has never filed for bankruptcy protection in England. Second, BSGR entered into administration in Guernsey in March 2018, more than a year before the Arbitral Tribunal issued the Arbitration Award. See Ex. A, Declaration of Malcolm Cohen in Support of Verified Chapter 15 Petition, dated June 3, 2019. Finally, BSGR filed a petition for Chapter 15 recognition of its Guernsey administration on June 3, 2019 in the United States Bankruptcy Court for the Southern District of New York, nine months before the Award was granted recognition and enforcement by Judge Broderick on March 5, 2020. See Ex. B, Chapter 15 Petition for Recognition of a Foreign Proceeding, dated June 3, 2019.

[12] See In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG, No. 15 MISC 319 (LTS), 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (English High Court had already granted summary judgment by the time the Section 1782 petition was filed); Jiangsu Steamship Co. v. Success Superior Ltd., No. 14 Civ. 9997 (CM) 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) (petitioner sought evidence in support of attachment proceedings after the conclusion of a proceeding on the merits); In re Asia Mar. Pac. Ltd., 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) (petitioner sought evidence in support of attachment where defendant had defaulted on the merits).

[13] 154 F.3d 24 (2d Cir. 1998), abrogated by Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).

conveniently ignores) the Second Circuit's decision in In re Accent Delight, which held that a Section 1782 petitioner need only show "that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" 869 F.3d at 132.[14]

## II. The Discretionary Factors Under Section 1782 All Favor Discovery

With respect to the four-factor test established in Intel, 542 U.S. at 264-65, Fine Arts does not dispute that three of the four factors favor Vale: (1) Fine Arts is not a participant in the foreign proceeding; (2) the English High Court is receptive to U.S. federal-court judicial assistance; and (3) the request does not conceal an attempt to circumvent foreign proof-gathering restrictions or other U.S. or foreign country policies. Opp. at 10-13. Fine Arts argues only that the fourth factor favors denial of the Section 1782 petition, as the Subpoena to Fine Arts is "unduly intrusive and burdensome" because it is "vexatious and made in bad faith." Opp. at 11-13. Critically, Fine Arts neither objects to the breadth of Vale's Subpoena nor claims that any specific document request is unduly burdensome. Instead, it rests its entire argument on its assertion that Fine Arts and Camhis have no relationship with Steinmetz and thus Vale could only have been acting in bad faith to suggest otherwise.

Fine Arts comes nowhere close to meeting *its* burden to present specific evidence to prove that Vale is acting in bad faith.[15] Fine Arts "offers testimony to establish that [Vale's]

---

[14] More recently, Judge Abrams explicitly cautioned against overextending the reasoning in BALTIC SOUL, Jiangsu Steamship, and Asia Mar. Pac., the three principle cases cited by Fine Arts. See In re Gorsoan Ltd., No. 18-MC-431 (RA), 2020 WL 409729, at *4 (S.D.N.Y. Jan. 24, 2020) (granting asset discovery to determine respondent's compliance with an Asset Freeze and Disclosure Order). In rejecting the argument that Section 1782 bars discovery in aid of asset identification or collection, the court followed established precedent in this district granting Section 1782 discovery in support of asset freezing orders. See In re Application of BNP Paribas Jersey Trust, No. 18-mc-47 (PAC), 2018 WL 895675, at *2 (S.D.N.Y. Feb. 14, 2018) (ordering discovery under Section 1782 to determine compliance with a foreign tribunal's Freezing and Disclosure Order); Linsen Int'l Ltd. v. Humpuss Sea Transport PTE LTD, No. 09-CV-10393 (GBD), 2011 WL 1795813, at *1 (S.D.N.Y. Apr. 29, 2017) (ordering discovery under Section 1782 related to a worldwide freezing injunction in English courts). Thus, even had the proprietary claim already been adjudicated – which it incontrovertibly has not been – it would be sufficient for purposes of Section 1782 that the English Proceedings are in furtherance of the worldwide freezing order issued against Steinmetz by the English High Court.

[15] See, e.g., Gorsoan, 2020 WL 409729, at *7 (respondents to a 1782 petition have the burden to prove bad faith).

6

allegations are false,"[16] but such conclusory denials of the merits of Vale's allegations do not meet the standard for bad faith.  In a Section 1782 proceeding, "the only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal."[17]

Rules 26 and 45 do not require a party to prove the merits of its contentions before obtaining discovery; the party seeking discovery need only show that the matter "is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevance for purposes of discovery "is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense."  Strike 3 Holdings, LLC v. Doe, 19-CV-2552 (LAK) (OTW), 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019).[18]  Nor is there any requirement under Rule 26(b), Rule 45 or Section 1782 that there be an agency relationship between Camhis and Steinmetz in order to obtain third party discovery, as Fine Arts implies.[19]

Putting aside that Vale has no burden whatsoever to establish the good faith of its belief that Fine Arts may have discoverable evidence – particularly given that Fine Arts offers no evidence of bad faith other than to suggest that Vale is wrong to believe it possesses responsive documents – Vale has substantial support for its belief of a relationship between Fine Arts or Camhis and Steinmetz so as to justify the service of a subpoena.  Indeed, just based on a portion

---

[16] Fine Arts argues: (i) "[t]here is not, and has never been, any affiliate relationship between Fine Arts and Steinmetz or related entities," (ii) "Fine Arts' investment in 500 North Michigan Avenue came from an entirely unrelated, bona fide source, and Mr. Camhis has no knowledge of whether or not Steinmetz or any related entity may have an interest in property," and (iii) "Camhis has never acted as an agent or nominee of Steinmetz."  Opp. at 12.

[17] Deposit Ins. Agency v. Leontiev, 17-MC-00414 (GBD)(SN), 2018 WL 3536083, at *2 (S.D.N.Y. July 23, 2018) (quoting In re Republic of Ecuador, 735 F.3d 1179, 1182 (10th Cir. 2013)) (allegations are not evidence of bad faith where they "are more indicative of a disputed version of the facts . . . which the Court is not permitted to resolve at this time").

[18] Fine Arts erroneously invokes the heightened pleading standard of Federal Rule of Civil Procedure 9(b), see Opp. at 12-13, but this rule clearly does not apply (and to Vale's understanding, has never been applied) in the context of a Section 1782 petition.  Rule 9(b) applies only to pleadings governed by the Federal Rules of Civil Procedure that allege fraud or mistake, not to petitions for discovery in aid of foreign proceedings.

[19] See Opp. at 12 n.2.

7

of what Vale is legally entitled to and able to disclose at this stage, Vale can trace at least nine separate relationships between Fine Arts or Camhis and Steinmetz.  These relationships include:

1. **500 North Michigan Avenue**:  First and foremost, Fine Arts and Steinmetz appear linked through the subject of this Section 1782 petition – 500 North Michigan Avenue.  Camhis claims that this property was acquired with funds entirely from an undisclosed source unrelated to Steinmetz, but the Specialty Warranty Deed reveals that on November 16, 2017, Camhis's Fine Arts jointly purchased this property alongside 500 NMA Acquisition Co LLC ("500 NMA"), a company whose registered signatory, Gregg Blackstock, BSGR's former CEO of Energy, has been a director of at least *19 companies* affiliated with Steinmetz.[20]  Indeed, 500 NMA's address is the offices of Steinmetz's US lawyer at Bryan Cave Leighton Paisner LLP in New York.[21]

2. **Niron**:  As Camhis concedes, he is a director of Niron, which was formed for the purpose of acquiring Guinean mining rights as part of a proposed settlement of BSGR's arbitration against the Republic of Guinea.[22]  The proposed settlement was reportedly negotiated by Steinmetz on behalf of BSGR and Niron, and includes a provision under which the Government of Guinea would agree to withdraw any criminal complaints against Steinmetz.[23]  Steinmetz's company Nysco stated that the settlement involved a "new group of investors (presented by and including Mr. Beny Steinmetz)"[24]  Camhis has served as Niron's representative in its meetings with BSGR to discuss the ICSID settlement.[25]

3. **GSOL**:  Camhis is a director of Global Special Opportunities Limited ("GSOL"),[26] which is one of Niron's two shareholders.[27]  In April 2019, Niron informed the Financial Times that "Beny Steinmetz does not have a participation in Niron through GSOL but may have a minority participation directly in Niron in the future."[28]

4. **Octea**:  Octea Limited ("Octea") is a wholly-owned subsidiary of BSGR that operates a diamond mine in Sierra Leone.  Octea entered into a loan facility agreement with Standard Chartered Bank for $92 million on January 28, 2011.[29]  On September 20, 2016, Camhis's GSOL replaced Standard Chartered as lender to Octea.[30]

5. **Star West**:  Another Camhis-affiliated entity, Star West Investments Limited ("Star West"), received a transfer of the Octea debt from GSOL on November 22, 2016.[31]  BSGR

---

[20] Ex. C, "Management Team," Feb. 20, 2014, https://www.bsgresources.com/about/senior-management.
[21] *See* Ex. D, Special Warranty Deed, Nov. 16, 2017.
[22] Camhis Decl. ¶ 10; Ex. E, Neil Hume and David Sheppard, *Mick Davis Comeback orchestrated by Beny Steinmetz's group*, Financial Times, Apr. 15, 2019 ("FT Article").
[23] Ex. F, Transaction Agreement between the Republic of Guinea and BSGR, dated March 20, 2019; Ex. G, *Quand Nicolas Sarkozy joue les intermédiaires d'affaires*, Le Monde, Aug. 23, 2019 (translated).
[24] Ex. H, *Settlement of the Dispute between the Republic of Guinea and BSGR*, Business Wire, Feb. 25, 2019.
[25] Ex. I, JA8957; JA9002; JA9027 (meetings on February 14, 2019, April 10, 2019, and May 29, 2019).
[26] Ex. J, Register of Directors and Officers of Global Special Opportunities Ltd., June 22, 2017.  GSOL is a private equity firm incorporated in the Bahamas.
[27] FT Article.
[28] Id.
[29] Ex. K, Application for variation of charge under Section 164(2).
[30] Id.
[31] Id.

8

acted as guarantor for these loan facilities, and lists its debt to Star West among its outstanding debts in the administration.[32]

6. **Cunico**: Camhis and Steinmetz co-invested in a ferronickel mining project in Macedonia of Cunico Resources N.V. ("Cunico"), a joint venture between International Mineral Resources BV ("IMR") and BSGR Coöperatief U.A., a Dutch BSGR affiliate beneficially owned by Steinmetz. According to Dutch media reports, IMR alleges that Camhis's GSOL and Steinmetz's BSGR (among others) conspired to acquire Cunico's distressed mining business to merge it with another nickel company owned by GSOL.[33]

7. **Tower View**: Camhis is a director of Tower View Asset Management, which offered to purchase BSGR's interest in Cunico when Cunico was facing bankruptcy.[34]

8. **Marc Struik**: Marc Struik, the former CEO of BSGR Mining and Metals and a Defendant in the English Proceedings, also served as an advisor for a GSOL subsidiary, IC Nickel.[35] Struik reportedly now works for GSOL[36] and its Ivory Coast nickel mining operation, Compagnie Miniere du Bafing.[37]

9. **LSL**: A closely-related business associate of Camhis is funding BSGR's lawsuit against George Soros and the Open Society Foundation pending in the Southern District of New York before Judge Keenan.[38] This lawsuit is funded by Litigation Solutions Limited ("LSL"),[39] which is not known to have ever funded any other litigation or arbitration and whose principal and director is Sabby Mionis.[40] Camhis and Mionis were both directors of Capital Management Advisors (Geneva) SA,[41] and Mionis's brother Nissim is an investor in the sole shareholder of Fine Arts.[42] LSL also "coincidentally" shares two directors with Camhis's GSOL subsidiary Star West, Nicholas Hoskins and Maxwell Quin.[43]

---

[32] *See* Ex. L, Joint Administrators' Fourth Progress Report, Mar. 5, 2020, § 6.1.
[33] *See* Ex. M, Vasco van der Boon, *Amsterdamse nikkelgigant kwaad om 'samenzwering'*, Het Financieele Dagblad, Jun. 4, 2018.
[34] See Ex. N, D.M.H. de Leeuw and M.J.R. Brons, Commentary on Amsterdam Court of Appeal, ECLI:NL:GHAMS:2015:4379 (Cunico) (Aug. 30, 2017).
[35] Ex. O, *Mick Davis and the team ready to take on Beny Steinmetz's former iron ore assets*, Africa Intelligence, Issue 434, Mar. 5, 2019; Ex. C, "Management Team," Feb. 20, 2014, https://www.bsgresources.com/about/senior-management.
[36] Ex. P, Rachel Millard, *How diamond tycoon Beny Steinmetz lost his shine in difficult places,* Aug. 26, 2019.
[37] Ex. Q, *Nicolas Sarkozy Receives Red Carpet Treatment*, Africa Intelligence Feb. 21, 2020.
[38] *BSG Resources Limited v. Soros,* Case No. 17-cv-02726-JFK-OTW.
[39] Ex. R, Amended Declaration of Joint Administrator Malcom Cohen ¶¶ 33-34.
[40] Ex. S, Register of Companies Government of Bermuda, Litigation Solutions Limited.
[41] Ex. T Capital Management Advisors Global Hedge PCC Limited Quarterly Investor Call slide deck (Feb. 18, 2009) (Mionis and Camhis both had "signing capability").
[42] Documents from the Panama Papers show that Camhis is a shareholder in Hadramant Holdings, Inc., whose other shareholders include Nissim Mionis, Sabby Mionis's brother. *See* Ex. U, Offshore Leaks Database, International Consortium of Investigative Journalists, https://offshoreleaks.icij.org/nodes/10119612.
[43] *Compare* Ex. S, Register of Companies Government of Bermuda, Litigation Solutions Limited, https://www.gov.bm/51960/litigation-solutions-limited-nicholas-john-hoskins-51960 *and* Ex. V, Register of Companies Government of Bermuda, Star West Investments Limited, https://www.gov.bm/51720/star-west-investments-limited-maxwell-lh-quin-51720

In the face of this multitude of intertwined relationships between Camhis and Steinmetz – including with respect to Fine Arts and 500 North Michigan Avenue themselves – it is truly absurd to suggest that Vale's requested discovery of financial relationships between Steinmetz and Fine Arts can only be the product of bad faith. Fine Arts' own authority shows how far afield this case is from those in which courts denied 1782 petitions on the basis of bad faith.[44]

Fine Arts has not challenged Vale's Subpoena on any other basis.[45] Even if it had, it is clear that if Fine Arts has no connection to Steinmetz, it will have few, if any, responsive documents in its possession, custody, or control and thus face minimal burden. While mouthing the words that the burdens of production outweigh the probative value, the sole case they cite on this issue is a far cry from the factual circumstances here.[46] Here, Vale seeks only targeted categories of documents relevant to the proprietary claims asserted in the English Proceedings, not one of which is challenged in the Opposition and virtually all of which are focused specifically on Steinmetz's financial investments and interests.[47]

## CONCLUSION

For the foregoing reasons, Vale respectfully requests that this Court enter an Order pursuant to Section 1782 granting leave to serve each of the Subpoenas attached as Exhibits A-II to the Declaration of Jeffrey A. Rosenthal, ECF No. 3.

---

[44] See In re RSM Prod. Corp., 17-mc-213 (DLC), 2018 WL 1229705, at *3 (S.D.N.Y. Mar. 9, 2018) (petitioner and related entities repeatedly had been sanctioned for bad faith litigation in courts across the country); In re WinNet R CJSC, 16-mc-484 (DLC), 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (counsel violated their duty of candor where they did not adequately inform the court of adverse rulings that significantly undermined the petition).

[45] "Once relevance has been shown, it is up to the responding party to justify curtailing discovery," including by proving burdensomeness. Johnson v. J. Walter Thompson U.S.A., LLC, 16 Civ. 1805 (JPO)(JCF), 2017 WL 3055098, at *2 (S.D.N.Y. Jul. 18, 2017).

[46] In In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP, 60 F. Supp. 3d 419 (S.D.N.Y. 2014), the court ruled that further document production would be unduly burdensome where petitioners exclusively sought privileged foreign language documents from law firm Chadbourne & Park, and where the court had already reviewed a document sample in camera. Id. at 421-32.

[47] Camhis refers several times in his Declaration to a "private family" that is the purported beneficiary of Fine Arts. Camhis Decl. ¶¶ 3, 6, 7, 10. Camhis, however, does not disclose the identity of Fine Arts' beneficiary, and thus does nothing to disprove its relationship with Steinmetz or the other Defendants in the English Proceedings.

Dated: May 15, 2020
New York, New York

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        */s/ Jeffrey A. Rosenthal*

        Jeffrey A. Rosenthal
        Lisa M. Schweitzer
        Lisa Vicens
        One Liberty Plaza
        New York, New York 10006
        Telephone: (212) 225 2000

        *Attorneys for Vale S.A, Vale Holdings B.V., and*
        *Vale International S.A.*