**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF VALE S.A., VALE HOLDINGS B.V., AND VALE INTERNATIONAL S.A. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No. 1:20-MC-00199-JGK-OTW |

**MEMORANDUM OF LAW IN OPPOSITION TO THE**
**APPLICATION OF VALE S.A., VALE HOLDINGS B.V., AND VALE**
**INTERNATIONAL S.A. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**
**TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for Nysco Management*
*Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 3

    I.    Background ................................................................................................................ 3

    II.   The London Proceedings ......................................................................................... 4

    III.  Vale's Section 1782 Application ............................................................................. 5

    IV.  The Summary Judgment Application in the London Proceedings ............................ 6

STANDING ............................................................................................................................. 8

LEGAL STANDARD .............................................................................................................. 8

ARGUMENT ......................................................................................................................... 10

    I.    Vale Fails to Meet the Statutory "For Use" Requirement and, in Any Event, the Court Should Deny this Application in the Exercise of its Discretion ................................... 10

    II.   Alternatively, Vale's Discovery Action Should be Stayed Pending Resolution of the Dispositive Motion in the London Proceedings ......................................................... 14

CONCLUSION ...................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Application of Sarrio, S.A.*,
   119 F.3d 143 (2d Cir. 1997) ................................................................................ 8

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ............................................................................ 8, 12

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015) ................................................................. 9, 10, 11, 12

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017) ............................................................................. 11

*In re Application of Alves Braga*,
   789 F. Supp. 2d 1294 (S.D. Fla. 2011) ............................................................. 15

*In re Application of Noboa*,
   No. M18-302 (JSM), 1995 WL 581713 (S.D.N.Y. Oct. 4, 1995) ................................. 9, 15

*In re Application of XPO Logistics, Inc.*,
   No. 1:15-MC-00205 (LGS), 2016 WL 3528195 (S.D.N.Y. June 22, 2016) ...................... 16

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*,
   60 F. Supp. 3d 419 (S.D.N.Y. 2014) ................................................................. 14

*In re Asia Mar. Pac. Ltd.*,
   253 F. Supp. 3d 701 (S.D.N.Y. 2015) ........................................................ 9, 13, 14

*In re Hornbeam Corp.*,
   No. 1:14-MC-00424 (P1), 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015),
   *aff'd*, 722 F. App'x 7 (2d Cir. 2018) ................................................................ 8

*In re Hornbeam Corp.*,
   No. 1:14-MC-00424 (P1), 2017 WL 5515857 (S.D.N.Y. Feb. 17, 2017),
   *aff'd*, 722 F. App'x 7 (2d Cir. 2018) ................................................................ 15

*In re Servicio Pan Americano de Proteccion*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004) ................................................................ 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ............................................................................... passim

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ......................................................................... 9, 11, 12

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) ............................................................................. 14

**Federal Statutes**

28 U.S.C. § 1782................................................................................................................... passim

Nysco Management Corporation ("Nysco"), an interested party, submits this Memorandum of Law in Opposition to the Application of Vale S.A., Vale Holdings B.V., and Vale International S.A., (collectively, "Vale") for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings (the "Application"). Nysco respectfully requests that the Court deny the Application or, in the alternative, stay the Application until a decision is rendered on a dispositive motion pending in the foreign proceedings, which will determine whether the discovery sought by Vale can ever be used in that proceeding.

## PRELIMINARY STATEMENT

The Court should deny the Application because it does not satisfy the "for use" requirement under 28 U.S.C. § 1782 ("Section 1782") and because the discovery sought would impose an unjustified burden.

Vale is unable to use the discovery it seeks in the relevant foreign proceedings at this time or, possibly, ever. Vale seeks broad discovery from over 30 respondents to support one of its claims in a court proceeding in England even though an application to dismiss that particular claim is pending. This means that: (i) the discovery that Vale seeks cannot be used in the proceedings in London for as long as the application to dismiss is pending, and (ii) if the Court in England dismisses the claim, then the evidence that Vale seeks can never be used to support that claim. At a minimum, the Court should await the outcome of the dispositive application pending in the foreign proceedings before burdening the respondents and this Court with litigation relating to the scope of each of the 30-plus proposed subpoenas.

Vale brings the Application to seek discovery in furtherance of a proprietary claim (also known as a "tracing claim") that Vale has asserted in foreign proceedings pending in the High Court of the Business and Property Courts of England & Wales ("London Court") against several defendants, including this interested party, Nysco (Claim No. CL-2019-000723, herein the "London Proceedings"). Vale's proprietary claim essentially alleges that Vale is entitled to recover US$500 million that it paid to BSG Resources Ltd. ("BSGR") upon entering a joint venture agreement in 2010, on the alleged grounds

that BSGR obtained the money improperly and, therefore, whoever has the money holds it on constructive trust for Vale. On that basis, Vale seeks discovery under Section 1782 to trace the money to investments in various U.S.-based real estate ventures. Specifically, Vale seeks to trace money that, according to Vale, flowed from BSGR through Nysco and Balda Foundation ("Balda"), another defendant in the London Proceedings. Indeed, Vale's theory is that "[t]he lion's share of Vale's $500 million payment was immediately funneled up from BSGR through its parent Nysco to its ultimate parent Balda, a Liechtenstein trust, of which [Benjamin] Steinmetz and his family are the sole beneficiaries." Mem. of Law in Supp. of Appl. at 2, ECF No. 2.

However, Vale's proprietary claim in the London Proceedings has been challenged by Nysco and Balda through an application for summary judgment which is akin to a motion to dismiss a claim in U.S. litigation ("the Summary Judgment Application"). The Summary Judgment Application challenges the legal basis of Vale's proprietary claim, namely that according to Vale, the US$500 million were obtained improperly and therefore are held on constructive trust for Vale. Until the London Court resolves the Summary Judgment Application, Vale is unable to use any factual evidence of the kind it seeks here in the London Proceedings. Further, if the Summary Judgment Application is granted, Vale's proprietary claim will be dismissed, meaning that Vale will not be able to use the evidence it seeks through this Section 1782 Application in support of that claim at all.

Thus, Vale's Application fails to satisfy the statutory "for use" requirement and should be dismissed on that basis (as well as in this Court's wide discretion) because it seeks discovery that may never become usable in the foreign proceeding. In the alternative, the Court should stay this action until the London Court decides the Summary Judgment Application so that Vale does not unnecessarily burden the 30-plus respondents and the Court itself.

## STATEMENT OF FACTS

**I.      Background**

Nysco is the parent company of BSGR.  *See* Decl. of Nicola Boulton ("Boulton Decl."), Ex. 1 (Particulars of Claim) at ¶ 27.  On April 30, 2010, Vale entered into an agreement with BSGR, under which Vale acquired a 51% interest in a joint venture (the "JV Agreement") created with the specific purpose of exploring an iron ore concession in Simandou, Guinea (the "Mining Rights").  *See id.* at ¶¶ 1–2.  As part of this transaction, Vale agreed to pay US$2.5 billion to BSGR, of which US$500 million was paid immediately upon the execution of the JV Agreement.  *See id.* at ¶¶ 3–4, 93.2.  In or around 2014, Vale sought to rescind the JV Agreement upon Vale's institution of arbitration proceedings against BSGR, which followed the revocation of the Mining Rights by the Guinean government.  *See id.* at ¶ 9, 118.  Vale justified its decision on the basis of alleged fraudulent misrepresentations made or adopted by its partner in the JV Agreement, in light of allegations of corruption involving BSGR at the time.  *See id.* at ¶ 9.

On April 28, 2014, Vale commenced an arbitration proceeding before the London Court of International Arbitration against BSGR ("LCIA Arbitration").  *See* Boulton Decl. at ¶ 5.  In essence, Vale claimed that BSGR had illegally obtained the Mining Rights through bribery of Guinean government officials and fraudulently induced Vale to enter into the JV Agreement by making assertions otherwise.  *See* Boulton Decl., Ex. 1 (Particulars of Claim) at ¶ 5.  BSGR contested Vale's allegations throughout the LCIA Arbitration.  However, due to procedural irregularities, BSGR and its English counsel did not attend the arbitration hearing.  For example, the Arbitral Tribunal declined to reschedule the hearing despite BSGR's counsel having advised four months prior that he was unavailable on the scheduled dates.  In addition, the Division of the LCIA Court ultimately removed the Tribunal's Chairman because it found "justifiable doubts as to his independence or impartiality" to BSGR's detriment.  Decl.

of Jonathan I. Blackman, Ex. A (Final Arbitration Award, entered on April 4, 2019), at ¶ 82, ECF No. 4-1, *Vale S.A. v. BSG Resources Limited*, No. 1:19-CV-03619 (VSB) (S.D.N.Y. Apr. 24, 2019). Nonetheless, the Tribunal issued an award in Vale's favor. *See* Boulton Decl., Ex. 1 (Particulars of Claim) at ¶ 10.

Thereafter, on February 27, 2018, BSGR, acting by and through its directors, submitted an application for an administration order to the Guernsey Court after determining that the company was or was about to become insolvent. *See* Verified Pet. at ¶¶ 31–32, *In Re BSG Resources Limited (in Administration)*, No. 1:19-BK-11845 (SHL) (Bankr. S.D.N.Y. June 3, 2019). On March 6, 2018, the Guernsey Court granted BSGR's application and issued an order to commence the administration of BSGR. *See id.* at ¶ 32. On June 3, 2019, BSGR filed a petition under Chapter 15 before the U.S. Bankruptcy Court for the Southern District of New York, seeking various rights under the Bankruptcy Code. *See* Verified Pet., *In Re BSG Resources Limited (in Administration)*, No. 1:19-BK-11845 (SHL) (Bankr. S.D.N.Y. June 3, 2019).

## II.    The London Proceedings

Vale's inability to enforce its arbitral award directly and immediately in light of BSGR's bankruptcy triggered a series of legal actions against others, both in the U.S. and the UK. One such action was the London Proceedings, which Vale commenced on December 3, 2019. *See* Boulton Decl., Ex. 1 (Particulars of Claim). In that proceeding, Vale asserts essentially the same fraudulent inducement claim it litigated in the LCIA Arbitration (but against different parties), *id.* at ¶¶ 105-116, a conspiracy claim, *id.* at ¶¶ 117, and—as relevant here—a proprietary claim to trace the proceeds of Vale's initial US$500 million payment to BSGR (made on April 30, 2010), *id.* at ¶¶ 118-120.

With respect to the proprietary claim, Vale asserts that because of the alleged fraudulent inducement, the money paid is held on constructive trust for Vale such that if Vale can trace the money it

4

may recover it from those who now hold it.  *See* Mem. of Law in Supp. of Appl. at 5–7, ECF No. 2; Boulton Decl., Ex. 1 (Particulars of Claim) at ¶ 119.  In particular, Vale alleges that BSGR "immediately funneled up" the majority of the US$500 million received from Vale "through its parent Nysco to its ultimate parent Balda."  Mem. of Law in Supp. of Appl. at 2, ECF No. 2.  In its Particulars of Claim filed in the London Proceedings, Vale asserts that "Nysco received the approximate sum of US$371.5 million paid to it between May and July 2010 . . . together with an additional US$40 million in August 2012 and US$89.1 million in December 2012," and that "Balda (it is to be inferred) received substantial sums paid to it by Nysco . . . ."  Boulton Decl., Ex. 1 (Particulars of Claim) at ¶¶ 120.7–120.8.  At least a portion of this money was then, according to Vale, invested in New York real estate joint ventures through BSG Real Estate ("BSG RE"), a wholly-owned subsidiary of Nysco and Balda.  Mem. of Law in Supp. of Appl. at 7–13, ECF No. 2.

### III.        Vale's Section 1782 Application

It is solely in furtherance of its proprietary claim that Vale seeks discovery in this Application.  As Vale explained in the Application, in the London Proceedings it:

> asserts a proprietary claim under English law to the traceable proceeds of its payments to BSGR and Defendants. . . .   In connection with this claim, Vale seeks all necessary accounts and inquires to trace and identify the traceable proceeds of the funds received by the Defendants.  By this Section 1782 petition, Vale seeks to identify the traceable proceeds of its payment to BSGR through investments in real estate located in the Southern District of New York in which certain Defendants and entities controlled by them are believed to hold a financial interest.

Mem. of Law in Supp. of Appl. at 6–7, ECF No. 2.

Specifically, the Application seeks discovery regarding investments in real estate located in New York and Chicago that Vale alleges were made through subsidiaries of Nysco and Balda.  For example, Vale states that BSG RE, a "wholly-owned subsidiary of Nysco and Balda," purchased a commercial

property on Park Avenue in Manhattan for US$455 million. *Id.* at 7. According to Vale, "[t]his transaction was funded by Balda," allegedly at the direction of Mr. Benjamin Steinmetz. *Id.* The other real-estate investments about which Vale seeks discovery are said to be linked to joint ventures that BSG RE entered into with HFZ Capital Group LLC, referred to by Vale as the "BSG-HFZ JV," and with Signa Holdings GmbH, referred to by Vale as the "BSG-Signa JV." *Id.* at 2, 7–13.

## IV.      The Summary Judgment Application in the London Proceedings

On May 18, 2020, Nysco and Balda filed the Summary Judgment Application with the London Court, seeking to dismiss Vale's proprietary claim on the legal basis that Vale "ha[s] no reasonable prospects of success in relation to the [proprietary] claims as a matter of law . . . ." Boulton Decl., ¶¶ 9-10, Ex. 2 (Summary Judgment Application) at 2. Specifically, in support of the Summary Judgment Application, Nysco and Balda filed evidence asserting that "as a matter of law, even assuming that the Claimants [Vale] were able to establish the fraudulent misrepresentations that they allege, they would not have a good arguable case that they have proprietary rights in relation to the [US$500 million] because of the terms of the Share and Purchase Deed through which Vale terminated the Investment Agreements [the JV Agreement] and transferred the shares obtained under the Investment Agreements to BSGR." Boulton Decl., Ex. 3 (First Witness Statement of Doron Levy) at ¶ 8. Without a proprietary right to the US$500 million, Vale has no legally cognizable proprietary claim. *See* Boulton Decl. at ¶ 11.

There are two possible outcomes with respect to this pending Summary Judgment Application, as explained by counsel for Nysco in the London Proceedings: (i) the Summary Judgment Application is granted and Vale's proprietary claim is dismissed as to Nysco and Balda on legal grounds; or (ii) the Summary Judgment Application is dismissed and Vale is allowed to proceed with its proprietary claim in the London Proceedings. *See* Boulton Decl. at ¶ 14. In the first scenario, the proprietary claim would ultimately be dismissed as to all of the defendants in the London Proceedings, since their legal position

with respect to the proprietary claim is identical to that of Nysco and Balda. *Id.* Only in the second scenario could Vale eventually use evidence purporting to trace the US$500 million in support of its proprietary claim.

While the Summary Judgment Application is pending in the London Proceedings, Vale will not be able to use the evidence it seeks through this Application in connection with its proprietary claim, namely evidence that might trace the funds it paid to BSGR through Nysco and Balda. *See id.* at ¶¶ 17–19. In fact, the only evidence Vale could submit in defense of the Summary Judgment Application would be evidence relating to the merits of the underlying proprietary claim—*i.e.*, evidence on the legal question whether Vale is entitled to recover the US$500 million at all. *See id.* at ¶¶ 17–18. And if the London Court ultimately grants the Summary Judgment Application, Vale will be unable to use the evidence it seeks here at all.[1] *See id.* at ¶ 19. A hearing on the Summary Judgment Application has not yet been set,

---

[1] Aside from the Summary Judgement Application, the defendants in the London Proceedings have also raised various defenses to Vale's claims. For instance, Mr. Benjamin Steinmetz has raised an illegality defense under English law, similar to an unclean hands defense, on the basis that Vale, in fact, believed, suspected, and/or knew (albeit falsely) that BSGR obtained the mining rights at the center of the JV Agreement by fraud or bribery and nevertheless entered the deal based on a sham due diligence process in violation of the Foreign Corrupt Practices Act ("FCPA"). Thus, Vale's case "is based on a sham due diligence exercise which it was warned risked non-compliance with its own FCPA obligations" and should be dismissed pursuant to *ex turpi causa non oritur actio*, which prevents a party from profiting from his own wrongdoing.

To obtain further evidence in support of its illegality defense, Mr. Steinmetz recently applied under Section 1782 for permission to take discovery in this District from Vale and other respondents. *See In re Application of Benjamin Steinmetz for an Order to Take Discovery from Vale S.A., Vale Americas Inc., Rio Tinto plc, and Rio Tinto Limited Pursuant to 28 U.S.C. § 1782*, No. 1:20-MC-00212 (AJN) (S.D.N.Y May 21, 2020) ("*In re Application of Benjamin Steinmetz*"). The defense filed by Mr. Steinmetz in the London Proceedings is exhibited to Mr. Steinmetz's application under Section 1782. *See* Decl. of Josef M. Klazen, Ex. 7 (Defence of the First Defendant) at ¶ 3, ECF No. 5-7, *In re Application of Benjamin Steinmetz*. In contrast with Vale's proprietary claim, Mr. Steinmetz's defense will be litigated before the London Court even if Nysco and Balda prevail on their Summary Judgement Application. Accordingly, unlike Vale's Section 1782 Application here, Mr. Steinmetz's Section 1782 Application is properly "for use" in the London Proceedings because there is no pending dispositive motion that could prevent Mr. Steinmetz from using the evidence obtained to support his illegality defense.

but it is expected that the London Court will decide before the end of this calendar year whether Vale's proprietary claim should be dismissed.  *See id.* at ¶ 12.

## STANDING

Nysco has standing to challenge the Application as a "part[y] against whom the requested information will be used."  *In re Hornbeam Corp.*, No. 1:14-MC-00424 (P1), 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) (holding that "a part[y] against whom the requested information will be used . . . has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." (internal citations omitted)); *see also Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) ("[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness. We have recognized, though implicitly, that parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties.").  Since Nysco is a defendant in the London Proceedings and Vale is seeking discovery which relates to Nysco, it is plain that any discovery obtained here would be used against Nysco. Therefore, Nysco has standing in this case as an interested party.

## LEGAL STANDARD

To obtain relief under Section 1782, an applicant must meet three statutory requirements, otherwise the application fails: (i) the person from whom discovery is sought must reside or be found within the District; (ii) the discovery must be "for use" in a proceeding before a foreign or international tribunal; and (iii) the applicant must be an interested person under the statute.  28 U.S.C. § 1782(a); *see Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).  Notably, in determining whether discovery being sought is "for use" in a foreign proceeding, "[t]he key question . . . is not simply whether the information sought is relevant, but

whether the [applicant] will actually be able to *use* the information in the proceeding." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). Additionally, applicants must show that the evidence sought through discovery in the U.S. will be deployed "with some advantage or serve some use in the [foreign] proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

In any event, the U.S. Supreme Court has made clear that "a District Court is *not required* to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (emphasis added); *see also In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015) (holding that even if all statutory requirements of Section 1782 were met, the Court "would exercise its discretion to deny the petition . . . [if it] is an overly broad fishing expedition that does nothing to further the twin aims of the statute."). Instead, the Court must consider the four discretionary factors articulated in *Intel*: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) "whether the discovery sought is "unduly intrusive or burdensome[.]" *Intel*, 542 U.S. at 264–65.

Courts may "deny the [Section 1782] application *in toto*" where it "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees*, 793 F.3d at n.18 (internal citations omitted). In addition to the authority to dismiss or grant Section 1782 discovery, courts have the authority to stay the Section 1782 action pending resolution of dispositive issues in the foreign proceedings. *See, e.g. In re Application of Noboa*, No. M18-

302 (JSM), 1995 WL 581713, at *3 (S.D.N.Y. Oct. 4, 1995) (staying depositions ordered pursuant to Section 1782 until dispositive issues are determined in the foreign proceeding).

## **ARGUMENT**

Vale's Section 1782 Application seeks evidence from over 30 respondents in furtherance of its proprietary claim asserted in the London Proceedings against Nysco and Balda.  Because this proprietary claim is the subject of a pending Summary Judgment Application brought by Nysco and Balda in the London Proceedings seeking the dismissal of the proprietary claim, there is a substantial likelihood that Vale will never be able to use the evidence it seeks here.  *See* Boulton Decl. at ¶¶ 17–19.  Vale is also barred from using any evidence it gathers here in the London Proceedings for as long as the Summary Judgment Application is pending because such evidence is not in support of the merits of the proprietary claim, which is the subject of the Summary Judgment Application.  *Id.*  The discovery requested in Vale's Application is therefore not properly "for use" in foreign proceedings and Vale fails to meet this statutory requirement under Section 1782.

Further, even if Vale had satisfied the statutory requirements of Section 1782, the Court should still deny Vale's Application, or at least stay the proceedings, in the exercise of its broad discretion.  Vale's proposed subpoenas would impose a substantial discovery burden on the numerous respondents, and this Court may be tasked with having to resolve discovery disputes arising from some or all of those subpoenas.  Since these efforts could very well be nullified if the London Court grants the Summary Judgment Application, it would be appropriate to stay Vale's discovery efforts until the London Court has rendered its decision.

**I.**   **Vale Fails to Meet the Statutory "For Use" Requirement and, in Any Event, the Court Should Deny this Application in the Exercise of its Discretion**

This Application should be denied because Vale fails to meet its burden of showing that the discovery sought is properly "for use" in a foreign proceeding.  *See KPMG*, 798 F.3d

at n.11 (explaining that Section 1782 applicants bear burden of establishing "for use."). Given that Nysco and Balda have sought dismissal of Vale's proprietary claim in the London Proceedings, Vale may never be able to use the discovery it seeks in support of that claim, which is the stated purpose of Vale's Application.

To demonstrate that the requested discovery is "for use" in a foreign proceeding, Vale must establish that the materials "will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298–300. Further, Vale must show not only that the evidence sought is "relevant," but also that it will "actually be able to use" the information in the foreign proceeding. *KPMG*, 798 F.3d at 120 ("The key question, therefore, is not simply whether the information sought is relevant, but whether the [applicant] will actually be able to *use* the information in the proceeding."). In other words, the applicant "must establish that he or she has the practical ability to inject the requested information into a foreign proceeding," otherwise, the application fails to demonstrate that the evidence sought is for use in the foreign proceeding. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). Failure to demonstrate that a Section 1782 applicant can submit the evidence sought before the foreign tribunal is fatal to the application. *See KPMG*, 798 F.3d at 122 ("Because the [applicant] failed to show any way that they could put before the foreign tribunals the information they sought to discover, the district court correctly concluded that the information was not 'for use' in a foreign proceeding.").

Here, the Application explains that "the discovery sought is for use in proceedings before a 'foreign or international tribunal' – the High Court," "[i]n connection with" Vale's "proprietary claim under English law to the traceable proceeds of its payments to BSGR and Defendants." Mem. of Law in Supp. of Appl. at 15, 6, ECF No. 2. Specifically, Vale seeks discovery in furtherance of its efforts to trace the payments in question through Nysco and Balda, whom Vale

alleges invested these funds in U.S. real estate ventures headed by BSG Real Estate ("BSG RE"), a subsidiary of Nysco and Balda.  *Id.* at 7–13.

But because Vale's proprietary claim is subject to dismissal as a result of the Summary Judgment Application, the discovery sought in this Application cannot be used in the London Proceedings at this time; further, it is possible that the evidence sought here may never be submitted before the London Court at all.  Boulton Decl. at ¶¶ 17–19.  If Nysco and Balda prevail on their challenge to the legal foundation of Vale's proprietary claim, Vale's claim will be dismissed as to Nysco and Balda and, in all likelihood, will eventually be dismissed as to all other defendants.  *See id.* at ¶ 14.  In any event, because the discovery that Vale seeks here relates only to funds which allegedly flowed through Nysco and Balda, the discovery sought cannot be used in support of Vale's proprietary claim if the London Court grants the Summary Judgment Application.  *Id.* at ¶¶ 15–19.  Therefore, the discovery sought by Vale does not satisfy the "for use" requirement of Section 1782.

Notably, the fatal weakness in Vale's Application—*i.e.*, that it is doubtful that Vale will ever be able to use the requested discovery in the London Proceedings, *see KPMG*, 788 F.3d at 120—should not be confused with situations wherein the requested discovery may be *inadmissible* as evidence or is *not yet* usable in a foreign proceeding.    In those situations, the Second Circuit has held that the "for use" requirement is satisfied.   *See Brandi-Dohrn*, 673 F.3d at 82 ("Accordingly, as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application."); *Mees*, 793 F.3d at 300 ("Rather, *Intel* explained that '[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.'") (internal citations

omitted).  Here, the issue is not that the evidence sought is inadmissible in the London Proceedings or not yet deployable therein (because the proceedings have not yet been initiated, for instance) but will be so used in the future in due course.  Rather, the evidence Vale seeks may *never* be deployable in the London Proceedings, as its underlying claim may be dismissed on legal grounds. *See* Boulton Decl. at ¶¶ 17–19.

In addition to Vale's failure to satisfy the "for use" requirement of Section 1782, Vale also fails to seek discovery which "further[s] the twin aims of the [Section 1782] statute," defined as "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *In re Asia Mar. Pac.*, 253 F. Supp. 3d at 704–05 (internal citations omitted).  There is nothing "efficient" about allowing Vale to impose significant discovery obligations on over 30 proposed respondents when this entire exercise may prove moot and unwarranted should the London Court dismiss the proprietary claim before any evidence acquired here could ever be used in the London Proceedings.  *See* Boulton Decl. at ¶¶ 11, 17–19.

Indeed, one of the discretionary factors under the Supreme Court's *Intel* decision is whether the discovery sought is "unduly intrusive or burdensome[.]"  *Intel*, 542 U.S. at 265.  Here, Vale's proposed subpoenas are certainly unduly intrusive and burdensome.  Vale seeks to direct over 30 respondents to conduct searches for several broad categories of documents and communications related to *any* transaction with *any* BSG entity, including sensitive financial records and business documents, for a period spanning over *ten* years, despite providing no concrete basis to support its belief that all respondents received proceeds of the US$500 million Vale paid to BSGR in 2010. *See* Decl. of Jeffrey A. Rosenthal, Ex. A–II (Proposed Subpoenas), ECF No. 3-1–35.

In such circumstances, courts in this District have refused to grant discovery, "even if Petitioner had satisfied the requirements of § 1782 so that the Court had the authority to grant the request." *In re Asia Mar. Pac.*, 253 F. Supp. 3d at 705 (exercising discretion in denying the petition because it "is an overly broad fishing expedition that does nothing to further the twin aims of the statute."); *see also In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 427–28, 432 (S.D.N.Y. 2014) (denying an application for discovery that satisfied Section 1782 statutory requirements and the first three discretionary *Intel* factors because the discovery sought was unduly intrusive and burdensome); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (explaining that the Supreme Court has "cautioned 'that § 1782(a) *authorizes*, but *does not require*, a federal district court to provide judicial assistance to foreign or international tribunals or to "interested person[s]" in proceedings abroad.'" (quoting *Intel*, 542 U.S. at 247) (emphasis in original)).[2]

## II.      Alternatively, Vale's Discovery Action Should be Stayed Pending Resolution of the Dispositive Motion in the London Proceedings

If the Court is not inclined to deny Vale's Application at this time, it should stay the Application pending the London Court's resolution of the Summary Judgment Application in order to avoid permitting Vale's needless imposition of substantial discovery burdens.

---

[2]      One of the proposed discovery targets, Respondent Fine Arts NY LLC ("Fine Arts"), has also filed an opposition to this Application.  Fine Arts argues that Vale's Application does not seek discovery for use in a "foreign proceeding," as required by the statute, because Vale's proprietary claim is essentially a claim to enforce the award that Vale obtained against BSGR in the LCIA Arbitration, which does not qualify as an adjudicative proceeding.  *See* Fine Arts Mem. of Law in Opp. at 8–10, ECF. No. 15.  Fine Arts also argues that Vale's proposed discovery requests are unduly burdensome and made in bad faith.  *See id.* at 10–13.  Those arguments are distinct from, but consistent with, the arguments made by Nysco here.

Critically, Vale may never even be able to submit the discovery sought in support of the proprietary claim in the London Proceedings. *See* Boulton Decl. at ¶¶ 17–19.

Courts have inherent and broad authority to stay proceedings, which "extends to § 1782 proceedings." *In re Hornbeam Corp.*, No. 1:14-MC-00424 (P1), 2017 WL 5515857, at *6 (S.D.N.Y. Feb. 17, 2017), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) (citing supporting authorities); *see also In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 273 (S.D.N.Y. 2004) (recognizing that "in some instances a court may . . . stay proceedings until a foreign tribunal has ruled on a Section 1782 petitioner's discovery request.").

In this matter, a stay of discovery is appropriate pending the resolution of the Summary Judgment Application, which will soon determine whether or not the discovery sought in Vale's Application could ever be used in the London Proceedings. If the London Court grants the Summary Judgment Application and dismisses the proprietary claim, the discovery Vale presently seeks in this District would not be usable in the London Proceedings, and, therefore, would not qualify as appropriately sought under Section 1782. *See* Boulton Decl. at ¶ 19. Accordingly, if Vale obtains discovery under this Application that cannot be used in the London Proceedings, such discovery would prove a purposeless, unduly expensive, arduous, and intrusive undertaking for over 30 discovery targets.

Indeed, courts in this District and elsewhere have stayed Section 1782 discovery pending the resolution of dispositive issues in the foreign proceeding. *See e.g.*, *Noboa*, No. M18-302, 1995 WL 581713, at *3 (staying depositions ordered under Section 1782 until opening and reading of will in Ecuadorian proceeding to "avoid potentially duplicative discovery that would be unfairly burdensome to the Respondents"); *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1310 (S.D. Fla. 2011) (staying Section 1782 discovery pending

15

a potentially dispositive ruling from a foreign court, explaining that "a ruling in the Brazilian appeal will resolve the question of whether [the applicant] has the right to the discovery requested pursuant to the Application"); *In re Application of XPO Logistics, Inc.*, No. 1:15-MC-00205 (LGS), 2016 WL 3528195, at *2–3 (S.D.N.Y. June 22, 2016) (upholding order that stayed Section 1782 discovery "pending the resolution of the discovery process in the French proceeding").

Likewise, a stay of this action pending a decision by the London Court on the Summary Judgment Application would be appropriate here.

## **CONCLUSION**

For the reasons stated above, Nysco respectfully requests that the Court deny Vale's Section 1782 Application or, in the alternative, stay the Application until a ruling is issued on the Summary Judgment Application filed by Nysco and Balda in the London Proceedings.

Dated:       New York, New York
             June 8, 2020

                                        Respectfully submitted,

                                        /s/ Josef M. Klazen

                                        KOBRE & KIM LLP
                                        800 Third Avenue
                                        New York, New York 10022

                                        Josef M. Klazen
                                        +1 212 488 1216
                                        josef.klazen@kobrekim.com

                                        Michael S. Kim
                                        +1 212 488 1201
                                        michael.kim@kobrekim.com

                                        Robin Rathmell
                                        +1 202 664 1941
                                        robin.rathmell@kobrekim.com

16

Victoria R. Morris (motion for
admission *pro hac vice* pending)
+1 305 967 6131
victoria.morris@kobrekim.com

Carolina Leung
+1 212 488 4948
carolina.leung@kobrekim.com

*Attorneys for Nysco Management
Corporation*