**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                             :
                                                             :
In re Application of Vale S.A., Vale Holdings        :    20-mc-199 (JGK) (OTW)
B.V., and Vale International S.A. for an Order       :
Pursuant to 28 U.S.C. § 1782 to Conduct              :    **ORDER GRANTING *EX PARTE***
Discovery for Use in Foreign Proceedings             :    **APPLICATION TO CONDUCT**
                                                             :    **DISCOVERY FOR USE IN FOREIGN**
                                                             :    **PROCEEDINGS PURSUANT TO 28**
                                                             :    **U.S.C. § 1782**
                                                             :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge:**

**I.     Introduction**

On April 24, 2020, Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale") submitted an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings (together with all supporting papers, the "Application"). The Application seeks discovery from several entities and individuals[1] which are alleged to have received funds derived from a scheme involving mining rights to a large iron mountain located in the Republic of Guinea. The discovery is to be used in proceedings pending

---

[1] The entities and individuals can be generally divided into two groups associated with separate joint ventures entered into with Beny Steinmetz, a defendant in the foreign proceeding. The first group is alleged to be associated with Ziel Feldman, the founder and principal of HFZ Capital Group. These individuals and entities are: HFZ Capital Group LLC, Ziel Feldman, Helene Feldman, Feldman Family 2007 Trust, Nir Meir, John Shannon, Kenneth Henderson, Bryan Cave Leighton Paisner LLP, Chatsworth Realty 340 LLC, HFZ 344 West 72nd Street Owner LLC, Chatsworth Realty Corp., 215 Chrystie LLC, HFZ 40 Broad Street LLC, HFZ Highline Property Owner LLC, HFZ Highline Retail Owner LLC, HFZ Highline LLC, HFZ 501West LLC, 20 West 40 Bryant Park Owner LLC, HFZ Bryant Park Owner LLC, Tarpley Belnord Corp., Perfectus Real Estate Corp., HFZ 235 West 75th Street Owner LLC, HFZ 301 West 53rd Street Owner LLC, HFZ 88 Lexington Avenue Owner LLC, HFZ 90 Lexington Avenue Owner LLC, HFZ KIK 30th Street Owner LLC, HFZ West 30th Street Partners LLC, HFZ KIK 30th Street LLC, HFZ KIK 30th Street Mezzanine LLC, 76 Eleventh Avenue Property Owner LLC, and Fine Arts NY LLC. The second group is alleged to be associated with Aby Rosen, the founder of RFR Holding LLC. These individuals and entities are: RFR Holding LLC, Aby Rosen, R&S Chrysler LLC, and RFR Realty LLC (the two groups collectively, "Respondents").

1

in the United Kingdom (the "English Proceedings") before the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) (the "High Court") against parties[2] that allegedly participated in fraudulently inducing Vale to invest in the mining project, the rights to which were obtained through bribery and corruption and later cancelled by the Guinean government. Vale alleges that its money was then used by Defendants to invest in real estate in the United States via the Respondents.

On May 13, 2020, respondent Fine Arts NY LLC ("Fine Arts") filed an opposition to Petitioner's application. (ECF 15). On June 8, 2020, Nysco, a defendant in the High Court proceedings, likewise opposed the Petitioners' application. (ECF 25). On June 10, 2020, respondents RFR Holding LLC, RFR Realty LLC, R&S Chrysler LLC, and Aby Rosen (collectively, "RFR") joined in Nysco's opposition. (ECF 32).

Having considered the application and related briefing, the Court finds that the requirements of Section 1782 are met.

**II.    Background**

The application stems from claims that Defendants were behind a scheme to gain valuable mining rights by bribing government officials in the Republic of Guinea, and fraudulently induced Petitioner to pay $500 million to enter into a joint venture with Beny Steinmetz Group Resources Limited ("BSGR"), and to invest an additional $746 million to develop the mining concessions. (*See* ECF 2; ECF 3-36; ECF 3-37). Defendants are comprised of Steinmetz, the founder and principal of BSGR; Nysco, which wholly owned BSGR; Balda, which

---

[2] The defendants in that proceeding are: Benjamin Steinmetz, Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, the Balda Foundation ("Balda"), and Nysco Management Corporation ("Nysco") (together, the "Defendants").

wholly owned Nysco; and other individual defendants who were senior executives of BSGR at the time Vale's payments were made. (ECF 2 at 10; ECF 3-37). Before entering into the agreement, Vale had conducted substantial due diligence and required BSGR and Steinmetz to certify that they did not engage in bribery. (ECF 2 at 7; ECF 3-36). BSGR, Steinmetz, and other Defendants made repeated representations that the rights were legally acquired and "that [BSGR] had not used any undisclosed consultants or intermediaries, and that it had disclosed all material documents and information concerning the mining concessions." (*Id*.) After a later investigation revealed that the mining rights had been procured by bribery and corruption, the Government of Guinea withdrew BSGR's mining licenses in April 2014. (ECF 2 at 8; ECF 3-37).

As a result of the withdrawal, Vale initiated arbitration against BSGR at the London Court of International Arbitration (the "Arbitration"), claiming damages for fraudulent misrepresentation, breach of warranty, and frustration. (ECF 2 at 8; ECF 3-36). In April 2019, the arbitral tribunal found BSGR liable for the fraudulent conduct and awarded Vale more than $2 billion in damages, interests, and costs. (*Id*.) Shortly thereafter, Vale filed enforcement proceedings in the United Kingdom and the United States, and its petitions in both countries were granted. (ECF 2 at 8-9; ECF 3-38; ECF 3-39; ECF 3-40; ECF 3-41). Vale has been unable to recover the full award. (ECF 2 at 9).

In anticipation of formal proceedings, Vale filed an application in the High Court for a worldwide freezing order against all Defendants in November 2019. (ECF 2 at 9). In December 2019, the application was granted. (ECF 3-42). In the subsequent formal proceedings that form the basis for this application, Vale alleged that Defendants "each made fraudulent misrepresentations and entered into a conspiracy for the purpose of inducing Vale to enter into

3

the joint venture with BSGR." (ECF 2 at 9-10; *see also* ECF 3-37). Vale seeks $1.264 billion in damages plus interest in addition to making a proprietary claim under English law, which would allow Vale to trace and recover the proceeds of the fraud received by Defendants. (ECF 2 at 10; ECF 3-37). The proprietary claim alleges that each of the Defendants received a portion of the $500 million payment made to BSGR. (ECF 3-37). Vale then filed the instant application here to obtain discovery for use in that proceeding, alleging that Respondents may have received proceeds of the fraud. (ECF 1). In May 2020, Nysco and Balda filed an application for summary judgment in the High Court seeking dismissal of Vale's proprietary claim. (ECF 26-2).

### III. Discussion

#### a. Legal Standard

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."[3] Section 1782 has been read to impose three statutory requirements:

> (1) that the person from whom discovery is sought reside (*or be found*) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."

*See In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002) (emphasis in original) (quoting *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). "Once a district court is assured that it has jurisdiction over the petition, it 'may grant discovery under § 1782 in its discretion.'" *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Mees v. Buiter*, 793 F.3d 291,

---

[3] A motion seeking discovery under §1782 is a non-dispositive motion under Federal Rule of Civil Procedure 72(b). *See In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340-41 (S.D.N.Y. 2019) (collecting cases). Nor does a §1782 discovery request fall under the excepted motions listed in 28 U.S.C. § 636(b)(1)(A).

297 (2d Cir. 2015)).

The Supreme Court has outlined four factors that the district court should consider when determining whether to exercise its discretion to grant §1782 discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). A court should look at (1) whether the target of discovery is a participant in the foreign proceeding, (2) the nature of the foreign tribunal and its receptiveness to U.S. federal court assistance, (3) whether the application is attempting to "circumvent foreign proof-gathering restrictions," and (4) whether the request is "unduly intrusive or burdensome." *See id*. at 264-65.

### b. Statutory Requirements

The parties do not dispute that the first and third statutory requirements of § 1782 are met. Respondents reside or may be found in the Southern District of New York, and Vale is an "interested person" within the meaning of § 1782 because they are party to the proceedings pending in the High Court.

As to requirement two, Respondent Fine Arts and Defendant Nysco assert that Petitioner has not met the requirement that the discovery be "for use" in a foreign or international tribunal. Determining whether this requirement is met requires the court to "focus[] on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). "The 'for use' requirement must be analyzed 'according to the particular facts of each case.'" *In re Gorsoan Ltd.*, 435 F. Supp. 3d 589, 596-97 (S.D.N.Y. 2020) (citing *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017)). "The Court, however, need not consider either the 'discoverability' or the 'admissibility of [the requested] evidence in the

5

foreign proceedings.'" *Id*. at 597 (citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012)). [4]

To satisfy the foreign proceeding use requirement of § 1782, Vale must establish that the discovery is for (1) a foreign proceeding "within reasonable contemplation," *Intel*, 542 U.S. at 259, and (2) that the "foreign proceeding is adjudicative in nature," *Euromepa*, 154 F.3d at 27. An adjudicative proceeding is one where a tribunal must "decide the 'merits of the dispute.'" *Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14-cv-9997 (CM), 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015). Fine Arts asserts that Vale's proprietary claim is an "enforcement action," and thus not adjudicative under *Euromepa*.[5] (ECF 15 at 5, 12). The Court disagrees.

The proprietary claim is not seeking to enforce the arbitration award against BSGR. Indeed, Vale's applications for enforcement of the arbitral award – filed in both the SDNY and the UK – have already been granted. (ECF 3-38; ECF 3-39; ECF 3-40; ECF 3-41). Further, the High Court proceedings involve separate claims against a different set of defendants. (ECF 3-37). The Arbitration involved claims against BSGR while the High Court case involves claims against Steinmetz, Cramer, Struik, Avidan, Tchelet, Clark, the Balda Foundation, and Nysco, none of which were parties to the Arbitration. (*See* ECF 3-36; ECF 3-37). Each of these parties is currently contesting Vale's claims in the High Court. Accordingly, as there has been no decision

---

[4] Nysco also argues that because the High Court *may* grant a pending summary judgment motion as to the proprietary claim "the discovery sought in this Application cannot be used in the London Proceedings at this time [and] it is possible that the evidence sought here may never be submitted before the London Court at all." (ECF 25 at 16). Nysco cites no authority for the requirement that a dispositive motion in a foreign court must be resolved before a § 1782 application may be granted, nor do principles of comity require this Court to hold a properly-filed motion in abeyance until a decision abroad is rendered.

[5] Specifically, Fine Arts argues that that proceeding constitutes a "post-adjudicative foreign enforcement proceeding[ ] . . . 'where the merits of [the] controversy have already been decided by the foreign tribunal.'" (ECF 15 at 12-13) (citing *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (further citations omitted)).

on the liability of Defendants regarding either the fraud claims or the proprietary claim, and thus no judgment concerning Defendants, the Court finds that the UK proceedings satisfy the second requirement.

      **c.** ***Intel*** **Factors**

As articulated above, before a §1782 application is granted, Petitioner must also satisfy the discretionary factors laid out in *Intel Corp. v. Advanced Micro Devices, Inc.* The Court finds that these factors weigh in favor of granting the Application.

The first discretionary factor evaluates whether the discovery is sought from a party within the foreign tribunal's jurisdictional reach. *See Intel*, 542 U.S. at 264 (noting that if foreign proceedings can order production, §1782 is not necessary). Here, the Respondents are not parties to the UK proceedings and all reside or are found in the United States. Second, the High Court would be receptive to this Court's assistance and there is no evidence to the contrary. *See e.g.*, *Intel*, 542 U.S. at 262; *In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13-mc-397 (PGG), 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014); *In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2, 4 (S.D.N.Y. Aug. 19, 2004). Third, the Application is not an attempt to circumvent limitations on disclosure or discovery in the English proceedings.

The fourth discretionary factor asks the Court to consider whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Under Rule 45 of the Federal Rules of Civil Procedure, "[w]hether a subpoena imposes an 'undue burden' 'depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are

7

described and the burden imposed.'" *Koch v. Pechota*, No. 10-cv-9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) (quoting *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03-cv-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (citations and quotations omitted)).

Fine Arts argues that the Application was made in bad faith and thus should be denied in its entirety. (ECF 15 at 14-17). If an "application under section 1782 is made in bad faith . . . the court is free to deny the application *in toto*[.]" *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). If "[a] request [] appears only marginally relevant to the foreign proceeding[,] [this] may in certain cases suggest that the application 'is made in bad faith [or] for the purpose of harassment.'" *Mees*, 793 F.3d at 299 n.10. Fine Arts has not provided sufficient evidence to demonstrate bad faith on the part of Vale. *See In re Gorsoan Ltd.*, 435 F. Supp. 3d at 603 (placing burden for proving bad faith on party opposing Section 1782 application) (citing *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018)), appeal docketed, No. 20-678 (2d Cir. Feb. 21, 2020). Although it is not Vale's burden to demonstrate good faith, it has provided submissions sufficient to show relevance for purposes of discovery. Therefore the Court is not concerned that the discovery is being sought in bad faith. *See also In re WinNet R CJSC*, No. 16-mc-484 (DLC), 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (observing that courts exercise discretion to deny § 1782 applications only in "unusual cases"). Moreover, Fine Arts may still challenge particular requests under Rule 26 *et seq.* of the Federal Rules of Civil Procedure and any local civil rules governing discovery, although the Court strongly discourages further letter-writing campaigns.

IV. Conclusion

For the foregoing reasons, Petitioner's discovery application pursuant to 28 U.S.C. § 1782 is **GRANTED**. Petitioner is hereby authorized to serve its proposed subpoenas by July 24, 2020, if it has not served them already. (*See* ECF 23). If any Respondent seeks to file a motion to quash or a motion for a protective order, it must do so by **July 31, 2020, and must follow this Court's Individual Practices in doing so**.

The Clerk of the Court is respectfully directed to close ECF 1. The Clerk is also directed to close ECF 22 as moot pursuant to this decision.

**SO ORDERED.**

Dated: July 20, 2020
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge