

**mwe.com**
Andrew B. Kratenstein
Attorney at Law
akratenstein@mwe.com
+1 212 547 5695

September 14, 2020

Hon. Ona T. Wang
Magistrate Judge, US District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:     *In re Application of Vale S.A. et al. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*

Dear Judge Wang:

We are counsel to respondents RFR Holding LLC, RFR Realty LLC, R&S Chrysler LLC, and Aby Rosen (collectively, "RFR"). We write pursuant to the Court's Orders dated July 23, 2020 (D.E. 51) and August 13, 2020 (D.E. 54) as well as the Court's Individual Practices in Civil Cases. RFR respectfully requests that the Court quash the subpoenas (the "Subpoenas") served on RFR by petitioners Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale"). (*See* Exhibits A-D hereto.) As discussed below, the Subpoenas are overly broad, seek irrelevant information, and impose an undue burden on RFR, a non-party to the underlying litigation with no interest in its outcome.

Federal Rule of Civil Procedure 45 requires the Court to quash or modify a subpoena that requires disclosure of privileged or other protected matter or that "subjects a person to undue burden." Fed. R. Civ. P. (d)(3)(A)(iv). Rule 26(c) likewise authorizes courts to issue an order "to protect a party or person from . . . undue burden or expense." Fed. R. Civ. P. 26(c).[1] Whether the document subpoena has created an "undue burden" depends on several factors, including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citing *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). A non-party is also entitled to consideration regarding the "expense and inconvenience." *Id.*

The Subpoenas should be quashed as overbroad, unduly burdensome, and seeking irrelevant information. Vale is seeking documents for use in proceedings currently pending the United Kingdom (the "English Proceedings") against Benjamin Steinmetz ("Steinmetz"), Dag Lars Cramer, Marcus Struik, Asher Avidan, Joseph Tchelet, David Clark, the Balda Foundation, and Nysco Management Corp. (the "English Defendants"). (D.E. 2 at 1.) "Vale seeks to obtain relevant information about the full scope and current status of [the English] Defendants' real estate investments in this District in order to locate the traceable proceeds of Vale's payments to [the English Defendants]." (*Id.* at 2.)

---

[1] A non-party may seek from the court protection from discovery via the "overlapping and interrelated provisions" of Rules 26 and 45. *In re Fosamax Prod. Liab. Litig.,* No. 1:06-MD-1789, 2009 WL 2395899, at *2 (S.D.N.Y. Aug. 4, 2009) (citing *Insulate Am. v. Masco Corp.,* 227 F.R.D. 427, 432 (W.D.N.C. 2005)).



**340 Madison Avenue   New York NY 10173-1922   Tel +1 212 547 5400   Fax +1 212 547 5444**

*US practice conducted through McDermott Will & Emery LLP.*

Judge Ona Wang
September 14, 2020
Page 2

The Subpoenas, however, request documents that go far beyond mere asset tracing of the English Defendants' real estate investments in the Southern District of New York.  Instead, the Subpoenas seek, among other things, "all" documents and communications between RFR and any person or party connected in any way with the English Defendants, "all" documents concerning the English Defendants' relationship with another non-party, Signa Holding GmBH ("Signa"), and "all" documents related to RFR's relationship and investments with Signa.  (*See* Exs. A-D.)  Each of these requests is made without regard to the subject matter of the documents.

As we explained to Vale's counsel during multiple meet and confer sessions, RFR was involved in only two transactions that involved any English Defendant.  The first transaction was RFR's purchase of the Chrysler Building with Signa.  An entity affiliated with Steinmetz is alleged to have invested in the Chrysler Building *with Signa*, not RFR.  The second transaction was RFR's purchase of Steinmetz's interest in a German department store chain.  Given RFR's role in the Chrysler Building transaction (RFR was not invested with Steinmetz) and the nature of the German transaction (RFR was the buyer, not the seller), information obtained from RFR regarding these transactions will not aid Vale in its stated purpose of trying to understand "the full scope and current status of [the English] Defendants' real estate investments in this District *in order to locate the traceable proceeds of Vale's payments to [the English Defendants]*."  (D.E. 2 at 2) (emphasis added).  That said, as discussed below, RFR was prepared to produce documents concerning these two transactions so long as Vale agreed to indemnify RFR for the costs and risks associated with that collection and production, which Vale has not agreed to do.

Vale's counsel has also demanded that RFR produce *all* documents concerning RFR's business relationship with Signa notwithstanding that that RFR has engaged in other transactions with Signa that have *nothing to do* with the English Defendants.  Indeed, Vale's counsel has not produced any evidence demonstrating that RFR had any dealings with Signa that involved the English Defendants other than the Chrysler Building transaction.  Thus, Vale's fishing expedition should be rejected for this additional reason.  *See Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789, 2016 WL 303114, *2 (S.D.N.Y. Jan. 25, 2016) (quashing subpoenas holding that "[b]y failing to limit its subpoena to certain categories of documents, [the requesting party] is 'merely trying to engage in a fishing expedition.'").

The expense and inconvenience to RFR is also substantial and disproportionate to the needs of the case.  The Subpoenas request documents from RFR and its affiliates that are located anywhere in the world.  RFR determined that potentially responsive documents are located both in the United States ("US") and in the European Union ("EU"), specifically in Germany on the servers of RFR's German affiliate.  The documents located in the EU are subject to the Global Data Protection Regulation (the "GDPR").

The GDPR imposes substantial additional burdens and expense on anyone producing documents from the EU, for example, requiring that all personal information (including names and even e-mail addresses) contained in the documents be redacted.  Further, a decision on July 16, 2020 from the Court of Justice of the European Union ("CJEU"), *Data Protection Commissioner v. Facebook Ireland Limited and Maximillian Schrems* ("Schrems II"; C-311/18; Exhibit E), calls into question the legality under the GDPR of transferring documents to the US for use in litigation, thereby creating a regulatory risk for RFR's German affiliate were it to produce documents in response to the Subpoenas.  In *Schrems II*, the CJEU declared the so-called "privacy shield" method of protecting the transfer of EU data to the US invalid and held that the standard contractual clauses method may not be sufficient either because US law does not

McDermott
Will & Emery

Judge Ona Wang
September 14, 2020
Page 3

provide adequate protection against surveillance by US governmental authorities. It is thus unclear whether RFR's German affiliate can legally produce documents to the US without violating the GDPR.

In addition to these risks, the estimated cost to RFR of document production is exorbitant. During the meet and confer process, Vale asked RFR to run specific search terms over e-mail boxes in the US and EU. RFR did so and identified an estimated over 37,000 documents to be reviewed from the US email server. A reasonable estimate of the cost of the review and production of US documents based on volume of data and hours required for review is approximately $100,000. As for the documents located in the EU, application of Vale's search terms resulted in an estimated over 65,000 document hits for review. The estimated cost for the review of the EU documents is approximately $175,000, which includes having to export entire email boxes (as the EU emails had been archived) and applying extensive redactions to comply with the GDPR. Thus, the combined estimated budget for RFR's response to the Subpoenas – using the search terms requested by Vale – is currently approximately at minimum **$275,000**.

This financial burden is too great for RFR, a non-party who has no interest in the English Proceedings, to bear. Accordingly, RFR respectfully requests that, if the Court does not quash the Subpoenas, the Court require Vale to pay all of RFR's fees and costs, including legal fees, to respond to the Subpoenas and also require Vale to indemnify RFR for any GDPR breaches particularly given the regulatory uncertainty. *See, e.g., In re Hansainvest Hanseatische Investment-GMBH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018) (ordering that respondent produce German-held documents only to the extent that the §1782 applicant assumed the cost of production, including the costs of compliance with the GDPR, and indemnified the respondents against any potential breaches of European data privacy laws).

The Court may order production of documents if the "serving party . . . ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(c)(3)(C). Indeed, courts in this district have consistently interpreted Rule 45 to *require* cost-shifting whenever non-parties incur significant expenses. *See Koopman v. Robert Bosch LLC*, 18-CV-4065, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018) (holding that Rule 45 "make[s] cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena") (citations omitted); *Macnamara v. City of New York*, No. 04Civ.9612, 2006 WL 3298911, at *15 (S.D.N.Y. Nov. 13, 2006) (stating that Rule 45 "requires the Court to protect a non-party from 'significant expense'"). "Cost-shifting is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15CIV7488, 2017 WL 3822883, at *10 (S.D.N.Y. Aug. 30, 2017); *see also US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *4-5 (S.D.N.Y. Nov. 5, 2012) (requiring subpoenaing party to "bear the costs of search, collection, and production associated with compliance with the subpoenas" as a condition of production of responsive documents). The financial burden and regulatory risk is particularly high when compliance with the GDPR is required, making indemnification appropriate. *In re Hansainvest*, 364 F. Supp. 3d at 252.

Here, the financial burden is substantial – at least $275,000 – and RFR has no interest in the underlying litigation or its outcome. RFR is also subject to regulatory risk given GDPR compliance issues. Thus, if the Subpoenas are not quashed, Vale should at least be required to shoulder the financial burden of any production that it requires RFR to make and indemnify RFR for any violation of the GDPR.

We met and conferred extensively with Vale's counsel, but were not able to reach a resolution.

McDermott
Will & Emery

Judge Ona Wang
September 14, 2020
Page 4

Respectfully submitted,

Andrew B. Kratenstein

cc:  Counsel of Record (via ECF)

Encls.

McDermott
Will & Emery