

CLEARY GOTTLIEB STEEN & HAMILTON LLP

February 12, 2021

VIA ECF

The Honorable Ona T. Wang
Magistrate Judge, U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, No. 20-mc-199-JGK-OTW*

Dear Judge Wang:

We collectively write on behalf of Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale") and respondents RFR Holding LLC, RFR Realty LLC, R&S Chrysler LLC, and Aby Rosen (collectively, "RFR") (together, the "Parties") in response to Your Honor's direction in its Order dated January 29, 2021 (ECF No. 76) (the "Order") stating:

> RFR also contends that it should not be forced to pay the additional expenses associated with responding to Vale's request for information stored not only in the United States, but also on a server located in Germany which requires compliance with European Union privacy laws. (ECF 58 at 1-2). The Court will not consider cost shifting nor order indemnification at this time. Regarding those documents located in the European Union that allegedly give rise to RFR's privacy concerns, the parties are directed to meet and confer and submit a joint status letter on the issue by **February 12, 2021**. The letter must detail the parties' attempts to narrow the search to keep costs and the burden on RFR to a minimum, and, if necessary, explain why Vale's U.S. counsel's proposal for the production to be made to their colleagues in the U.K. does not address RFR's privacy concerns.

The dispute regarding these documents was first raised with Your Honor in RFR's request to quash the Subpoenas (ECF No.58) and Vale's opposition to that request (ECF No. 66). The parties set forth their agreement and respective positions as follows:

I.  **General Data Protection Regulations**

We are pleased to advise the Court that the Parties met and conferred on February 3, 2021, and reached an agreement resolving RFR's concerns about compliance with the European Union's General Data Protection Regulations (the "GDPR"). RFR agreed to make productions of documents from its European entity's servers to the London office of Cleary Gottlieb Steen & Hamilton LLP based on assurances provided by Vale's counsel concerning GDPR compliance, which addressed RFR's concerns.

## II. Efforts to Narrow Searches of EU Documents

### A. RFR's Position

RFR understands the Court's Order as directing the parties to submit a joint status letter that "*must detail the parties' attempts to narrow the search to keep costs and the burden on RFR to a minimum*, and, *if necessary*, explain why Vale's U.S. counsel's proposal for the production to be made to their colleagues in the U.K. does not address RFR's privacy concerns." (ECF No. 76 at 8) (emphasis added). Vale's counsel initially contended that the Order required the parties to submit a joint letter as to the resolution of RFR's "privacy concerns" only and initially refused to submit a joint letter that also "detail[ed] the parties' attempts to narrow the search to keep costs and the burden on RFR to a minimum." As we advised Vale's counsel, RFR understood the Order as requiring the parties to address both the "costs and burden on RFR" as well as "RFR's privacy concerns." Otherwise, the Court would not have stated that the letter should address the privacy concerns only "if necessary." Accordingly, the parties ultimately agreed to submit their respective positions on the burden and expense to RFR to date as per the below.

After receiving the Subpoenas, RFR's counsel met and conferred extensively with Vale's counsel in an attempt to narrow the Subpoenas' scope (which sought responsive documents worldwide for over a decade – from January 1, 2010 to the present). The email exchanges between counsel for RFR and Vale memorializing those efforts – including four telephonic meet and confers – are attached hereto as Exhibits A, B, and C.

As demonstrated in the email exchanges, RFR's counsel proposed six search terms to Vale's counsel to be used in the US and EU.[1] Vale's counsel responded by expanding that list to 96 search terms.[2] RFR then ran searches generating reports detailing the number of "hits" for each search term in both the US and EU.[3] RFR's counsel proposed modifications to terms based on these reports.[4] Vale's counsel agreed to limited modifications for some terms, but did not agree to others.[5] As a result, RFR applied 90 search terms to the US entities' electronically-stored information ("ESI"), and 102 search terms to the ESI stored in the EU. The hit counts, even after agreed search term modifications, resulted in approximately 37,000 documents in the US and approximately 65,000 documents in the EU.[6]

RFR's counsel estimated at that time that the total expense to respond to the Subpoenas would be in the range of $275,000 ($100,000 for the US and $175,000 for the EU).[7] As RFR's counsel explained to Vale's counsel, the cost of reviewing the EU entity's documents was higher not just because there were more hits in the EU, but because the EU e-mails had been archived in the ordinary course of business and needed to be restored and exported at substantial expense (estimated to be $25,000) by an e-discovery vendor.[8]

---

[1] *See* Ex. A, E-mail from S. Levander to M. Asher (July 28, 2020 10:22 am).
[2] *See id.*
[3] *See* Ex. B, E-mail from M. Asher to S. Levander (Aug. 10, 2020 1:56 pm); E-mail from A. Kratenstein to S. Levander (Aug. 13, 2020 9:10 am).
[4] *See* Ex. B, E-mail from M. Asher to S. Levander (Aug. 10, 2020) 1:56 pm); E-mail from M. Asher to A. Saenz (Aug. 17, 2020 9:09 am).
[5] *See* Ex. B, E-mail from A. Saenz to M. Asher (Aug. 13, 2020 10:54 pm); E-mail from S. Levander to M. Asher (Aug. 19, 2020 11:33 am).
[6] *See* Ex. B, E-mail from A. Kratenstein to S. Levander (Sept. 12, 2020 3:37 pm).
[7] *See* Ex. B, E-mail from A. Kratenstein to S. Levander (Sept. 10, 2020 6:24 pm).
[8] *See* Ex. B, E-Mail from A. Kratenstein to A. Saenz (Sept. 4, 2020 11:01 am).

Hon. Ona T. Wang, Page 3
February 12, 2021

Understandably, RFR (as a non-party) did not want to pay such substantial amounts without any assurance that it would be reimbursed.[9]  Accordingly, RFR's counsel informed Vale's counsel that RFR would not agree to incur any of these substantial costs (including spending an estimated $100,000 on US review alone) until the parties reached an agreement on cost-shifting and indemnification or the Court ruled on the issue.[10]  Vale's counsel refused to engage, claiming such discussions would be "premature."[11]  Accordingly, RFR filed its application to quash the Subpoenas and for cost-shifting/indemnification. (ECF No. 58.)

The Court issued its Order the evening of Friday, January 29, 2021, denying RFR's application to quash the Subpoenas and deferring on cost-shifting.  Accordingly, RFR worked diligently over the weekend to commence document review.  The Order also directed that the parties again meet and confer.  Accordingly, on Monday, February 1, 2021, RFR's counsel proposed to Vale's counsel that, to minimize the burden and expense on RFR, would produce only the final transaction documents for the two transactions (one in the US and one in the EU) that, according to Vale, may have involved the English Defendants as defined in the Subpoenas.[12]  The next day, Vale's counsel rejected RFR's proposed compromise and demanded that RFR "produce documents – including e-communications – responsive to all of Vale's document requests by this coming Friday [February 5, 2021].  If you do not, you will be in violation of the Court's Order, and Vale reserves the right to seek appropriate relief."[13]

As a result, using the search terms that Vale requested as narrowed through counsel's prior negotiations, RFR continued reviewing the tens of thousands of documents that hit on the search terms and began making rolling productions from the US and EU starting on Friday, February 5, 2021.  As a result of the need to review documents on two continents and comply with GDPR requirements for the documents located in the EU, RFR employed data centers and review teams in the US for the documents on US servers and in Europe for the documents on EU servers.  In addition, German-speaking reviewers were retained to review the documents from both US and EU entities as thousands of documents on both the US and EU entities' servers were in German in whole or in part.  RFR's US production is now largely complete (subject to a final review of documents marked privileged and production of a privilege log).  RFR will also continue to meet and confer with Vale's counsel concerning potential ways to minimize burden and expense of review of the EU e-mails.

RFR intends apply to the Court for reimbursement after its document production is complete and all associated expenses are tabulated, to which Vale would presumably have an opportunity to respond.

---

[9] *See* Ex. B, E-Mail from A. Kratenstein to S. Levander (Sept. 10, 2020 6:24 pm); E-Mail from A. Kratenstein to S. Levander, Sept. 12, 2020 3:37 pm).
[10] *See* Ex. B, E-Mail from A. Kratenstein to S. Levander (Sept. 12, 2020 3:37 pm).
[11] See Ex. B, E-Mail from S. Levander to A. Kratenstein (Sept. 9, 2020 6:36 pm).
[12] *See* Ex. C, E-Mail from A. Kratenstein to S. Levander (Feb. 1, 2021 5:46 pm).
[13] *See* Ex. C, E-Mail from S. Levander to A. Kratenstein (Feb. 2, 2021 11:20 pm).

Hon. Ona T. Wang, Page 4
February 12, 2021

### B. Vale's Position

<u>Introduction</u>

In light of the Court's Order that "the Court will not consider cost shifting nor indemnification at this time," January 29 Order at 8, the purpose of this joint status report was to advise the Court of the parties' resolution of RFR's concerns regarding GDPR; to the extent the parties did not reach an amicable resolution and judicial involvement was necessary, the Court wished the parties to explain how they have attempted to narrow the search to keep costs and burden to a minimum, including an explanation as to why RFR did not believe that Vale's proposal addressed its privacy concerns. Given the resolution of the issue at hand, Vale advised RFR that it viewed extensive discussion and debate to the Court concerning search terms to be unnecessary and only presents its position in light of RFR's insistence.

Vale has been and continues to be committed to working with RFR to develop narrow search terms to keep the costs and the burden of RFR's identification and review of responsive documents to a minimum. Whether with respect to RFR's documents on its EU or US servers, the overwhelming fact is that RFR flat-out refused to produce a single document to Vale until February 5, 2021. Despite being advised repeatedly by Vale that RFR's demand for cost-shifting was premature,[14] RFR drew a line in the sand that it would not consider any production until Vale acceded to that demand. Vale repeatedly sought to engage RFR in an effort to narrow search terms so as to obtain production of at least the lowest-hanging fruit of uncontested and easily obtainable documents, but RFR ultimately broke off all discussions and advised Vale that "RFR is under no obligation to produce documents unless and until the propriety of the subpoenas (including any cost shifting and indemnification) is decided."[15]

Below are more details with regard to the parties' discussions with respect to the EU and US documents.

<u>Documents on EU Servers</u>

On August 13, 2020, RFR shared its proposed search terms and "hit list by custodian for RFR's German affiliate." That same day, Vale proposed the removal of eight search terms intended to reduce expenses, which, according to RFR, decreased hit volumes nearly in half.[16]

Despite this productive initial exchange and Vale's repeated attempts to reach an agreement on search terms for documents located on RFR's EU servers, RFR did not engage further with Vale. On August 19, 2020 and September 1, 2020, Vale reached out to RFR offering, among other things, to meet and confer to further "reduce hit counts and make the review of the documents on [RFR's] European servers more efficient."[17] While RFR initially agreed on September 1, 2020 to resume a dialogue with Vale, it later changed course and stated that it refused to confer on search terms unless and until its motion to quash the

---

[14]     *See* Ex. B, E-Mail from S. Levander to M. Asher, A. Saenz and A. Kratenstein (Aug. 19, 2020 11:33 AM); Email from S. Levander to A. Kratenstein and A. Saenz (Sep. 9, 2020 6:36 PM); Email from A. Saenz to A. Kratenstein and S. Levander (Sep. 11, 2020 1:55 PM).
[15]     *See* Ex. B, E-Mail from A. Kratenstein to S. Levander and A. Saenz (Sep. 10, 2020 6:24PM).
[16]     *See* Ex. B, E-Mail from A. Kratenstein to S. Levander (Aug 13, 2020 9:10 AM) (identifying 119,945 total hits); Ex. B, Email from M. Asher to A. Saenz, S. Levander and A. Kratenstein (Aug. 17, 2020 9:09 AM) (after elimination of terms as recommended by Vale, identifying a total hit count of approximately 65,000 documents).
[17]     *See* Ex. B, E-Mail from S. Levander to M. Asher, A. Saenz and A. Kratenstein (Aug. 19, 2020 11:33 AM); Ex. B Email from A. Saenz to S. Levander, M . Asher and A. Kratenstein (Sep. 1, 2020 1:24 PM).

Hon. Ona T. Wang, Page 5
February 12, 2021

Subpoena was resolved. In RFR's counsel words, "RFR is not incurring further burden and expense until cost-shifting and indemnification are resolved, including by the court if necessary."[18] For nearly five months thereafter, RFR simply ignored its Subpoena and awaited a court directive before producing anything.

As with its proposal to produce documents to Vale's counsel's offices in London, Vale has worked and will continue to work with RFR to find practical and cost-effective solutions to reduce RFR's overall review burden in producing documents responsive to its Subpoenas.

Documents on US Servers

RFR's refusal to produce a single document on its US servers until ordered by the Court two weeks ago is even more egregious insofar as the parties actually reached agreement on the vast majority of search terms long ago. While RFR would lead this Court to believe the exchanges regarding search terms were unsuccessful, last August the parties reached agreement on all but six search terms for documents on US servers.[19] Vale offered to continue a discussion narrowing the remaining six terms, noting that the meet and confer process had resulted in significantly fewer hits and Vale "remain[ed] open to any counterproposals designed to exclude false positives."[20] Vale urged RFR to move forward "on a parallel track" with RFR's production of documents responsive to the Subpoenas on RFR's US servers responsive to the search terms RFR itself agreed were appropriate, but RFR refused to produce those documents and denied Vale's renewed request for further engagement on the remaining terms.[21]

As with documents on EU servers, Vale has always been eager for a dialogue with RFR to reasonably narrow search terms to keep costs down, but these efforts have been repeatedly rejected. RFR's production to date could have presumably been less expensive had it not rejected Vale's efforts at engagement, and to the extent RFR's production is incomplete, Vale will continue to work with RFR to reduce costs and ensure the production of all documents responsive to its Subpoenas.

---

[18] *See* Ex. B, E-Mail from A. Kratenstein to A. Saenz and S. Levander (Sep. 12, 2020 3:37PM).
[19] *See* Ex. B, E-Mail from A. Saenz to S. Levander, M. Asher and A. Kratenstein (Aug. 13, 2020 10:53 PM).
[20] *See* Ex. B, E-Mail from S. Levander to M. Asher, A. Saenz and A. Kratenstein (Aug. 19, 2020 11:33 AM); Ex. B, Email from A. Saenz to S. Levander, M . Asher and A. Kratenstein (Sep. 1, 2020 1:24 PM).
[21] *See* Ex. B, E-Mail from A. Kratenstein to S. Levander and A. Saenz (Sep. 10, 2020 6:24PM) ("RFR is under no obligation to produce documents unless and until the propriety of the subpoenas (including any cost shifting and indemnification) is decided").

Hon. Ona T. Wang, Page 6
February 12, 2021

<u>Cost-Shifting and Indemnification</u>

To the extent Your Honor reconsiders her directive that "the Court will not consider cost shifting nor indemnification at this time," January 29 Order at 8, Vale respectfully requests the opportunity to respond in more detail with its reasons why cost shifting and indemnification are inappropriate in these circumstances.

Respectfully submitted,

| | |
|---|---|
| <u>/s/ Andrew B. Kratenstein</u> | <u>/s/ Jeffrey A. Rosenthal</u> |
| Andrew B. Kratenstein | Jeffrey A. Rosenthal |
| McDERMOTT WILL & EMERY LLP | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| 340 Madison Avenue | One Liberty Plaza |
| New York, New York 10173 | New York, New York 10006 |
| | |
| *Attorneys for RFR Holding LLC, RFR Realty LLC, R&S Chrysler LLC, and Aby Rosen* | *Attorneys for Vale S.A., Vale Holdings B.V., and Vale International S.A.* |