```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE APPLICATION OF VALE
S.A., VALE HOLDINGS B.V., AND
VALE INTERNATIONAL S.A. FOR AN
ORDER PURSUANT TO 28 U.S.C. §
1782 TO CONDUCT DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS,

                                      20 MC 199 (OTW)

                                      Oral Argument

------------------------------x
                                      New York, N.Y.
                                      November 10, 2021
                                      4:10 p.m.
Before:

                    HON. ONA T. WANG,

                                      Magistrate Judge


                        APPEARANCES

CLEARY GOTTLIEB STEEN & HAMILTON LLP
     Attorneys for Applicant Vale
BY:  SAMUEL LEVANDER
     JEFFREY A. ROSENTHAL
     OLIVIA EVERTON

HELLERSTEIN & COMPANY
     Attorneys for Respondent Perfectus
BY:  JOSEPH Z. HELLERSTEIN (via telephone)
```

1           (Case called)
2           MR. ROSENTHAL:  Good afternoon, your Honor.  Jeff
3   Rosenthal of Cleary Gottlieb Steen & Hamilton, on behalf of
4   Vale.  It's a pleasure to be back in a courtroom for the first
5   time in almost two years.  With me are my colleagues Sam
6   Levander and Olivia Everton, and Mr. Levander is going to be
7   handling today's proceeding.
8           THE COURT:  All right.  Great.  Who do we have on the
9   phone?
10          MR. HELLERSTEIN:  Joe Hellerstein representing
11  Perfectus, from Hellerstein & Co., located in Israel.
12          THE COURT:  All right.  Good afternoon.  So we are
13  here in person.
14          Mr. Hellerstein, just going to ask you to mute your
15  line when you're not speaking.  It's going to be hard to read
16  your language, but I will make sure that you have an
17  opportunity to speak.
18          For Mr. Levander, Ms. Everton, and Mr. Rosenthal, you
19  do not need to stand up to speak.  Just stay seated.  Since
20  we're wearing masks in the courtroom, it's a lot easier to hear
21  if we're all just talking into the microphone.
22          All right.  I think I really had -- Mr. Levander, why
23  don't you just give me a status on the document production.
24          MR. LEVANDER:  For Perfectus specifically or for all
25  of the respondents?

            THE COURT:  Let's deal with Perfectus first.  Yes, I mean, the last I saw from the parties' filings was, from some time ago, that there were deficiencies, and I wanted to know if you had worked any of them out.

            MR. LEVANDER:  Right.  So thank you, your Honor.  So happy to give an update on the status of Perfectus's production since we wrote the letter to your Honor on September 13.

            So at that time Mr. Hellerstein had largely ignored our outreach, and he had not once been willing to engage with us in a meet-and-confer, despite our repeated requests to do so beginning April of this year.  Since filing that letter motion on September 13, we asked Mr. Hellerstein to meet and confer several more times, and we finally did get him on the phone for the first time this Monday.  Until this week, the only further action that Perfectus had taken was to produce an incomplete set of tax filings.  We'd note that they're still missing their tax returns from 2010 and 2011, and they had also produced bank account statements for a TD Bank account that we understand Perfectus closed in June of 2021.  So we still have no bank account information for any currently open bank account of Perfectus's, nor do we have bank account information from Perfectus's Bank Leumi account, which was its principal account at the time from 2010.

            So for Vale's tracing claim in the English proceedings, the key questions are what happened to the money

 1  when Vale paid it to BSGR in 2010, and where is that money
 2  today?  So missing bank account records from 2010 and the
 3  present are very important pieces of information for that claim
 4  in the English proceedings.
 5          This week we received a few additional documents from
 6  Perfectus, including a few additional tax documents, but,
 7  again, not the ones from 2010 or 2011.  We received this
 8  morning due diligence materials related to a single property,
 9  500 North Michigan Avenue in Chicago.  We also received two
10  emails between Gregg Blackstock, who's Perfectus's CEO, and an
11  employee of HFZ related to K-1 tax filings, and then we
12  received various org charts.
13          THE COURT:  All right.  What is still missing?  I'm
14  not great at taking notes by hand anymore.  You're missing open
15  bank records or bank records from open bank accounts, as well
16  as the main bank accounts used by Perfectus from 2010 to the
17  present?
18          MR. LEVANDER:  That's correct.  Both of those
19  categories are correct.
20          THE COURT:  You also are still missing -- you're still
21  missing 2010 and 2011 tax returns?  I'm not sure if I misheard.
22          MR. LEVANDER:  No, that's correct as well.
23          THE COURT:  What else are you missing?
24          MR. LEVANDER:  We're missing correspondence with BSG
25  Entities.  There's been a limited production of correspondence,

1    but there are only a couple documents from 2010, and those

2    mostly deal with property and Romania.  Then there has been no

3    correspondence produced since 2018 except for a handful of

4    documents that relate to an IRS tax inquiry.  So it's a little

5    difficult, from our position, to know what hasn't been

6    produced, but it seems facially implausible that there are no

7    responsive documents from 2018 on.

8               THE COURT:  Are you also still missing a privilege

9    log?

10              MR. LEVANDER:  There's no privilege log.  There are a

11   few other categories also of documents.  So there's still no

12   board meeting minutes.  We haven't received a single set of

13   board meeting minutes.  We haven't received financial

14   statements from 2019 or 2020 or any interim financial

15   statements from this year.  Then we don't have any due

16   diligence documents, with the exception of those documents that

17   we received earlier today related to that single property in

18   Chicago.

19              Then one other point that I would note -- and we made

20   this point in our September 13 letter, but it hasn't been

21   addressed in the productions -- the documents that we have

22   received are sort of facially deficient in the way that they've

23   been produced.  So there are clearly attachments missing, the

24   documents haven't been produced in families, there's no meta

25   data, nor is there any Bates stamping, which makes it very

difficult to process their production and also would make it very difficult for any documents to be authenticated in the English proceedings.

THE COURT:  All right.  Mr. Hellerstein, please take yourself off of mute, and I'd like to hear your response.

MR. HELLERSTEIN:  Our response is we are trying.  We actually reached out to Mr. Levander and his colleagues in a lengthy phone conversation, and we actually answered in writing a lot of his questions about categories of documents.  We are still working.

Just so your Honor has a picture of the document production by my client, and that's -- the company, Perfectus, is a holding company.  There is no physical office except for an address in New York.  There's one director and one employee of the company.  The office is remote.  So the production consists of this individual, Mr. Blackstock, running, together with an IT person, various searches and producing extracts from his computer to try to respond to the various categories.

On some of the categories Mr. Levander mentioned, we told Mr. Levander that there are no documents in response.  There are no financial statements that he's asking for because tax returns have not been completed because Perfectus is still waiting for K-1 forms from some of its investments in order to complete the tax returns, and there are no standalone financial statements.  Due diligence on some of the investments, as we

1  told Mr. Levander, the investments were affected by Perfectus
2  relying on somebody else's due diligence or just piggybacking
3  on somebody else's investment so that there was no due
4  diligence conducted or any reports circulated.  So we've
5  answered his questions the best we can.  We are still trying to
6  locate documents and to conduct further searches.
7          I understand from my client that if he were given an
8  additional two weeks, he'd be able to complete the production
9  and to locate all documents in his possession, or that were in
10 his possession, in response.  I tried to convey to Mr. Levander
11 and the other Cleary Gottlieb attorneys that this course of
12 pursuing a motion for contempt is not in his client's best
13 interest, that we are cooperating with him, and we're willing
14 to do whatever it takes to produce the documents.
15         My client also has limited resources.  There's one
16 person there.  He has no staff, no employees.  I'm not sure I'm
17 going to get paid, and we're trying to do the best we can
18 considering the circumstances.  So we'd like to cooperate
19 further, and given another two weeks, we can complete the
20 production.  We're confident that we can do it.
21         In terms of the privilege log, my client, because of
22 his limited resources, has decided that he's going to forgo --
23 he's not waiving any rights, but he's forgoing a privilege
24 review, so that the documents he's producing are not even being
25 reviewed for privilege with his knowledge and understanding,

1   just in order to produce the documents as fast as possible.

2   THE COURT:  All right.  So then from what I'm hearing
3   from you, Mr. Hellerstein, I can order Perfectus to complete
4   its production by November 24.  That's two weeks from now.
5   Right?

6   MR. HELLERSTEIN:  Yes, we'd appreciate that, your
7   Honor.

8   THE COURT:  OK.  Perfectus is to complete production
9   by November 24.  I don't think this is going to be the end of
10  the story with Perfectus.  While I may hope it is, I don't have
11  great faith that this is going to be the end of it.  Maybe it
12  will be.  I hope so.

13  Let's have a joint status letter, a joint status
14  letter due -- Mr. Hellerstein, are you ahead in time?  So right
15  now it's Wednesday night for you, or is it --

16  MR. HELLERSTEIN:  It's now 11:25 in the evening,
17  Wednesday night.

18  THE COURT:  Wednesday night.  OK.  So why don't we
19  have a joint status letter due on Perfectus's production due by
20  5 p.m. on November 2.

21  MR. ROSENTHAL:  December, your Honor.

22  THE COURT:  I mean December 2.  Thank you for that
23  correction, December 2.  I'm kind of in denial about how
24  quickly time passes these days.  December 2, that is a
25  Thursday.

|   |   |
|---|---|
| 1 | Now, I am a little bit concerned about the timeline |
| 2 | that has gone on over the summer in terms of how the |
| 3 | meet-and-confer process has gone forward and also how the -- |
| 4 | and some of the concerns about time to respond.  So your joint |
| 5 | status letter is due December 2, 5 p.m.  It will be filed by |
| 6 | counsel for by Vale.  And if you do not have sufficient |
| 7 | information or have not gotten enough input from |
| 8 | Mr. Hellerstein to make it a fully joint letter, you'll say so |
| 9 | in the letter.  OK. |
| 10 | MR. ROSENTHAL:  Your Honor, there's one other thing |
| 11 | Mr. Levander's going to address. |
| 12 | THE COURT:  OK. |
| 13 | MR. ROSENTHAL:  We have concerns about the fabrication |
| 14 | of documents. |
| 15 | THE COURT:  OK. |
| 16 | MR. HELLERSTEIN:  I'm sorry.  I didn't hear what was |
| 17 | just said. |
| 18 | MR. LEVANDER:  Just one further point on Perfectus's |
| 19 | recent productions, actually, today's production.  So one point |
| 20 | we raised previously in our letters is the lack of a current |
| 21 | org chart from Perfectus.  So we have seen Perfectus org charts |
| 22 | both in Perfectus's earlier productions as well as there's some |
| 23 | org charts that are available in publicly filed or publicly |
| 24 | available materials, so we haven't been completely in the dark, |
| 25 | but we would like -- we've been asking Perfectus to give an |

1   update on the current status of their org chart.  There is an

2   org chart that was filed in a case in New York state court

3   recently.  If your Honor would allow it, I'd like to pass it

4   forward to you and your clerk.

5           THE COURT:  Why don't you tell me what the concerns

6   are.  I don't need to look at it.  I'm a little bit concerned

7   also that, since Mr. Hellerstein isn't physically present, he's

8   at a slight disadvantage here.  Why don't you just talk to me

9   about your concerns.  Is that the org chart that you're

10  concerned might be fabricated?

11          MR. LEVANDER:  So --

12          MR. ROSENTHAL:  Your Honor, we sent this to

13  Mr. Hellerstein before the hearing to let him know that we

14  would be referring to it with the Court.  So if you see it, he

15  has it in front of him as well.

16          THE COURT:  Fair enough.  I mean, this hasn't been

17  briefed, and I just want to hear it for a preview, because what

18  I was going to do after I get the joint status letter on

19  December 2 is probably put you on for another date for a

20  conference anyway.

21          So do you want to preview it for me now?  Do you want

22  to discuss it later in a letter?  It's up to you.

23          MR. LEVANDER:  Just to preview it very quickly, and

24  then we can address this further, so the chart in my left hand

25  here is one that was produced in a public filing.  You can see

in the far -- it's quite small, I suppose, but on the far right of the page, there's Tarpley Belnord Corp., which is the predecessor company of Perfectus, and then above that it says "100 percent owned by Beny Steinmetz and family trusts."  Then we received in a production today the chart in my right hand, which on the far left of the page has obscured "Beny Steinmetz and family trusts" and just says "Perfectus Real Estate Corp.," and there's a big blue rectangle that appears to have been superimposed on this image.

MR. ROSENTHAL:  Otherwise they're identical charts.

THE COURT:  I see the difference.

MR. LEVANDER:  Otherwise they're identical.

MR. HELLERSTEIN:  I'm sorry.  I'm not sure what you're referring to.  I know you sent me a document earlier today and said you'd be referring to that document, Mr. Levander, but I don't know what you're referring to now in the court.  I only saw one document.  I didn't see two documents.

MR. LEVANDER:  So there's a document -- it's the final page of the document that I sent you about two hours ago, and then it's one of the three -- the three documents that you produced this morning.

THE COURT: All right.  You know what?  This is something that you should be going over in a meet-and-confer. You're from a good law firm.  I am sure you know how to ask for the relief that you seek.  This might be something that, for

```
 1    example, may be clarified through a deposition.  There may
 2    be -- you may need a deposition on other issues.  I'm hoping
 3    that you'll be able to resolve these issues through speaking to
 4    Mr. Hellerstein and really trying to dig down without the need
 5    for a deposition, whether it's a deposition of the individual
 6    or a deposition of the organization, but if it comes to that
 7    and your concerns continue and they're not assuaged in any way,
 8    then you know what to do next.  You can certainly write in.  I
 9    will try to attend to your disputes a little more -- in a
10    little more timely fashion.  One of the things that happened
11    was that my mother passed away this summer, so I was unable
12    to -- I spent a lot of time out of the district.  But I think
13    we'll be able to address some of that in a more timely manner.
14    But I thank you for previewing it.
15              Mr. Hellerstein, it's now been previewed for you as
16    well that there's apparently a conflict between the org chart
17    that was filed in a New York state court action and an org
18    chart for Perfectus that was produced today in discovery.
19              Is that it, how I'm explaining it?
20              MR. LEVANDER:  That's accurate, your Honor.
21              THE COURT:  Thanks.
22              All right.  What else on the Perfectus production and
23    document issues?
24              MR. HELLERSTEIN:  Is that directed towards me?
25              THE COURT:  It's directed towards both of you.
```

1   Mr. Levander's going to answer first, and then I'll let you
2   respond.  OK, Mr. Hellerstein?
3           MR. HELLERSTEIN:  Sure.
4           MR. LEVANDER:  Your Honor, I think that addresses our
5   concerns.  We appreciate your attention to these issues and
6   setting this deadline which we hope, given that
7   Mr. Hellerstein's represented in court today that that's a
8   deadline that he can make, that he will actually complete his
9   production by this deadline.  So we appreciate your time and
10  attention to these issues.
11          THE COURT:  All right.  And that the production will
12  be satisfactory.  In the meantime, whether it's before that
13  production or after, when you're working on the joint status
14  letter, see if you can address your concerns about inconsistent
15  documents as well.
16          Mr. Hellerstein, I'm sorry, anything you'd like to
17  add?
18          MR. HELLERSTEIN:  No.  I appreciate your Honor's time,
19  and we're working hard to produce the documents.  We don't
20  intend to wait for the two weeks.  We're going to produce them
21  as we have them on an ongoing basis, and we're working hard to
22  do that.
23          THE COURT:  All right.  So anything else from
24  Perfectus?  Not that you're aware of, Mr. Levander?
25          MR. LEVANDER:  No, your Honor.

1     THE COURT:  All right.  I'm now going to ask counsel,
2 Vale's counsel, to give me a short update on the petition and
3 the document production as a whole.
4     Mr. Hellerstein, you're welcome to stay on the line
5 and listen in or not.  It's up to you.  You can also disconnect
6 at this point if you would like.
7     MR. HELLERSTEIN:  OK.  Everyone have a nice day.  I'll
8 disconnect.
9     And, Mr. Levander, I look forward to speaking to you
10 soon.
11     THE COURT:  All right.  Mr. Hellerstein, I look
12 forward to reading the joint letter, and I hope that that will
13 be the end of it.  I say in the best of ways, all right, I hope
14 to not hear from you on this again.
15     MR. HELLERSTEIN:  OK.  Thank you, your Honor.
16     THE COURT:  All right.  Thank you.
17     On to the other document issues.
18     MR. LEVANDER:  Sure.  Thank you, your Honor.
19     So just quickly on the other respondents here, so Fine
20 Arts produced over 2,000 documents between September of 2020
21 and March of 2021, and they've now completed their production.
22     RFR produced over 2,000 documents from its U.S.
23 servers in February 2021 and another approximately 7,000
24 documents from its European servers.  RFR has also completed
25 its production.

1    The same counsel at McDermott Will & Emery who
2    represent RFR represent Signa.  Your Honor granted Vale leave
3    to serve our subpoena on Signa on June 22.  So then McDermott
4    has hade may small initial production on Signa's behalf and is
5    in the process of gathering documents for review of electronic
6    communications which, is just beginning.
7    HFZ has produced over 2,000 documents beginning in
8    February 2021.  We've been meeting and conferring regularly and
9    working productively with HFZ's counsel.  There are a few final
10   outstanding requests that we expect to hear back from HFZ
11   shortly on.
12   Nir Meir originally was represented by the same
13   counsel as HFZ, but as of January 28 of this year, he has
14   separate counsel.  Mr. Meir has produced close to 1,000
15   documents beginning in August 2021, and we understand that he's
16   in the process of gathering and producing additional documents.
17   Then, finally, Bryan Cave produced over 2,000
18   documents beginning in July of this year, and we understand
19   that Bryan Cave is currently working on a revised privilege
20   log.
21   So, as a whole, the respondents have made some
22   progress.  Some of them have completed their productions.
23   There are a few outstanding issues, but none other to tee up
24   for your Honor at today's.
25   THE COURT:  All right.  Great.  After I get the joint

1    status letter, I may order you to give me an end-of-the-year or
2    beginning-of-the-new-year status letter on all of the
3    respondents and their productions.
4            All right.  Is there anything else we need to attend
5    to today?
6            MR. LEVANDER:  No, I think that covers it, your Honor.
7    Just to point out that the foreign proceedings in this matter
8    do begin on January 24, 2022, so that is a date that we are
9    pushing towards with all the respondents in terms of making
10   clear that that is a key date for the completion of any
11   production.
12           THE COURT:  All right.  Anything else?
13           No.  All right.  Thank you very much.  We are
14   adjourned.  I'm going to request that you order a copy of the
15   transcript.
16           And welcome back to the courtroom.
17           MR. LEVANDER:  Thank you very much.
18           MR. ROSENTHAL:  Very wonderful to be back.
19           (Adjourned)