# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG • BEIJING
BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL • SILICON VALLEY

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
AUDRY X. CASUSOL
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOHN A. KUPIEC
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
    RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
    RESIDENT COUNSEL

D: +1 212 225 2086
jrosenthal@cgsh.com

May 16, 2022

**VIA ECF**

The Honorable Ona T. Wang
United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Re: *In re Application of Vale S.A. et al.,* No. 20-mc-199-JGK-OTW

Dear Judge Wang:

We write on behalf of Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale") in response to the letter filed on May 11, 2022 by Signa Chrysler Holding LLC ("Signa"), ECF No. 145. Signa claims that it is a disinterested "non-party" and that it should not have to pay over €857,000 in costs it allegedly incurred in responding to a Court-ordered subpoena. However, Signa-affiliated companies were joint venture partners of Benjamin Steinmetz and his affiliated entities, and were potential recipients of traceable funds that BSG Resources Limited ("BSGR") fraudulently obtained from Vale. Accordingly, Signa's request to shift its costs to Vale should be denied.

In June 2020, this Court granted Vale's above-captioned application to conduct discovery pursuant to 28 U.S.C. § 1782 (the "Application") seeking documents from a number of real estate entities for use in proceedings in the United Kingdom (the "English Proceedings"). ECF No. 45. The Court granted leave for Vale to serve its subpoena on Signa in June 2021.[1] ECF No. 90. As set forth in the Application, Vale sought discovery to, *inter alia*, trace the

---

[1] Signa was added as a subpoena recipient in this proceeding after documents produced by other respondents revealed that it was found and resides in this District.

The Honorable Ona T. Wang, p. 2

proceeds of a fraudulently-induced $500 million payment it made to enter into a joint venture with BSGR on April 30, 2010.[2]  ECF No. 2 at 6.

On its face, Signa's application for costs of "compliance"[3] amounting to €857,000 is "extremely high and objectively unreasonable" for the review of 135,680 documents.[4]  Signa's alleged costs of compliance are more than 10 times greater than any amounts awarded for subpoena compliance in the cases Signa has cited.[5]  Furthermore, contrary to Signa's assertions, Vale worked cooperatively with Signa to reduce costs, including by: (1) applying date restrictions to specific search terms; (2) further narrowing search terms applied to documents; and (3) leveraging existing agreements with Signa's counsel, in the context of their representation of a separate respondent, RFR Holding LLC, to facilitate document production.[6]

"Cost-shifting is not a common practice.  Instead, courts assume that a responding party ordinarily bears the costs of responding."[7]  Where a non-party seeks to shift costs incurred in responding to a Rule 45 subpoena, courts consider three factors, all of which advise against cost-shifting:  "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance."[8]

None of these factors is affected by the success at trial of the underlying claims, despite Signa's unsupported suggestion to the contrary.  Signa implies that its claim for cost-shifting is somehow strengthened by Vale's discontinuance of the English Proceedings because the Application "never should have been brought," ECF No. 145 at 3, and that the outcome of the foreign proceedings should somehow influence whether this Court should award costs.  Aside from being unsupported by any case law, Signa's assertion would require this Court to

---

[2]     Signa mistakenly states that the English Proceedings were brought to "collect on a civil arbitration award and judgment previously obtained by Vale."  ECF No. 145 at 1.  In fact, the English Proceedings brought against Steinmetz and other persons or entities affiliated with BSGR were based on allegations that such defendants made fraudulent misrepresentations and entered into a conspiracy to induce Vale to enter into a joint venture with BSGR.

[3]     Even if this Court were to find that cost-shifting is appropriate, which it should not, Signa seeks fees that are *never* appropriately shifted, including time spent preparing responses and objections and drafting and filing this letter motion to seek costs.  See, e.g., ECF 145-1 at 13 (billing for "Revising letter re: expense shifting," and "drafting cost application.").  See also Contant v. Bank of Am. Corp., No. 1:17-cv-03139 (LGS) (SDA), 2020 WL 3260958, at * 5 (S.D.N.Y. June 17, 2020) (noting that "[c]ertain of the time billed during this period, for which FXCM seeks reimbursement, is not reasonably charged to Plaintiffs since such time was not spent in connection with subpoena compliance, but rather was spent seeking to avoid compliance or seeking to obtain fees for FXCM").

[4]     Valcor Eng'g Corp. v. Parker Hannifin Corp., No. 8:16-cv-00909-JVS-KESx, 2018 WL 3956732, at *3 (C.D. Cal. July 12, 2018) (denying costs, noting "a party might incur more than $300,000 in attorney's fees, if at all, in litigating a case through a multi-day trial"); see also Nike, Inc. v. Wu, No. 13 Civ. 8012 (CM), 2020 WL 257475, at *2 (S.D.N.Y. Jan. 17, 2020) (denying costs as "unreasonably expensive, [and] inefficient").

[5]     See In re First Am. Corp., 184 F.R.D. 234, 244-45 (S.D.N.Y. 1998) (awarding non-party only $75,000 in costs shifted based on its interest in the underlying litigation and acts of bad faith to avoid production).

[6]     See ECF No. 145-3 (agreement to both search term modification and date limitations, and offer by Cleary Gottlieb to provide "the same GDPR-compliant methodology used by RFR in this same matter").

[7]     See 9 Daniel R. Coquillette et al., Moore's Federal Practice § 45.33 (3d ed. 2022) ("A nonparty responding to a subpoena is generally required to bear its own costs of production.").  See In re World Trade Ctr. Disaster Site Litig., No. 21 MC 100(AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) ("Under Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance.") (citations omitted).

[8]     See In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (citation omitted).

improperly "involve [itself] in technical questions of foreign law," in contravention of 28 U.S.C. § 1782's express purpose.[9]  Rather, each equitable factor favors Vale and disfavors cost-shifting.

*First,* Signa is not a disinterested third party with no stake in the underlying litigation.  As Signa admits, it entered into a joint venture with Steinmetz in 2012 through which it acquired approximately 20 department store properties in Germany, after Vale's payment of $500 million to BSGR.[10]  Exhibit A, Email from M. Asher to A. Saenz dated Aug. 3, 2021.  See also ECF No. 145 at 2.  Furthermore, Signa took over eight months to review 135,680 documents and comply with Vale's subpoena, adopting a dilatory litigation stance beyond mere "compliance" that suggests it is not a disinterested party.[11]

*Second,* with a "Gross Asset Value of . . . 21 billion euros" and "Gross Development Value [of] . . . 23 billion euros," Signa Real Estate Group is able to bear these costs.  Exhibit B, "The Signa Group At a Glance," https://www.signa.at /en/company/.  Courts in the Second Circuit have declined to shift costs when a subpoena recipient has more than enough resources to bear the costs of compliance, regardless of its size relative to the §1782 applicant.[12]

*Third,* the underlying foreign litigation was of public importance because it brought to light significant fraud and a prominent scheme of bribery of public officials[13] and advanced the important policy goal of increasing reciprocal international cooperation in judicial proceedings.[14]  There is no equitable basis for Signa to shift its costs to Vale.

Accordingly, Vale respectfully requests that the Court deny Signa's request for cost-shifting.

---

[9] Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82 (2d Cir. 2012) (citation omitted); In re Application of 000 Promneftstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding, 134 F. Supp. 3d 789, 793 (S.D.N.Y. 2015) ("To require that a district court undertake a more extensive inquiry into the laws of the foreign jurisdiction would seem to exceed the proper scope of [§] 1782.") (citation omitted).

[10] See Wells Fargo Bank, N.A. v. Konover, 259 F.R.D. 206, 206 (D. Conn. 2009) (denying costs where non-party had "material involvement and strong interest in" a "central transaction[] being challenged as a fraudulent transfer in [underlying] case"); Cornell v. Columbus McKinnon Corp., No. 13-cv-02188-SI, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015) ("the fact that the non-party was 'substantially involved in the underlying transaction and could have anticipated that [its involvement might] reasonably spawn some litigation, and discovery' was a circumstance weighing against shifting costs") (alteration in original) (citation omitted).

[11] Valcor, 2018 WL 3956732 at *4 ("aggressive litigation tactics are also relevant because they tend to demonstrate [respondent] is not a truly disinterested non-party.").  In re Aggrenox Antitrust Litig., No. 3:14-md-02516 (SRU), 2017 WL 4679228, at *11 (D. Conn. Oct. 18, 2017) (ordering non-party Gyma to bear the "balance of its costs" where "Gyma was notably intransigent and dilatory in its response to the subpoena").

[12] See Chevron v. Donziger, No. 11 Civ 0691(LAK), 2013 WL 1087236, at *33 (S.D.N.Y. March 15, 2013) (denying non-party $1 million in costs that it proposed to shift to Chevron and finding subpoena not to be an undue burden on non-party given "its size (reportedly over $300 million in gross revenues in 2012), and its economic interest in this controversy."); Nike, Inc., 2020 WL 257475, at *14 (denying cost-shifting by "large financial institution[s] with billions of dollars in revenues and trillions of dollars in assets").

[13] In re First Am. Corp., 184 F.R.D. at 242 ( "strong public interest" in lawsuit involving global bank fraud).

[14] See In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 80 (2d Cir. 1997) ("[T]hrough § 1782 Congress has seen fit to authorize discovery . . . as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts.") (citation omitted).

The Honorable Ona T. Wang, p. 4

                    Respectfully submitted,

                    */s/ Jeffrey A. Rosenthal*
                    Jeffrey A. Rosenthal
                    jrosenthal@cgsh.com
                    Lisa M. Schweitzer
                    lschweitzer@cgsh.com
                    Lisa Vicens
                    evicens@cgsh.com
                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
                    One Liberty Plaza
                    New York, New York  10006
                    T: 212-225-2000
                    F: 212-225-3999
                    *Counsel for Vale S.A., Vale Holdings B.V., and Vale International S.A.*

cc: All Counsel of Record (via ECF)