UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | 1:20-mc-00199-JGK-OTW |

**SIGNA CHRYSLER HOLDING LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SHIFT SUBPOENA EXPENSES**

MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
T: (212) 547-5400
F: (212) 547-5444

Andrew B. Kratenstein
akratenstein@mwe.com
Monica S. Asher
masher@mwe.com

*Attorneys for Signa Chrysler Holding LLC*

**BACKGROUND**

The Court is familiar with the background.  In short, SIGNA Chrysler Holding LLC and its affiliates (collectively, "SIGNA") incurred hundreds of thousands of Euro in expenses responding to a broad subpoena (the "Subpoena") served by petitioners Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale") in connection then-pending proceedings in the United Kingdom (the "English Proceedings") brought against Benjamin Steinmetz ("Steinmetz") and certain of his associates and affiliated entities (the "English Defendants"). (D.E. 79.)  Vale later voluntarily dismissed the English Proceedings as time-barred.  (D.E. 13.)

The Subpoena sought information broadly related to SIGNA's relationship with the English Defendants purportedly to determine if any of the monies that Vale paid entities affiliated with Steinmetz were transferred to SIGNA.  (Asher Decl., Ex. A.)  SIGNA had no involvement with the transaction underlying the English Proceedings.  (*Id*. ¶ 4.) As SIGNA explained to Vale, in 2012 certain Steinmetz-affiliated entities entered into a joint venture with certain SIGNA-affiliated entities concerning the investment, holding, and operation of certain properties and operations of the Karstadt group business, a large German retail and department store company. (*Id*.)  That joint venture terminated effective April 9, 2015 and had nothing to do with Vale.  (*Id.*)

Vale's document requests were extremely broad.  There were 15 requests covering an over a decade long period – from January 1, 2010, through the date the Subpoena was served in March 2021.  (*Id.*, Ex. A.) The responsive documents were all located in Europe and many were in German.  Although the parties negotiated modest narrowing to the document requests and search terms, SIGNA ultimately incurred €857,059.55 responding to the Subpoena.  After voluntarily dismissing the English Proceedings, Vale refused to reimburse SIGNA for any expenses that SIGNA incurred in responding to the Subpoena.  (*Id.* ¶ 22.)

1

**ARGUMENT**

Under Federal Rule of Civil Procedure 45(d)(2)(B)(ii), non-parties must be "protect[ed]" from "significant expense resulting from compliance" with subpoenas. Rule 45 thus *requires* expense shifting in such circumstances. *See Koopman v. Robert Bosch LLC*, No. 18-CV-4065, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018) (Rule 45 "make[s] cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena") (citations omitted); *Macnamara v. City of New York*, No. 04Civ.9612, 2006 WL 3298911, *15 (S.D.N.Y. Nov. 13, 2006) (Rule 45 "requires the Court to protect a non-party from 'significant expense'"); *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811, 2012 WL 5395249, *4-5 (S.D.N.Y. Nov. 5, 2012) (requiring plaintiffs to "bear the search, collection, and production costs associated with compliance with the subpoenas" on non-parties). When determining whether to shift expenses, courts first consider the reasonableness of the expenses and then equitable factors including: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15CIV7488, 2017 WL 3822883, at *10 (S.D.N.Y. Aug. 30, 2017) (citations omitted). Each factor favors expense shifting here.

## I.     SIGNA'S EXPENSES WERE REASONABLE

Given the Subpoena's breadth, SIGNA's expenses are reasonable. SIGNA engaged Epiq Legal Solutions ("Epiq") to collect documents from SIGNA's server, which is located in the European Union, and to conduct the first-level review. (Asher Decl. ¶ 5.) McDermott Will & Emery LLP ("McDermott") managed Epiq. (*Id.* at ¶ 14.)

The search parameters initially provided by Vale were overbroad. (*Id.* at ¶¶ 3, 8.) After extensive negotiations, running of multiple search term hit reports, and sampling documents at Vale's request, Vale agreed only to modest modifications. (*Id.* ¶ 8.) Vale also rejected SIGNA's

proposal to produce documents related only to the long-terminated joint venture and its request to shorten the Subpoena's date range (January 2010 to March 2021) to end in 2015, when the joint venture ended.  (*Id.* at ¶6.)  Ultimately, in addition to reviewing and producing all of the joint venture transaction documents and cash flows, 135,680 e-mails required review.  (*Id.* ¶ 9.) Knowing this information, Vale instructed SIGNA to proceed.  (*Id.*)

Much of the data was in German.  (*Id.* ¶ 5.)  Rather than incur substantial translation expenses, Epiq utilized German-speaking project attorneys for first-level review and German-speaking counsel at McDermott managed reviewer queries and conducted quality-checks. (*Id.* ¶ 10.)  SIGNA was not "dilatory".  (D.E. 147 at 3.)  SIGNA made two productions on August 18, 2021, and November 24, 2021.  (Asher Decl. ¶ 11.)  Emails took longer to review and were produced on March 28, 2022.  (*Id.*)  In total, SIGNA produced 19,368 documents.  (*Id.*)

The rates charged by McDermott were reasonable.  They have been approved by other courts (*Id.*, Ex. F) and are in line with prevailing market rates – including those of Vale's counsel (*Id*. ¶ 20).  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (rates are reasonable when "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").   The rates charged by Epiq were also reasonable and reimbursement of expenses incurred by discovery vendors are recoverable.  *See Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925, 2017 WL 3579892, at *8 (S.D.N.Y. Aug. 18, 2017) (awarding reimbursement for expenses including "an electronic discovery vendor"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (awarding reimbursement for "ordinary and necessary costs such as … computer-assisted document organization, travel and copying").  There was no excessive, unnecessary, or duplicative expenditures of time by McDermott or Epiq. Finally, the time entries provide to Vale and the Court (Asher Decl. Exs. D and E) are sufficient

to demonstrate the "reasonableness of the work performed".[1]  *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724, 2010 WL 451045, at \*7-8 (S.D.N.Y. Feb. 9, 2010) (holding that time detail need only allow the court to "determine the reasonableness of the work performed").

## II.    SIGNA HAS NO INTEREST IN THE OUTCOME OF THE CASE

SIGNA has no interest in the outcome of the English Proceedings.  No claim has ever been brought against SIGNA, nor could a viable one be brought, and any statute of limitations has long-passed.  Neither the joint venture nor any transactions completed in connection with the joint venture were at issue in the English Proceedings.[2]  This factor thus weighs in favor of awarding SIGNA its expenses.  *See, e.g.*, *Israel v. Carpenter*, No. 95CIV2703, 2002 WL 1424594, at \*1 (S.D.N.Y. Jun. 28, 2002) ("cost-shifting is warranted both by the fact that the non-parties have no stake in this litigation and by the broad nature of the subpoenas issued by plaintiffs"); *First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998) ("A nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable under Rule 45(c)(2)(B)."); *United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 535 (C.D. Cal. 2014) (Rule 45 "make[s] cost-shifting a matter of course" as "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a part.").

## III.    VALE CAN READILY BEAR SIGNA'S EXPENSES

Vale is the "world's largest producer of iron ore, pellets, and nickel."  *About Us*, http://www.vale.com/en/aboutvale/pages/default.aspx.   Vale's estimated revenue in 2021 was

---

[1] SIGNA's seeks reimbursement of 6.10 hours of time spent preparing its letter to the Court in anticipation of this motion (D.E. 145).  "It is well established that 'time reasonably spent … in establishing their fee [is] compensable.'" *Black v. Nunwood, Inc.*, No. 1:13-CV-7207, 2015 WL 1958917, \*7 (S.D.N.Y. Apr. 30, 2015) (awarding fees for time spent preparing fee application) (citing *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir.1979) *aff'd,* 448 U.S. 122 (1980)).
[2] By contrast, in Vale's cases (D.E. 147 at 3), the non-party had "material involvement", *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 206 (D. Conn. 2009), or was "substantially involved", *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188-SI, 2015 WL 4747260, at \*5 (N.D. Cal. Aug. 11, 2015), in the underlying transaction.

reported at nearly $300 *billion*.   *See Vale S.A.*, MARKETWATCH, https://www.marketwatch.com/investing/stock/vale.   Vale commenced multiple international proceedings in its pursuit of Steinmetz (including, the English Proceedings, this proceeding, and another proceeding in this district, Case No. 1:19-cv-03619).   Vale is plainly able to pay the expenses of the production it sought from SIGNA, it is more readily able to pay those expenses, and, as a matter of equity, it should be required to pay the expenses for its own litigation.   *See Dow Chem. Co. v. Reinhard*, No. M8-85, 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008) (awarding costs where the court "doubt[ed] that … the corporate behemoth Dow," the subpoenaing party, "will have any trouble covering the expenses for the production"); *Prescient Acquisition Grp., Inc. v. MJ Publishing Trust*, No. 05 Civ. 6298, 2006 WL 2996645, at *3 (awarding costs to non-party Bank of America).[3]

## IV.    THE LITIGATION IS NOT OF PUBLIC IMPORTANCE

Where a case involves a private dispute amongst private parties, this factor weighs in favor of reimbursement.   *See, e.g.*, *Prescient*, 2006 WL 2996645, at *3 (awarding costs where "[t]he dispute is among private parties"); *US Bank Nat'l Ass'n*, 2012 WL 5395249, at *4 (awarding costs because "the litigation involves a purely private dispute.")   The English Proceedings were a private dispute[4] that was ultimately discontinued as time-barred.   (D.E. 133.)   Accordingly, this factor weighs in favor or reimbursement to SIGNA.

---

[3] The cases previously cited by Vale are distinguishable.  (D.E. 147 at 3.)  In *Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 WL 1087236 *32-33 (S.D.N.Y. Mar. 15, 2013), the subpoena respondent was "no ordinary, unrelated non-party witness", but rather, "an alleged co-conspirator" whose actions were at issue in the case, so the burden of responding to the subpoena "would not be undue given its role in the case, its size, and its economic interest in this controversy."  In *Nike v. Wu*, No. 13 Civ. 8012, 2020 WL 257475, at *11 (Jan. 17, 2020), the court found that the non-party's response to the subpoena was inefficient and duplicative, for example including time for 80 employees to review the subpoena itself, and included unnecessary work.
[4] By contrast in *In re First American, Corp.*, 184 F.R.D. 234 at 236 (S.D.N.Y. 1998) (D.E. 147 at 3), concerned "the largest bank fraud in world history", which was resulted in "a $10.5 billion bank failure, and the loss of billions of dollars of depositors' savings."  Here, the only party allegedly defrauded was Vale, and no public purpose was ever served, particularly as Vale ultimate withdrew its claims as time-barred.  (D.E. 133.)

5

**CONCLUSION**

For the foregoing reasons Vale should be required to reimburse SIGNA for its expenses

incurred in complying with the Subpoena in the amount of €857,059.55.


Dated: New York, New York                    MᶜDERMOTT WILL & EMERY LLP
      July 1, 2022

                                     By: /s/ *Andrew B. Kratenstein*
                                        Andrew B. Kratenstein
                                        Monica S. Asher

                                One Vanderbilt Avenue
                                New York, New York 10017
                                T: (212) 547-5400
                                F: (212) 547-5444
                                akratenstein@mwe.com
                                masher@mwe.com

                                *Attorneys for Signa Chrysler Holding LLC*