UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Vale S.A., Vale Holdings B.V., and Vale International S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 1:20-mc-00199-JGK-OTW |

**VALE S.A., VALE HOLDINGS B.V., AND VALE INERNATIONAL S.A.'S
MEMORANDUM OF LAW IN OPPOSITION TO SIGNA CHRYSLER
HOLDING LLC'S MOTION TO SHIFT SUBPOENA EXPENSES**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
Lisa Vicens
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225 2000

*Attorneys for Vale S.A, Vale Holdings B.V., and
Vale International S.A.*

## BACKGROUND

Although companies affiliated with Signa Chrysler Holding LLC ("Signa") were joint

venture partners of Benjamin Steinmetz and his affiliated entities, *and* potential recipients of

traceable funds that BSG Resources Limited ("BSGR") fraudulently obtained from Vale, Signa

now contends that Vale should have to pay €857,059.55 (nearly $875,000) in costs that Signa

allegedly incurred in responding to Vale's Court-ordered subpoena.  In its July 20, 2020 order,

this Court determined that Vale S.A., Vale Holdings B.V., and Vale International S.A.

(collectively, "Vale") had satisfied the requirements of 28 U.S.C. § 1782 and deemed appropriate

the scope and substance of requests for discovery from Signa for use in proceedings pending in

the United Kingdom brought against Steinmetz and affiliated individuals and entities (the

"English Proceedings").  See ECF 45.

## ARGUMENT

"Under Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to

bear the subpoenaed nonparty's cost of compliance."  In re World Trade Ctr. Disaster Site Litig.,

No. 21 MC 100(AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) (citation omitted).

See also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978) ("the presumption is that

the responding party must bear the expense of complying with discovery requests"); 9 Daniel R.

Coquillette et al., Moore's Federal Practice (§ 45.33 (3d ed. 2022)) ("A non-party responding to

a subpoena is generally required to bear its own costs of production.").[1]  Here, where Signa's

motion for a whopping €857,059.55 is on its face objectively unreasonable, and Signa has

presented no extraordinary circumstances that would merit the exceptional relief of cost-shifting

to Vale, Signa's motion should be denied.

---

[1]     While suggesting in its opening sentence that the Court is "required" to expense shift, Signa ultimately
concedes this Court's discretion and that "[w]hen determining *whether* to shift expenses, courts first consider the
reasonableness of the expenses and then equitable factors."  ECF 151 ("MOL") at 3 (emphasis added).

## I.    SIGNA'S EXPENSES ARE OBJECTIVELY UNREASONABLE

On its face, Signa's application for costs in the amount of €857,059.55 for the production of documents is "extremely high and objectively unreasonable."[2]  Furthermore, contrary to Signa's assertions, Vale worked cooperatively with Signa to reduce costs, including by: (1) applying date restrictions to specific search terms;[3] (2) narrowing or removing search terms;[4] and (3) leveraging existing agreements with Signa's counsel (who also represented Respondents RFR Holding LLC, RFR Realty LLC, R&S Chrysler LLC, and Aby Rosen (collectively "RFR")) to facilitate document production.[5]

## II.    THE EQUITIES OF THE CASE DEMAND THAT SIGNA BEAR ITS EXPENSES

Where a non-party seeks to shift costs incurred in responding to a Rule 45 subpoena, courts consider three factors, none of which support cost-shifting here: "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance."[6]

***Signa Is Not a "Disinterested" Party.***  Signa is not a disinterested third party with no stake in the underlying litigation.  As Signa admits, shortly after Vale was defrauded out of $500 million by BSGR in 2010, Signa entered into a joint venture with Steinmetz in 2012 through which it acquired approximately 20 department store properties in Germany.  ECF 152-2 at 2.[7]

---

2    Valcor Eng'g Corp. v. Parker Hannifin Corp., No. 8:16-cv-00909-JVS-KESx, 2018 WL 3956732, at *3 (C.D. Cal. July 12, 2018) (denying costs, noting "a party might incur more than $300,000 in attorney's fees, if at all, in litigating a case through a multi-day trial"); see also Nike, Inc. v. Wu, No. 13 Civ. 8012 (CM), 2020 WL 257475, at *2 (S.D.N.Y. Jan. 17, 2020) (denying costs as "unreasonably expensive, [and] inefficient").
3    Signa claims that Vale "rejected SIGNA's request to shorten the Subpoena's date range" to end in 2015, ECF 151 at 3-4, but the correspondence exhibited by Signa demonstrates that, to the contrary, counsel for Vale stated they were willing to, and did, modify and limit the time period for key terms, including "High Street," see ECF 152-3 at 2-3, which Signa's counsel referred to as "[t]he biggest problem" in generating false hits. Id. at 7.
4    See ECF 152-3 at 14 (CGSH agreed to MWE's proposal to narrow two terms and eliminate two terms); id. at 5-6 (CGSH agreed to MWE's proposals to drop three terms and narrow two terms).
5    See id. at 19 (CGSH offer to provide "the same GDPR-compliant methodology used by RFR in this same matter").
6    See In re Honeywell Int'l Sec. Litig., 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (citation omitted).
7    See Wells Fargo Bank, N.A. v. Konover, 259 F.R.D. 206, 206 (D. Conn. 2009) (denying costs where non-party had "material involvement and strong interest in" a "central transaction[] being challenged as a fraudulent

2

It is irrelevant that the BSG-Signa venture was terminated in 2015, or that Vale was not involved in that joint venture.  Signa and its joint venture with BSG were undoubtedly relevant to Vale's proprietary tracing claim, where Signa was a potential recipient of the proceeds of the fraud against Vale.[8]  Indeed, invoices show that Signa's lawyers devoted dozens of hours to educating themselves about "BSG" or Signa's "BSG partnership."[9]  Signa's dilatory litigation stance beyond mere "compliance" – in which it took over eight months to produce documents – further suggests it is not a disinterested party.[10]  As is made clear from its invoices, Signa did not even *begin* processing email data until October 2021,[11] seven months after receiving the subpoena.[12]

**Signa May Readily Bear its Costs**.  With a "Gross Asset Value of . . . 21 billion euros" and "Gross Development Value [] [of] 23 billion euros," Signa Real Estate Group is able to bear the costs it is seeking to have Vale absorb.  ECF 147-2 at 3.  Signa retained counsel from a leading law firm, with eight attorneys and additional legal support staff billing approximately $875,000 to respond to Vale's discovery requests.  As a multi-billion dollar multi-national real estate conglomerate, Signa is of course entitled to use its resources to respond to a subpoena as it

---

transfer" in underlying case); Cornell v. Columbus McKinnon Corp., No. 13-cv-02188-SI, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015) ("the fact that the non-party was 'substantially involved in the underlying transaction and could have anticipated that [its involvement might] reasonably spawn some litigation, and discovery' was a circumstance weighing against shifting costs") (citation omitted).  See also ECF 96-2 at 2 (Steinmetz associate Shimon Menaham describing Steinmetz's "big appetite for new investments" to real estate company RFR following Vale's $500 million payment in 2010, and attaching press release of Vale-BSG joint venture).

[8]      Signa also complains that Vale's requests were "extremely broad," "covering an over a decade long period – from January 1, 2010" to the date of the subpoena, see MOL at 1, 4, but as this Court previously ruled, given "Vale's stated objective of tracing some portion of $500 million paid in 2010 and allegedly received by respondents, . . . Vale's subpoenas are relevant and sufficiently limited in time and content."  ECF 76 at 6.

[9]      See, e.g., ECF 153 at 2-14.

[10]     Valcor, 2018 WL 3956732, at *4 (noting that "aggressive litigation tactics are also relevant because they tend to demonstrate [respondent] is not a truly disinterested non-party"); In re Aggrenox Antitrust Litig., No. 3:14-md-02516 (SRU), 2017 WL 4679228, at *11 (D. Conn. Oct. 18, 2017) (ordering non-party Gyma to bear the "balance of its costs" where "Gyma was notably intransigent and dilatory in its response to the subpoena").

[11]     See ECF 152-5 (data vendor hosting fees beginning in September 2021); ECF 153 at 7 (MWE "preparing for review of documents" in October 2021).

[12]     Cornell, 2015 WL 4747260, at *5 (finding that where "discovery compliance was unusually hard fought by [non-party] FedEx," this "suggests that it may have unnecessarily increased the cost of compliance") (citation omitted).  While Signa did not actually litigate its objections in court, this is presumably because its counsel had already done so unsuccessfully on behalf of another client, RFR.

sees fit.  But Vale should not have to foot the bill.  Indeed, courts in the Second Circuit regularly decline to shift costs when a subpoena recipient is able to bear the costs of compliance.[13]

      ***The Litigation is of Public Importance.***  The underlying foreign litigation was of public importance because it raised allegations of fraud and bribery of public officials,[14] and directly relates to internationally news-worthy criminal prosecutions in Switzerland and International Centre for the Settlement of Investment Disputes ("ICSID") tribunal decisions, and has received widespread media scrutiny.[15]

      Thus, there is no equitable basis for Signa to shift its nearly $875,000 in costs to Vale.[16]

## III.   SIGNA SEEKS FEES THAT ARE *NEVER* APPROPRIATELY SHIFTED

      Even were this Court to find that some cost-shifting is appropriate, Signa inflates its costs with fees that are *never* appropriately shifted.  Signa bears the burden to demonstrate its costs are "reasonable" and "result[] from compliance."  See In re Aggrenox Antitrust Litig., No. 3:14-md-02516 (SRU), 2017 WL 4679228, at *2 (D. Conn. Oct. 18, 2017).  "In other words, Rule 45 does not cut a blank check to non-parties—unnecessary or unduly expensive services do not 'result

---

[13]    See Chevron Corp. v. Donziger, No. 11 Civ 0691(LAK), 2013 WL 1087236, at *32-33 (S.D.N.Y. Mar. 15, 2013) (costs of $1 million would not be an "undue burden" on non-party given "its size (reportedly over $300 million in gross revenues in 2012), and its economic interest in this controversy"); In re World Trade Ctr. Disaster Site Litig., 2010 WL 3582921, at *2 (denying costs in part because subpoena recipient "Mount Sinai [wa]s equipped to shoulder these costs, even recognizing . . . it is pressed financially in many other aspects of its core activities").  In Dow Chem. Co. v. Reinhard, cited by Signa, the Court awarded partial costs going forward *only after* the non-party subpoena recipient had reviewed over 154,500 documents and incurred $1.3 million in fees and $360,000 in expenses, none of which were shifted.  No. M8-85 (HB), 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008).

[14]    See, e.g., In re First Am. Corp., 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (finding "strong public interest" in private lawsuit involving global bank fraud).

[15]    See, e.g., Stephanie Nebehay, Swiss court finds Israeli businessman Beny Steinmetz guilty of corruption, REUTERS (Jan. 22, 2021), https://www.reuters.com/article/us-swiss-steinmetz/swiss-court-finds-israeli-businessman-beny-steinmetz-guilty-of-corruption-idUSKBN29R27Q; Neil Hume, BSG Resources won Guinea mining rights through bribery, arbiter says, FINANCIAL TIMES (May 22, 2022), https://www.ft.com/content/81af7257-ebb7-48f8-832e-4263414e4eb6.  In addition, Vale's § 1782 Application advanced the important policy goal of increasing reciprocal international cooperation in judicial proceedings.  See In re Metallgesellschaft AG, 121 F.3d 77, 80 (2d Cir. 1997) ("[T]hrough § 1782 Congress has seen fit to authorize discovery . . . as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example . . .").

[16]    Signa implies that the ultimate disposition of the foreign proceeding – voluntary dismissal on statute of limitations grounds – should be considered.  There is no authority supporting such proposition and thus Signa does not actually offer any argument that the disposition is relevant.

from compliance' and, therefore, do not count as 'expenses.'"  G&E Real Est., Inc. v. Avison

Young-Wash., D.C., LLC, 317 F.R.D. 313, 319 (D.D.C. 2016) (citation omitted) (concluding

that "the vast majority of [] [] fees are not compensable, from the early response to the subpoena

through the laborious document review process through the preparation of motions for fees");

Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., No. 09-CV-3855 (J5)(AYS),

2018 WL 1701944, at *7 (E.D.N.Y. Mar. 31, 2018) ("[N]on-parties 'should not be permitted to

run up bills' merely because they expect 'someone else [to] pay[ ] the tab.'") (citation omitted).

The following categories of Signa expenses are ineligible for cost-shifting:

- Time spent resisting the subpoena, including preparing responses and objections;[17]

- Time spent protecting Signa's own interests;[18]

- Filing this letter motion to seek costs;[19]

- Block-billed time entries;[20] and

- Time spent reviewing documents for privilege.[21]

---

[17]     See, e.g., ECF 153 at 4 (billing for "Editing responses and objections"); id. at 5 (billing for "Drafting responses and objections to subpoenas," and "Revising responses and objections to Vale's subpoena").  See Contant v. Bank of Am. Corp., No. 1:17-cv-03139 (LGS) (SDA), 2020 WL 3260958, at *5 ("preparing documents to be used in an effort to quash Plaintiffs' subpoena" was "time [] not spent in connection with subpoena compliance" and therefore not eligible to be shifted).

[18]     For example, as discussed above, a significant number of entries concern counsel's research into Signa's relationship with BSG, which do not constitute an "expense" resulting from "compliance."  See, e.g., ECF 153 at 2-14.  "It is a tenuous proposition, at best, that attorneys' fees incurred resisting a subpoena are expenses resulting from compliance."  Sands Harbor, 2018 WL 1701944, at *7 (citation omitted).  See id. at *8 (denying over 70% of requested attorney's fees where expenses were "poorly documented, legally unsupported, and unreasonable").

[19]     See, e.g., ECF 153 at 13 (billing for "Revising letter re: expense shifting," and "drafting cost application").  Contant, 2020 WL 3260958, at *5 (refusing to shift fees where time was "spent seeking to avoid compliance or seeking to obtain fees for FXCM"); In re Aggrenox Antitrust Litig., 2017 WL 4679228, at *10 (rejecting attempt to shift the costs of drafting and preparing a letter to the court "'in response to plaintiff's re costs'") (citation omitted).

[20]     Block-billing is disfavored, as it "make[s] it difficult to determine the reasonableness of the time spent on particular tasks and warrant[s] a reduction in attorney's fees."  Sands Harbor, 2018 WL 1701944, at *6 (citation omitted).  Id. ("'across-the-board reduction in billing hours is appropriate'") (citation omitted); Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, No. 04 Civ. 3600(SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing attorney's fees by 25% due to "block billing" and "vagueness").

[21]     See, e.g., ECF 153 at 13 (billing entries for "Correspondence re: priv log," and "QC of Epiq team's privilege redactions").  As explained in a case upon which Signa relies, U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co., "non-parties shall bear their own costs of reviewing the documents for privilege" because "the producing party has the exclusive ability to control the cost of reviewing the documents."  No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012) (citation omitted).

**CONCLUSION**

For the foregoing reasons, Signa's motion for cost-shifting should be denied in its entirety.


Dated: July 12, 2022
New York, New York


Respectfully submitted,

*/s/ Jeffrey A. Rosenthal*
Jeffrey A. Rosenthal
jrosenthal@cgsh.com
Lisa Vicens
evicens@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
*Counsel for Vale S.A., Vale Holdings B.V., and Vale*
*International S.A.*


cc: All Counsel of Record (via ECF)