# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

| AMERICAS | ASIA | EUROPE & MIDDLE EAST | |
| --- | --- | --- | --- |
| NEW YORK | BEIJING | ABU DHABI | LONDON |
| SAN FRANCISCO | HONG KONG | BRUSSELS | MILAN |
| SÃO PAULO | SEOUL | COLOGNE | PARIS |
| SILICON VALLEY | | FRANKFURT | ROME |
| WASHINGTON, D.C. | | | |

D: +1 212 225 2086
jrosenthal@cgsh.com

CRAIG B. BROD
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
DEBORAH NORTH
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU

ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
AUDRY X. CASUSOL
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR
JOHN A. KUPIEC
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS

LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
JULIA L. PETTY
HELENA K. GRANNIS
SUSANNA E. PARKER
THOMAS S. KESSLER
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
HEIDE H. ILGENFRITZ
ANDREW WEAVER
JOHN V. HARRISON
MATTHEW BRIGHAM
EMILIO MINVIELLE
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
BRIAN J. MORRIS
CARINA S. WALLANCE
ALEXANDER JANGHORBANI
RESIDENT COUNSEL

February 23, 2023

<u>VIA ECF</u>
The Honorable Ona T. Wang
United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

   Re: *In re Application of Vale S.A. et al.,* No. 20-mc-199-JGK-OTW

Dear Judge Wang:

   We write on behalf of Vale S.A., Vale Holdings B.V., and Vale International S.A. (collectively, "Vale") in response to the letter filed on February 17, 2023 by HFZ,[1] ECF 157, seeking to shift to Vale more than $414,000 in costs it allegedly incurred while responding to Vale's third party subpoena.

   In July 2020, this Court granted Vale's above-captioned application to conduct discovery pursuant to 28 U.S.C. § 1782 (the "Application") from a number of real estate entities, including HFZ, for use in proceedings in the High Court of England and Wales (the "English Proceedings"). ECF 45. Vale sought discovery to, *inter alia*, trace the proceeds of a fraudulently-induced $500 million payment it made to enter into a joint venture with BSGR on April 30, 2010, including to investments in HFZ properties. ECF 2 at 6. HFZ made its final production to Vale on January 26, 2022. The High Court dismissed Vale's claims as time barred and Vale terminated these 1782 proceedings more than a year ago.[2]

   HFZ's meritless and untimely application should be dismissed for several reasons.

---

[1] The list of HFZ entities is defined in ECF 63. As represented to Vale, the various HFZ entities store their documents in a single data repository.

[2] <u>See</u> ECF 133 (Letter to Judge Wang from Jeffrey A. Rosenthal).

      Courts consider three factors when assessing an application to shift costs incurred in responding to a Rule 45 subpoena, all of which advise against cost-shifting here.[3]

      *First,* HFZ is not a disinterested third party with no stake in the underlying litigation. Steinmetz and related entities invested in at least 12 HFZ properties in the years following Vale's $500 million payment to Steinmetz's company.[4] *Second,* notwithstanding its suggestions to the contrary, HFZ is a large real estate developer with more than $10 billion in assets, and is able to bear these costs. ECF 157 at 3. Courts in the Second Circuit have declined to shift costs when a subpoena recipient has more than enough resources to bear the costs of compliance, regardless of the size of the § 1782 applicant.[5] *Third,* the underlying foreign litigation was of public importance because it brought to light significant fraud and a prominent scheme of bribery of public officials[6] and advanced the important policy goal of increasing reciprocal international cooperation in judicial proceedings.[7]

      In addition, a nonparty responding to a subpoena is generally required to bear its own costs of production.[8] Even when the aforementioned factors are satisfied and the court elects to shift costs, the non-party who moves for costs bears the burden of demonstrating that the costs for which it is seeking reimbursement are "reasonable."[9] HFZ's application for $414,029.44 is

---

[3]    See In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293, 303 (S.D.N.Y. 2003) ("[1] whether the nonparty actually has an interest in the outcome of the case, [2] whether the nonparty can more readily bear the costs than the requesting party and [3] whether the litigation is of public importance").

[4]    See ECF 2 at 7-8; ECF 3 Ex. ZZ (Steinmetz Blackberry extraction identifying properties); ECF 3 Ex. BBB (BSG Real Estate Org Chart); Exhibit A ▬▬▬▬▬; Exhibit B (Email from HFZ to Vale). See also Wells Fargo Bank, N.A. v. Konover, 259 F.R.D. 206, 206 (D. Conn. 2009) (denying costs where non-party had "material involvement and strong interest in" a "central transaction[] being challenged as a fraudulent transfer in [underlying] case"); Cornell v. Columbus McKinnon Corp., No. 13-cv-02188-SI, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015) (fact that the non-party was "substantially involved in the underlying transaction and could have anticipated that [its involvement might] reasonably spawn some litigation, and discovery" weighed against shifting costs") (citation omitted).

[5]    See Chevron Corp. v. Donziger, No. 11 Civ 0691 (LAK), 2013 WL 1087236, at *33 (S.D.N.Y. March 15, 2013) (denying request to shift $1 million in costs and finding subpoena not to be an undue burden on non-party given "its size (reportedly over $300 million in gross revenues in 2012), and its economic interest in this controversy."); Nike, Inc. v. Wu, No. 13 Civ. 8012 (CM), 2020 WL 257475, at *14 (S.D.N.Y. Jan. 17, 2020) (denying cost-shifting by "large financial institution[s] with billions of dollars in revenues and trillions of dollars in assets"); Progressive Sterilization, LLC v. Turbett Surgical, LLC (In re Kaleida Health), No. 21-MC-34V(F), 2021 U.S. Dist. LEXIS 146218 at *6-7, 14 (W.D.N.Y. Aug. 4, 2021) (declining cost-shifting for company with $1.8 billion in revenue).

[6]    In re First Am. Corp., 184 F.R.D. 234, 242 (S.D.N.Y. 1998) ("strong public interest" in lawsuit involving global bank fraud).

[7]    See In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 80 (2d Cir. 1997) (citation omitted) ("[T]hrough § 1782 Congress has seen fit to authorize discovery . . . as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts.") (citation omitted).

[8]    See 9 Daniel R. Coquillette et al., Moore's Federal Practice § 45.33 (3d. 2022). See also In re World Trade Ctr. Disaster Site Litig., No. 21 MC 100 (AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) (citations omitted) ("Under Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance.")

[9]    Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., 09-CV-3855 (J5)(AYS), 2018 WL 1701944, at *4 (Mar. 31, 2018) (citing Blum v. Stenson, 465 U.S. 886, 897 (1984)).

"extremely high and objectively unreasonable," and far exceeds the amounts awarded in all of the cases HFZ has cited.[10]

HFZ's application seeks reimbursement for fees that are *never* appropriately shifted.[11] Although HFZ claims that it has excluded costs incurred preparing its fee-shifting application, ECF 158 ¶ 11, HFZ's bills reveal entries related to the instant application and its opposition of Vale's subpoena.[12] The bills also contain significant costs for categories of entries outside those considered appropriate by courts for cost-shifting, including privilege review,[13] communications with other subpoena recipients, and disbursements after the claim was terminated.[14]

There is no legal equitable basis for HFZ to shift its costs to Vale; it is inconsistent with precedent, and the costs for which HFZ seeks reimbursement are unreasonable and inappropriate. Accordingly, Vale respectfully requests that the Court deny HFZ's request for cost-shifting.

Respectfully submitted,
*/s/ Jeffrey A. Rosenthal*
Jeffrey A. Rosenthal
jrosenthal@cgsh.com
Lisa Vicens
evicens@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
*Counsel for Vale S.A., Vale Holdings B.V., and Vale International S.A.*

cc: All Counsel of Record (via ECF)

---

[10] Valcor Eng'g Corp. v. Parker Hannifin Corp., No. 8:16-cv-00909-JVS-KESx, 2018 WL 3956732, at *3 (C.D. Cal. July 12, 2018) (denying costs, noting "a party might incur more than $300,000 in attorney's fees, if at all, in litigating a case through a multi-day trial"); Nike, Inc. v. Wu, 2020 WL 257475, at *2 (denying costs as "unreasonably expensive, [and] inefficient").

[11] See Contant v. Bank of Am. Corp., No. 1:17-cv-03139 (LGS) (SDA), 2020 WL 3260958, at *5 (S.D.N.Y. June 17, 2020) (footnote omitted) (finding that "[c]ertain of the time billed during this period, for which FXCM seeks reimbursement, is not reasonably charged to Plaintiffs since such time was not spent in connection with subpoena compliance, but rather was spent seeking to avoid compliance or seeking to obtain fees for FXCM").

[12] See, e.g., ECF 158, Ex. 1 at 51 (billing 4.7 hours for "research on federal rules regarding attorney's fees . . . [and] communications with team regarding attorney's fees"). See also Sands Harbor, 2018 WL 1701944, at *7 (denying fee shifting where "the submitted records establish that [the non-party's] attorneys were engaged in tasks wholly unrelated to document production, such as researching cost-shifting").

[13] See, e.g., ECF 158, Ex. 1 at 41 (billing 4.4 hours to "review and analyze documents for privilege designation"); id. at 52 (billing 4.2 hours to "draft privilege log of designated documents"). Despite HFZ's resort to out-of-circuit precedent, courts in this circuit have held time spent on privilege review to be ineligible for cost-shifting. See US Bank Nat'l Ass'n v. PHL Variable Ins. Co., No. 12 Civ. 6811 (CM) (JCF), 2012 WL 5395249, at *4 (S.D.N.Y. 2012) (ordering that "non-parties shall bear their own costs of reviewing the documents for privilege").

[14] This includes over $8,000 in data hosting fees from after February 2022 (when the English Proceedings were dismissed), see ECF 158, Ex. 1 at 45-47, 54-56, as well as for "travel" and "mail," see, e.g., id. at 47, and over $3,500 for calls with counsel for other subpoenaed entities, see, e.g., ECF 158, Ex. 1 at 24.