Joaquin Ezcurra
(212) 735-8814
jezcurra@morrisoncohen.com

September 23, 2024

**BY E-FILING**

Magistrate Judge Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *In re Application of Vale S.A., Vale Holdings B.V., et al.,*
               Civil Action No. 1:20-mc-00199-JGK-OTW

Dear Judge Wang:

      We write, as counsel to HFZ Capital Group LLC and affiliated entities ("HFZ"), pursuant to the Court's Order dated September 17, 2024 (ECF No. 165), directing HFZ to submit a letter brief in support of HFZ's motion to shift HFZ's expenses incurred in responding to the 27 subpoenas (the "Subpoena") served by Vale S.A., Vale Holdings B.V., and Vale International S.A. (together "Vale"), which sought to obtain evidence for a proceeding in the United Kingdom (the "English Proceedings"). The English Proceedings were dismissed in February 2022 after Vale admitted its claims were time-barred (ECF No. 133), yet HFZ was forced to incur Subpoena compliance costs of $414,029.44, which are more fully described in the Declaration of Alvin Lin, dated February 17, 2023 ("Lin Decl.," ECF No. 158). As discussed below, the full amount of HFZ's Subpoena compliance costs should be shifted to Vale.

**I.    COST-SHIFTING OF HFZ'S CONSIDERABLE
       SUBPOENA COMPLIANCE EXPENSES IS MANDATORY**

      Courts have found "cost shifting *mandatory* in all instances in which a non-party incurs significant expense from compliance with a subpoena." *Koopmann v. Robert Bosch, LLC*, No. 18-CV-4065 (JMF), 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018) (emphasis added) (citation omitted); *see also Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 CIV. 6221 (KPF), 2019 WL 7283254, at *2 (S.D.N.Y. Dec. 26, 2019) ("the plain text [of Fed. R. Civ. Proc. 45] obligates, and not merely empowers, the Court to protect third parties from significant expenses resulting from compliance with subpoenas"). Here, HFZ's Subpoena compliance costs of $414,029.44 for work done in response to 27 subpoenas over a period of well over 2 years resulting in the production of nearly 30,000 pages of documents (Lin Decl. ¶¶ 1, 14-18) certainly qualify as "significant." Accordingly, because HFZ's expenses meet the standard of reasonableness and the three-factor test thereunder described below, cost-shifting is mandatory in this instance pursuant to Fed. R. Civ. Proc. 45.

**II.   HFZ'S EXPENSES WERE REASONABLE
        AND MEET THE TEST FOR COST-SHIFTING**

      If the expenses are reasonable, then the Court uses a three-factor balancing test to determine whether those costs should be shifted to the subpoenaing party. "The factors to be considered in determining whether cost-shifting is warranted include '(1) whether the nonparty

has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance.'" *In re Namenda Direct Purchaser Antitrust Litig.*, 17 MC 0274 (CM) (JCF), 2017 WL 3822883, at *10 (S.D.N.Y. Aug. 30, 2017) (citation omitted). Accordingly, if the Court determines HFZ's expenses were reasonable, it then decides whether those expenses should be shifted onto Vale pursuant to the three-factor test.

"The lodestar approach establishes a 'presumptively reasonable fee' by calculating the number of hours reasonably expended by counsel on the litigation and multiplying that number of hours by reasonable hourly rates." *Sagax Dev. Corp. v. ITrust S.A.*, No. 1:19-CV-3386 (RA) (JW), 2022 WL 2663488, at *1 (S.D.N.Y. July 11, 2022) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "To determine the reasonable hourly rate, the Court's analysis is guided by the market rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. (citation and internal quotation marks omitted).

Morrison Cohen's fees of $380,244.47 are reasonable. The hourly rates of the partners ($625.00-$875.00), associates ($465.00-$530.00), and paralegals and clerks ($200.00-$390.00) are within the prevailing rates in this district. *Sagax Dev. Corp.*, 2022 WL 2663488, at *2; *City of Almaty, Kazakhstan v. Ablyzov*, 15-CV-5345 (JGK) (KHP), 2022 WL 1406248, at *4-5 (S.D.N.Y. May 4, 2022); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *6-7 (S.D.N.Y. May 24, 2018). The hours expended in complying with the Subpoena too were reasonable. Vale refused to narrow their search terms or the scope of their requests, despite eighteen meet and confers and extensive emails and follow up from Morrison Cohen. Lin Decl. ¶ 9. After extensive review, HFZ made thirteen productions totaling 3,001 documents and 29,469 pages. Lin Decl. ¶ 17. An overwhelming percentage of the hours spent by Morrison Cohen attorneys were related to managing and reviewing the large production for responsiveness and for privilege, as well and meeting and conferring with Vale's counsel.[1] Thus, Morrison Cohen's fees of $380,244.47 are reasonable.[2]

### A. HFZ Had No Interest in the Outcome of the English Proceedings

HFZ was not a party in the English Proceedings and no claim has been brought against HFZ. *See Contant v. Bank of Am. Corp.*, No. 1:17-cv-03139 (LGS) (SDA), 2020 WL 3260958, at *4 (S.D.N.Y. June 17, 2020) ("FXCM itself has no interest in the outcome of this case"); *see generally* ECF Nos. 3-36. All Vale alleged here was that HFZ entered into a joint venture, years

---

[1] By contrast, the cases often cited by Vale arguing unreasonableness of fees are distinguishable. In *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, No. 8:16-cv-00909-JVS-KESx, 2018 WL 3956732 (C.D. Cal. July 12, 2018), the attorneys' fees sought were deemed unreasonable primarily because they arose from discovery motions that were filed with the court. *Id*. at *3. Here, HFZ has omitted the expenses relating to its motion to quash the Subpoena and in preparing its motion for cost shifting. Lin Decl. ¶ 11. And in *Nike, Inc. v. Wu*, No. 13 Civ. 8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020), the moving party sought $1.22 million – triple what HFZ seeks here – for a production that comprised nearly 10,000 pages fewer than HFZ's production. *Id*. at *2.

[2] HFZ's incidental discovery costs of $33,784.97 are also reasonable. *See Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 605 (2d Cir. 2012) ("The costs sought by the Defendants' counsel reflected, among other things, in-house duplication costs, telephone charges, meals, overtime, local transportation, postage, electronic legal research, and messenger service. All of these categories of costs are the sort of expenses that may ordinarily be recovered as part of a fee award") (internal quotation marks omitted).

after any wrongdoing by other parties. *See* ECF No. 2 (Memorandum of Law) at 7. Those allegations, standing alone, did not make HFZ an interested party in the English Proceedings. *In re Namenda*, 2017 WL 3822883, at *10 ("Although the operative complaint in this action includes allegations against Lupin Pharmaceuticals, the company is a non-party here as well as in the related litigation brought by indirect purchasers of Namenda").[3]

### B. Vale Can More Readily Bear the Subpoena Compliance Costs Than HFZ

Cost shifting is especially appropriate where the requesting party can more readily bear the cost of a non-party's compliance with a subpoena. *See e.g.*, *In re Namenda*, 2017 WL 3822883, at *10. Although Vale makes much of HFZ's purported $10 billion in assets, Vale is "one of the largest metals and mining companies in the world" (Lin Decl. Ex. 2 at 1), and in 2021 alone, Vale reported $54.5 billion in operating revenues. *Id.* at 2. Thus, Vale can more readily bear the costs of HFZ's Subpoena compliance. *Dow Chem. Co. v. Reinhard*, No. M8-85 (HB), 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008) ("doubt[ing] that . . . the corporate behemoth Dow" would "have any trouble covering the expenses for the production").

### C. The English Proceedings Were a Purely Private Dispute

Shifting costs to the requesting party is appropriate where an underlying case is a private dispute between parties. *See e.g.*, *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811(CM)(JCF), 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012) ("the litigation involves a purely private dispute"); *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, No. 05 Civ.6298(PKC), 2006 WL 2996645, at *3 (S.D.N.Y. Oct. 13, 2006) ("The dispute is among private parties with no public interest considerations"). The English Proceedings related to a private dispute between Vale and BSG Resources Limited and its principal Benny Steinmetz. *See* ECF Nos. 3-36 (listing one claimant and one defendant). Thus, regardless of the amount at issue, the English Proceedings were a private dispute.[4]

### III. **CONCLUSION**

For the reasons stated herein, HFZ's motion to shift HFZ's expenses incurred in responding to the Subpoena onto Vale should be granted.

Respectfully submitted,

*/s/ Joaquin Ezcurra*
Joaquin Ezcurra

---

[3] The cases often cited by Vale on this issue typically involve instances where, unlike here, a nonparty was actually involved in the underlying transaction at issue. *See, e.g., Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 206 (D. Conn. 2009) (non-party had "material involvement and strong interest in" the "central transaction[] being challenged as a fraudulent transfer in [the underlying] case").

[4] On this issue, Vale often cites *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998), where the Court found a "strong public interest," but that case involved "one proceeding of many spawned by the largest bank fraud in world history" – certainly not the situation here. *Id*. at 236.